MICHAEL S. DICKE (admitted *pro hac vice*)
mdicke@fenwick.com
JENNIFER C. BRETAN (admitted *pro hac vice*)
jbretan@fenwick.com
KATHERINE A. MARSHALL (admitted *pro hac vice*)
kmarshall@fenwick.com
ALISON C. JORDAN (admitted *pro hac vice*)
ajordan@fenwick.com
SAMUEL SAHAGIAN (admitted *pro hac vice*)
ssahagian@fenwick.com

FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415.875.2300

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: 775.788.2212

*Attorneys for Defendant YUGA LABS*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT ARMIJO, | Case No.: 3:22-cv-00112-MMD-CLB |
| Plaintiff, | **DEFENDANT YUGA LABS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation, YUGA LABS LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company; LOOKSRARE; and DOES 1to 50, | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

FENWICK & WEST LLP

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.      INTRODUCTION .........................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................3

      A.     Yuga Labs ..........................................................................................................3

            1.     Yuga Labs' Lack of Activity in Nevada .................................................3

            2.     The Bored Ape and Mutant Ape NFTs....................................................3

            3.     The Bored Ape Yacht Club......................................................................4

            4.     The Yuga Labs Discord Server ...............................................................4

      B.     The Alleged Purchase and Theft of Plaintiff's NFTs .............................................4

      C.     Plaintiff's Alleged Interactions with Yuga Labs ..................................................5

III.    ARGUMENT .................................................................................................................6

      A.     Personal Jurisdiction Over Yuga Labs Is Absent ................................................6

            1.     Boilerplate Recitals Of Jurisdiction Fail As A Matter Of Law .................6

            2.     Plaintiff Also Cannot Allege General Jurisdiction Over Yuga Labs ..........7

            3.     Plaintiff Cannot Allege Specific Jurisdiction Over Yuga Labs .................8

                   a.     Plaintiff Cannot Establish Specific Personal Jurisdiction Based On Yuga Labs' Purported Sales Or Advertising In Nevada ..................................................................................................8

                   b.     Plaintiff Cannot Establish Specific Personal Jurisdiction Based On The BAYC Website Or Discord Server .........................9

                         (1)    The BAYC Discord Server Is Passive ...............................10

                         (2)    The Claim Does Not Arise From The Discord Server ................................................................................12

                   c.     The Exercise Of Jurisdiction Is Unreasonable ..............................13

      B.     Plaintiff Fails To State A Claim For Negligence Against Yuga Labs ..................13

             1.     Plaintiff Cannot Allege That Yuga Labs Owed Him A Duty Of Care ..........................................................................................................14

      i      

**TABLE OF CONTENTS**
**(Continued)**

Page

      a.     Plaintiff Fails To Allege A Special Relationship Giving Rise To A Duty By Yuga Labs .......................................................16

      b.     There Is No Other Basis To Impose A Duty On Yuga Labs .........20

    2.    Plaintiff Cannot Allege That Yuga Labs Caused His Injury ....................21

    3.    The Economic Loss Doctrine Bars Any Claimed Damages .....................22

IV.    CONCLUSION.........................................................................................................23

1

2

3

4

5

6

7

8

9

10

11

FENWICK & WEST LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arco Prods. Co. v. May*,
   948 P.2d 263 (Nev. 1997) ..................................................................................23

*Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*,
   480 U.S. 102 (1987) ............................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................13, 22

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...........................................................................12

*Beckman v. Match.com, LLC*,
   2017 WL 1304288 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir.
   2018) .......................................................................................................17, 18, 19

*Beckman v. Match.com, LLC*,
   743 F. App'x 142 (9th Cir. 2018) .....................................................................19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................14, 22

*Benavidez v. Cnty. of San Diego*,
   993 F.3d 1134 (9th Cir. 2021) ..........................................................................22

*Bibicheff v. PayPal, Inc.*,
   2020 WL 2113373 (E.D.N.Y. May 4, 2020), *aff'd*, 844 F. App'x 394 (2d Cir.
   2021) .......................................................................................................................19

*Bibicheff v. PayPal*,
   844 F. App'x 394 (2d Cir. 2021) (summary order) ..........................................21, 22

*Bledsoe v. US Bancorp*,
   2013 WL 12129951 (C.D. Cal. June 12, 2013) ...............................................20

*Boehm v. Airbus Helicopters Inc.*,
   527 F. Supp. 3d 1112 (D. Ariz. 2020) .............................................................12

*Bradshaw v. Blystone Equip. Co. of Nev.*,
   386 P.2d 396 (Nev. 1963) .................................................................................14

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ............................................................................................8

*Calloway v. City of Reno*,
   993 P.2d 1259 (Nev. 2000) *overruled on other grounds by Mahon v. Howard
   & Howard Att'ys PLLC*, 499 P.3d 1176 (Nev. 2021) ......................................23

*Clark Cnty. Sch. Dist. v. Payo,*
    403 P.3d 1270 (Nev. 2017) ........................................................................21

*Cybersell, Inc. v. Cybersell, Inc.,*
    130 F.3d 414 (9th Cir.1997) .........................................................................9

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) .....................................................................................7

*Dearaujo v. PNC Bank,*
    2012 WL 5818131 (D. Nev. Nov. 15, 2012) ...............................................16

*Desert Rock Ent. II LLC v. D. Hotel & Suites, Inc.,*
    2016 WL 1732724 (D. Nev. May 2, 2016) ..........................................10, 11

*Doe v. SexSearch.com,*
    551 F.3d 412 (6th Cir. 2008) ......................................................................18

*Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.,*
    103 F.3d 888 (9th Cir.1996) .........................................................................6

*Foster v. Costco Wholesale Corp.,*
    291 P.3d 150 (Nev. 2012) ...........................................................................14

*Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.,*
    101 P.3d 792 (Nev. 2004) ...........................................................................21

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) .....................................................................................7

*Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.,*
    784 F.2d 1392 (9th Cir. 1986) ....................................................................13

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
    466 U.S. 408 (1984) ...................................................................................11

*Insco v. Aetna Health & Life Ins. Co.,*
    673 F. Supp. 2d 1180 (D. Nev. 2009) .........................................................14

*In re W. States Wholesale Nat. Gas Antitrust Litig.,*
    2007 WL 4284759 (D. Nev. Nov. 28, 2007) .................................................7

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) .....................................................................................6

*Joynt v. Cal. Hotel & Casino,*
    835 P.2d 799 (Nev. 1992) ...........................................................................22

*Lake v. Lake,*
    817 F.2d 1416 (9th Cir. 1987) ......................................................................8

*Lee v. GNLV Corp.,*
    22 P.3d 209 (Nev. 2001) .............................................................................17

*Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern,*
  651 P.2d 637 (Nev. 1982) ...................................................................................22

*Matthews v. Brookstone Stores, Inc.,*
  469 F. Supp. 2d 1056 (S.D. Ala. 2007) ..............................................................8

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
  647 F.3d 1218 (9th Cir. 2011) ............................................................................8

*Medinah Mining, Inc., v. Amunategui,*
  237 F. Supp. 2d 1132 (D. Nev. 2002) ...............................................................11

*Nevada Power Co. v. SAS,*
  2015 WL 6737015 (D. Nev. Nov. 2, 2015) ........................................................6

*Nimbus Data Sys., Inc. v. Modus LLC,*
  2014 WL 7387200 (N.D. Cal. Dec. 29, 2014) ..................................................12

*NuCal Foods, Inc. v. Quality Egg LLC,*
  887 F. Supp. 2d 977 (E.D. Cal. 2012) ................................................................7

*Omeluk v. Langsten Slip & Batbyggeri A/S,*
  52 F.3d 267 (9th Cir.1995) .................................................................................8

*Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.,*
  757 F.2d 1058 (9th Cir. 1985) ..........................................................................13

*Pebble Beach Co. v. Caddy,*
  453 F.3d 1151 (9th Cir. 2006) ......................................................................6, 10

*Phoneternet, LLC v. LexisNexis Risk Sols., Inc.,*
  2019 WL 4748271 (N.D. Tex. Sept. 30, 2019), *aff'd*, 816 F. App'x 909 (5th Cir. 2020) ......................................................................................................21

*Reynolds v. Binance Holdings Ltd.,*
  481 F. Supp. 3d 997 (N.D. Cal. 2020) ................................................................7

*Robins Dry Dock & Repair Co. v. Flint,*
  275 U.S. 303 (1927) ..........................................................................................22

*Sanchez v. Wal-Mart Stores, Inc.,*
  221 P.3d 1276 (Nev. 2009) ..........................................................................14, 19

*Schwarzenegger v. Fred Martin Motor Co.,*
  374 F.3d 797 (9th Cir. 2004) ...............................................................6, 8, 9, 12

*Scialabba v. Brandise Constr. Co.,*
  921 P.2d 928 (Nev. 1996) ..................................................................14, 16, 17, 19

*Sinatra v. Nat'l Enquirer, Inc.,*
  854 F.2d 1191 (9th Cir. 1988) ............................................................................9

*Software Dev. & Inv. of Nevada v. Wall,*
  2006 WL 8442597 (D. Nev. Feb. 13, 2006) ................................................10, 11

FENWICK & WEST LLP

*Sparks v. Alpha Tau Omega Fraternity, Inc.*,
   255 P.3d 238 (Nev. 2011) ........................................................................17, 18

*Spartalian v. Citibank, N.A.*,
   2013 WL 593350 (D. Nev. Feb. 13, 2013) ............................................14

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................14

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ....................................................................7

*Taylor v. Silva*,
   615 P.2d 970 (Nev. 1980) ........................................................................21

*Tapia v. Cal-western Reconveyance Corp.*,
   2012 WL 3231018 (D. Nev. Aug. 6, 2012) .....................................15, 20

*ThermoLife Int'l, LLC v. NetNutri.com LLC*,
   813 F. App'x 316 (9th Cir. 2020) ............................................................9

*TransparentBusiness, Inc. v. Infoba*,
   2021 WL 2670704 (D. Nev. Jun. 29, 2021).............................................11

*Treasury Mgmt. Servs., Inc. v. Wall St. Sys. Del. Inc.*,
   2016 WL 6916236 (S.D. Tex. Mar. 16, 2016).........................................12

*Tulip Trading Ltd. v. Bitcoin Ass'n for BSV & Others*
   [2022] EWHC 667 (Ch) BL-2021-000313  ...............................15, 16, 20

*Walden v. Fiore*,
   571 U.S. 277 (2014) ....................................................................7, 11, 12

*Wiley v. Redd*,
   885 P.2d 592 (Nev. 1994) ................................................................19, 20

*Yanase v. Auto. Club of S. Cal.*,
   212 Cal. App. 3d 468 (Cal. Ct. App. 1989) ...........................................20

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*,
   952 F. Supp. 1119 (W.D. Pa. 1997).....................................................9, 10

**Statutes**

Nev. Rev. Stat. § 14.065(1)..........................................................................6

**Rules**

Federal Rules of Civil Procedure

   Rule 12(b)(2)..................................................................................1, 7
   Rule 12(b)(6)................................................................................1, 13

FENWICK & WEST LLP

**NOTICE OF MOTION AND MOTION TO DISMISS**

Defendant Yuga Labs[1] ("Yuga Labs" or the "Company"), by and through its undersigned counsel, and pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), hereby moves to dismiss the negligence claim asserted against it by plaintiff Robert Armijo's ("plaintiff") in his Complaint ("Complaint" or "Compl.") (ECF No. 6).  This motion is supported by the following Memorandum of Points and Authorities, the Declaration of Nicole Muniz, the Request for Judicial Notice, the Declaration of Jennifer Bretan and Exhibit A thereto, the pleadings and papers on file, any argument of counsel, and such other matters as are properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff claims to be a victim of theft.  As alleged, a bad actor tricked him into providing access to his collection of "non-fungible tokens" or "NFTs" and quickly drained plaintiff's digital wallet of his prized collectibles.  Among them, a Bored Ape NFT and two Mutant Ape NFTs that plaintiff had purchased in the secondary market.  The criminal bad actor quickly offloaded the stolen NFTs and, no surprise, disappeared.  The theft was unfortunate, not just because valued NFTs were stolen.  In this case, the misfortune is all the worse because it was plaintiff – no one else – who opened the door, unlocked the safe, and, regretfully, let the thief right in.

Rather than direct his ire at those who actually wronged him, and acknowledge his own missteps, however, plaintiff now seeks to lay the blame for these events everywhere else.  Thus he takes aim, not just at the providers of secondary markets where the thief went on to sell the stolen NFTs, but at the original developer of the Bored Ape and Mutant Ape NFTs – Yuga Labs.  Even though ***he did not buy his NFTs from Yuga Labs***, and even though ***Yuga Labs had nothing whatsoever to do with the theft***, plaintiff nonetheless claims that it is somehow negligent for not preventing the criminal attack and for not voluntarily coming to his aid in the aftermath.  Just like Tiffany & Co. is not a downstream insurer of stolen diamond rings, and Topps does not guarantee against the theft of treasured baseball cards, however, the law is clear.  Absent a special

---

[1] On February 22, 2022, Yuga Labs, LLC converted to a Delaware corporation and is now Yuga Labs, Inc.

FENWICK & WEST LLP

relationship among the parties – and none is alleged here – there is no duty for a private entity like Yuga Labs to protect against third-party criminal attacks, provide aid after such attacks, or to monitor for holders of potentially stolen NFTs and prevent their use thereafter.  Plaintiff cannot simply manufacture duties and cry breach to state a claim.  This defect alone is fatal to the negligence claim against Yuga Labs and means the action against it must be dismissed.

Plaintiff's claim against Yuga Labs is subject to dismissal for another reason.  Plaintiff has not – and cannot – meet his burden to establish that this Court has personal jurisdiction over Yuga Labs.  Aside from a conclusory claim that Yuga Labs "transacted business in Nevada," there is not a single jurisdictional allegation specifically directed at Yuga Labs that would make jurisdiction here appropriate.  Instead, plaintiff lumps all defendants together and, in place of the requisite showing, offers unsupported, undifferentiated legal conclusions.  Such threadbare jurisdictional allegations fail as a matter of law.  And, at least as to Yuga Labs, the deficiency cannot be cured.  Yuga Labs is a Delaware entity.  It has no offices in Nevada, and none of its employees or contractors reside there.  Yuga Labs has never purchased or used any advertising space in Nevada and has never held a sales or marketing event – or any event of any kind – in Nevada.  To the extent Yuga Labs ever sold anything to residents of Nevada (which even plaintiff *does not* allege), any such sales have no connection whatsoever to plaintiff's claim *here*.  Nor is jurisdiction established merely because a publicly available information and discussion channel hosted by Yuga Labs was accessible to plaintiff in Nevada.  Such sites and interactions are not the sort of commercial activity that allow for the exercise of jurisdiction.

Even if plaintiff could establish personal jurisdiction and conjure up some sort of special relationship or cognizable legal duty on the scant facts here, the negligence claim against Yuga Labs still fails on the merits.  The other essential elements of a claim – breach, causation, and damages – are altogether lacking here.  As noted, Yuga Labs cannot have breached a duty that does not exist as a matter of law.  And as for causation, plaintiff offers only the implausible legal conclusion that Yuga Labs somehow caused plaintiff's injuries by creating a series of NFTs that *later* became so popular (and valuable) that bad actors now want to steal them.  That theory of causation is not only nonsensical, it is plainly belied by *specific* allegations demonstrating that

F ENWICK & W EST LLP

the theft was the **direct** product of third-party criminal activity and would not have occurred **but for** plaintiff's own negligence.  Finally, and setting aside plaintiff's inflated figures, the economic loss doctrine bars any claimed damages.

Yuga Labs feels for victims of theft and hopes plaintiff tracks down the actual wrongdoer. But he has no factual or legal basis for naming Yuga Labs in this case.  Personal jurisdiction is absent.  No cognizable legal duty is alleged, much less breach, causation, or damages.  Because none of these defects can be cured, Yuga Labs should be dismissed with prejudice.

## II.      STATEMENT OF FACTS

### A.      Yuga Labs

#### 1.      Yuga Labs' Lack of Activity in Nevada

At the time of the events at issue in the Complaint, Yuga Labs was a Delaware limited liability company with its principal place of business in Alexandria, Virginia.  Compl. ¶ 16.  It subsequently converted to a Delaware corporation.  *See* Declaration of Nicole Muniz ("Muniz Decl.") ¶ 2.  Yuga Labs does not have any offices in Nevada.  *Id.* ¶ 3.  Not one of Yuga Labs' employees or contractors resides in Nevada.  *Id.*  Yuga Labs has never purchased or used any physical advertising space in the state of Nevada, and it has never held a sales or marketing event – or an event of any kind – in the state of Nevada.  *Id.*

#### 2.      The Bored Ape and Mutant Ape NFTs

Yuga Labs is the developer of smart contracts (programmed lines of code) that, when executed on the Ethereum blockchain, allow individuals a license to mint pieces of digital art ("non-fungible tokens" or "NFTs").  Muniz Decl. ¶ 4.  As part of a large-scale, community-driven art project, in early 2021, it created a smart contract for a series of NFTs called "Bored Apes."  *Id.* ¶ 5; *see also* Compl. ¶ 34.  After Yuga Labs launched the smart contract in April 2021, collectors used the smart contract to mint a digital Bored Ape NFT (from a collection 10,000 Bored Apes that were made available to be minted) by paying 0.08 ETH (a cryptocurrency) to Yuga Labs as the developer.  Muniz Decl. ¶ 5.  The complete series sold out by May 1, 2021.  *Id.*  Based on the price of 0.08 ETH in the period Bored Ape NFTs were available to be minted, each Bored Ape cost approximately $169 to $236.  *Id.*  Later in 2021, Yuga Labs created another smart contract (a

FENWICK & WEST LLP

"serum") that, when executed, allowed individual Bored Ape owners to receive a "mutant" version of their Bored Ape NFT, resulting in another series of digital art collectibles, each a "Mutant Ape." *Id.* ¶ 6.  An additional 10,000 Mutant Ape NFTs were made available to mint, whether or not an individual held a Bored Ape NFT. *Id.*; *see also* Compl. ¶ 34.

### 3.     The Bored Ape Yacht Club

Once minted, a Bored Ape or Mutant Ape NFT confers on its holder certain commercial rights with respect to content featured on the NFT, which rights are tied to and transfer along with the NFT.  Muniz Decl. ¶ 7.  Yuga Labs does not control secondary purchases, sales, transfer, or trading of Bored Ape or Mutant Ape NFTs. *Id.*  While in possession of a Bored Ape or Mutant Ape NFT, holders may also be eligible for certain benefits and opportunities, the vast majority of which are offered by third parties unaffiliated with Yuga Labs. *Id.* ¶ 8.  Indeed, as the Bored Ape and Mutant Ape project took hold in the collective imagination, it spawned countless third-party websites, online and offline events, and other community-driven initiatives which Yuga Labs does not control. *Id.* ¶ 9; *see also* Compl. ¶ 38.  Yuga Labs maintains a website, the "Bored Ape Yacht Club" or "BAYC" (boredapeyachtclub.com), which is the virtual "home" of Bored Apes and Mutant Apes.  Muniz Decl. ¶ 8.  But, other than an ongoing token-gated feature, allowing NFT holders to make pixel-by-pixel contributions to a communal artwork, the site is largely passive and informational and does not provide specific benefits to NFT holders. *Id.*

### 4.     The Yuga Labs Discord Server

Yuga Labs also hosts a BAYC Discord channel.  Muniz Decl. ¶ 10.  The BAYC Discord is also an informational space, where individuals can learn of new announcements, review frequently asked questions, discuss Yuga Labs' various projects with other NFT holders and enthusiasts, or visit Yuga Labs' official channels across the web through verified links. *Id.*  Yuga Labs does not sell anything to anyone through the BAYC Discord. *Id.*  The BAYC Discord is accessible worldwide and includes both a public facing and token-gated channel. *Id.* ¶ 11.  The Yuga Labs employees who provide support on the BAYC Discord are not based in Nevada. *Id.*

### B.     The Alleged Purchase and Theft of Plaintiff's NFTs

At the heart of this suit are three NFTs plaintiff bought from sellers (***not*** Yuga Labs) on

FENWICK & WEST LLP

the OpenSea marketplace.  Compl. ¶¶ 30-32.  Specifically, BAYC #4329 (a Bored Ape NFT plaintiff bought on November 14, 2021) and MAYC #1819 and MAYC #7713 (two Mutant Ape NFTs purchased on November 15, 2021 and January 2, 2022, respectively).  *Id.*

As plaintiff recounts it, on February 1, 2022, he decided to trade away one of his Mutant Ape NFTs.  *Id.* ¶ 46.  Without any involvement by Yuga Labs, plaintiff visited a Discord server for Cool Cats (another NFT collection) and, using a chat feature, found a user (@Nodelee) who was interested in exchanging Cool Cats NFTs for one of plaintiff's Mutant Apes.  *Id.* ¶¶ 46-47.  After rejecting several "unfamiliar" trading sites proposed by @Nodelee, plaintiff suggested the "NFT Trader" website because he heard "from several reliable NFT community members" that it was a "legitimate and trustworthy trading platform."  *Id.* ¶ 47.  But rather than navigating to the NFT Trader website and setting up the trade himself, plaintiff instead chose to use a link provided by @Nodelee.  *Id.* ¶¶ 48-49.  Plaintiff claims the link opened what appeared to be the NFT Trader website.  *Id.* ¶ 49.  Once there, plaintiff verified that the information for the planned trade was correct and clicked a button to approve it.  *Id.* ¶ 50.  Nothing happened.  *Id.*  So, plaintiff clicked the button to approve the trade several more times.  *Id.*  Only then did plaintiff see that the amount of ETH in his digital wallet had dropped.  *Id.*  Checking his wallet, he also discovered that his Bored Ape NFT and Mutant Ape NFTs were gone.  *Id.*  Plaintiff realized his mistake: the link sent by @Nodelee was to a fake website instead of the real NFT Trader website.  *Id.* ¶ 51.  Apparently, each time he clicked the button, plaintiff was providing @Nodelee access to (and the opportunity to steal from) his digital wallet.  *Id.*

## C.   Plaintiff's Alleged Interactions with Yuga Labs

Plaintiff does not allege that he purchased the Bored Ape and Mutant Ape NFTs at issue from Yuga Labs.  *See* Compl. ¶¶ 30-32.  Nor does he allege that Yuga Labs was connected ***in any way*** to @Nodelee (or whoever it was that stole his NFTs), or to the series of events that enabled that theft, or to any of the software or mechanisms used to steal his NFTs.  *Id.* ¶¶ 46-51.  Yuga Labs also had nothing to do with the eventual resale of plaintiff's NFTs, nor could it have.  *Id.* ¶¶ 60, 62.  As plaintiff notes, the blockchain is decentralized, and transactions cannot be undone, and become "permanent and irreversible."  *Id.* ¶ 4; *see also* Muniz Decl. ¶ 8.

FENWICK & WEST LLP

Plaintiff's sole purported interaction with Yuga Labs in connection with the theft was an *after-the-fact* exchange based on a help ticket he submitted on the BAYC Discord seeking support. *Id.* ¶ 55. Plaintiff asked the Yuga Labs representative to post about plaintiff's stolen NFTs on social media and to "blacklist" and deny any holder of the stolen NFTs access to the Bored Ape Yacht Club website, supposedly to "disincentivize the theft" (although the theft had already occurred). *Id.* ¶ 57. According to plaintiff, the Yuga Labs representative explained that it was really an "issue between him and OpenSea" and, while the Company was sorry to hear about what happened, there was nothing Yuga Labs could do to help him. *Id.* ¶ 56. Plaintiff claims no other interaction with Yuga Labs, its employees, or any of its services or products.

## III.   ARGUMENT

### A.   Personal Jurisdiction Over Yuga Labs Is Absent

Plaintiff bears the burden of establishing personal jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (plaintiff must plead facts sufficient for a prima facie showing of jurisdiction). In the Ninth Circuit, "personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir.1996)). Nevada's long-arm statute allows courts to "exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States." Nev. Rev. Stat. § 14.065(1). Thus, personal jurisdiction in Nevada is proper only if it comports with federal due process. *See Nevada Power Co. v. SAS*, 2015 WL 6737015, at *1 (D. Nev. Nov. 2, 2015). To satisfy due process, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). Here, the burden has not been met.

### 1.   Boilerplate Recitals Of Jurisdiction Fail As A Matter Of Law

The Complaint does not contain a single jurisdictional allegation specific to Yuga Labs. Instead, plaintiff generally alleges that this Court has personal jurisdiction over *all* defendants

FENWICK & WEST LLP

because they "purposefully direct their conduct at Nevada, transact substantial business in Nevada, have substantial aggregate contacts with Nevada, have engaged and are engaging in conduct that has and had a direct, substantial, reasonably foreseeable and intended effect of causing injury to persons in Nevada." Compl. ¶ 19. These threadbare recitals – which make no distinctions among the defendants – are plainly insufficient to meet plaintiff's burden. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (affirming dismissal where plaintiff pleaded no facts alleging defendant's connection to forum state aside from plaintiff's domicile); *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden"); *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 2007 WL 4284759, at *6-9 (D. Nev. Nov. 28, 2007) ("conclusory allegations" that "lump together all [d]efendants" insufficient to establish personal jurisdiction); *NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 988 (E.D. Cal. 2012) ("legal conclusions" insufficient to show personal jurisdiction). This alone is a basis to dismiss under Rule 12(b)(2).

## 2. Plaintiff Also Cannot Allege General Jurisdiction Over Yuga Labs

"A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). After *Daimler*, a corporation is generally "at home" only in its state of incorporation and where its principal place of business is located, absent some "continuous and systematic" business contacts in another state. *See Daimler*, 571 U.S. at 127.

General jurisdiction is not established on the facts alleged here. Yuga Labs is a Delaware corporation. *See* Muniz Decl. ¶ 2. Plaintiff sets forth no facts to support general jurisdiction over Yuga Labs beyond a single, conclusory claim that it transacts substantial business in Nevada. This is not true and does not suffice. *See Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1003-04 (N.D. Cal. 2020) (no general personal jurisdiction over corporation that did not have its principal place of business in California where plaintiff failed to identify any other facts

FENWICK & WEST LLP

1  that would place corporation "at home" in California); *Matthews v. Brookstone Stores, Inc.*, 469

2  F. Supp. 2d 1056 (S.D. Ala. 2007) (holding that passive website and toll-free telephone number is

3  insufficient to establish general personal jurisdiction); *Mavrix Photo, Inc. v. Brand Techs., Inc.*,

4  647 F.3d 1218, 1226 (9th Cir. 2011) ("[A]n interactive website—even a 'highly interactive'

5  website—does not confer general jurisdiction.").

6  **3.    Plaintiff Cannot Allege Specific Jurisdiction Over Yuga Labs**

7  Specific jurisdiction over Yuga Labs is also lacking unless three requirements are met:

8  (1) Yuga Labs "must purposefully direct [its] activities or consummate some transaction with the

9  forum or resident thereof; or perform some act by which [it] purposefully avails himself of the

10  privilege of conducting activities in the forum, thereby invoking the benefits and protections of

11  its laws;" (2) "the claim must be one which arises out of or relates to the defendant's forum-

12  related activities;" and (3) "the exercise of jurisdiction must comport with fair play and

13  substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802 (citing *Lake v.

14  Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  This test helps to "ensure[] that a defendant will not

15  be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts."

16  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted).  "If any of the

17  three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due

18  process of law."  *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir.1995).

19  "The plaintiff bears the burden of satisfying the first two prongs of the [minimum contacts] test."

20  *Schwarzenegger*, 374 F.3d at 802.  Plaintiff does not come close to meeting the test here.

21  **a.    Plaintiff Cannot Establish Specific Personal Jurisdiction Based
22  On Yuga Labs' Purported Sales Or Advertising In Nevada**

23  In an ostensible attempt to satisfy his burden, plaintiff alleges that Yuga Labs "transacted

24  business in Nevada."  Compl. *Id*. ¶ 16.  But that averment is wholly conclusory and not enough.

25  Plaintiff ***does not*** allege sales or advertising by Yuga Labs in Nevada.  Plaintiff also admits that

26  his Bored Ape and Mutant Ape NFTs were purchased from a secondary seller, ***not Yuga Labs***.

27  *Id*. ¶¶ 30-32.  Even if plaintiff sought to cure those defects, by adding allegations about Nevada

28  sales or advertising, that does not help plaintiff meet his burden to establish personal jurisdiction

*in this case*, where any such activities would be entirely unconnected to plaintiff's claim.

It is well-established that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987). As such, the mere fact that Bored Ape and Mutant Ape NFTs ultimately ended up in the hands of a Nevada resident does not support personal jurisdiction over Yuga Labs in Nevada. Moreover, even if plaintiff could show that Yuga Labs sold NFTs to Nevada residents, that still would not suffice to establish jurisdiction here, where plaintiff purchased the subject NFTs from unrelated sellers and where those sales have no connection to his negligence claim, which is about *theft* of NFTs from him, not *sale* of NFTs to him. *See ThermoLife Int'l, LLC v. NetNutri.com LLC*, 813 F. App'x 316, 318 (9th Cir. 2020) ("ThermoLife cannot establish specific personal jurisdiction through nonspecific, nationwide sales, as, in the context of this case, any contact with Arizona would be 'random, fortuitous, or attenuated.' . . . ThermoLife failed to demonstrate that its claims arose out of or related to NetNutri's forum state contacts.") (internal citations omitted).

Not only are there no sales allegations establishing state-directed activities, Yuga Labs has never purchased or used any physical advertising space in Nevada and has not held sales or marketing events – or events of any kind – in the state of Nevada. *See* Muniz Decl. ¶ 3. Even if plaintiff could show advertising by Yuga Labs in Nevada – and he cannot – once again, it would be unthethered to his claim. *See Schwarzenegger*, 374 F.3d at 802 (no personal jurisdiction unless claim "arises out of or relates to the defendant's forum-related activities"); *cf. Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195-98 (9th Cir. 1988) (finding purposeful availment based on advertising where the claim itself was based on the content of the advertisements at issue).

### b. Plaintiff Cannot Establish Specific Personal Jurisdiction Based On The BAYC Website Or Discord Server

Whether the operation of a website constitutes "express aiming" sufficient to confer personal jurisdiction "is directly proportionate to the nature and quality of commercial activity that an entity conducts" through the website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *see Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th

FENWICK & WEST LLP

Cir.1997) (adopting Zippo sliding scale test).  There can be no personal jurisdiction where a defendant operates a "passive [w]ebsite that does little more than make information available to those who are interested in it."  *Zippo*, 952 F. Supp. at 1124; *see also Pebble Beach*, 453 F.3d at 1160 (website advertising bed and breakfast's accommodations, including lodging rates, menu, and wine list, was passive and thus insufficient to confer personal jurisdiction).  Even where a website allows users to exchange information, personal jurisdiction only exists if the exchange is "commercial" in nature.  *Zippo*, 952 F. Supp. at 1124.

Here, Plaintiff does not, and cannot, allege that the BAYC website or BAYC Discord are commercial in nature.  As to the former, plaintiff alleges no related interaction with the website, much less rising to the level of commercial activity.  As to the latter, as set forth below, his limited interaction with a support representative on the BAYC Discord does not suffice.  Even if the BAYC Discord channel could be deemed commercial activity directed at the forum (it is not), plaintiff's claim does not arise from provision of the BAYC Discord, and so specific personal jurisdiction on that basis fails.

### (1)     The BAYC Discord Server Is Passive

A website that "simply post[s] information . . . which is accessible to users in foreign jurisdictions" is passive.  *Zippo*, 952 F. Supp. at 1124; *see also Software Dev. & Inv. of Nevada v. Wall*, 2006 WL 8442597, at *2 (D. Nev. Feb. 13, 2006) ("[P]assive websites provide information and advertising and nothing more . . . [they] cannot confer specific personal jurisdiction.") (internal quotations omitted).  "There has to be something more than mere advertisement on the Internet alone to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state."  *Desert Rock Ent. II LLC v. D. Hotel & Suites, Inc.*, 2016 WL 1732724, at *4 (D. Nev. May 2, 2016) (internal quotations omitted) (no personal jurisdiction where hotel website did not geographically target the forum or forum residents, despite allowing forum residents to book rooms through website).

*Software Development* is instructive.  There, the court held that defendant's maintenance of "a 'blog' where he and third parties [could] post comments and remarks[,] which constitute[d] a majority of the site's format," was not sufficiently commercial to confer personal jurisdiction –

FENWICK & WEST LLP

even though the defendant also allegedly sold a book through the site.  *Software Dev.*, 2006 WL 8442597, at *3.  The court rejected personal jurisdiction "based on the mere possibility that Defendant will sell books to Nevada residents," reasoning that "minimal purchases by forum residents through a website are insufficient to establish personal jurisdiction."  *Id*.  Although the blog site was "interactive in the sense that it allow[ed] individuals to read and post comments on a forum," it did "not rise to the level of interactivity to tip the 'sliding scale' in favor of personal jurisdiction."  *Id*.; *see also Medinah Mining, Inc., v. Amunategui*, 237 F. Supp. 2d 1132, 1135 (D. Nev. 2002) (website that allowed the public to view and post information regarding companies was passive and thus insufficient to confer personal jurisdiction).

If the websites in *Software Development* and *Medinah* were not sufficiently commercial so as to confer personal jurisdiction, then neither is the BAYC Discord, which is akin to a forum or blog allowing parties to exchange communications.  The BAYC Discord is an informational space.  *See* Muniz Decl. ¶ 10.  Users visit the channel to learn about announcements or frequently asked questions, discuss Yuga Labs' various projects with other collectors and enthusiasts, or to visit Yuga Labs' official channels through verified links.  *Id.*  If anything, the BAYC Discord channel is even less interactive than the blog in *Software Development* because nothing is sold through the BAYC Discord server.  *Id.*  There must be "something more" to establish specific personal jurisdiction – and here, there is not.  *Desert Rock*, 2016 WL 1732724, at *4.  While the BAYC Discord may be open to Nevada residents, it simply does not target them.  Muniz Decl. ¶ 11; *see TransparentBusiness, Inc. v. Infoba*, 2021 WL 2670704, at *3-4 (D. Nev. Jun. 29, 2021) (no specific jurisdiction where website not aimed at Nevada or its residents).  Standing alone, the availability of the BAYC Discord channel is not enough to establish personal jurisdiction.

Plaintiff's limited interaction with a Yuga Labs representative on the BAYC Discord does not alter that fact.  *First*, as a threshold matter, "the relationship must arise out of contacts that the 'defendant *[it]self*'" creates with the forum state," and the defendant's contacts must be "with the forum State itself, not . . . with persons who reside there."  *Walden*, 571 U.S. at 284-85 (internal citations omitted); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration

when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). Here, Yuga Labs did not initiate the support interaction with plaintiff. *See* Compl. ¶ 55. But even if it had, that would just be remote contact with a person residing in the forum, not contact with the forum itself. *See Walden*, 571 U.S. at 285. ("[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."). *Second*, Courts routinely find that support is not commercial activity sufficient to establish personal jurisdiction over a defendant. *See e.g.*, *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1119-20 (D. Ariz. 2020) (rejecting claim that "personal jurisdiction over Defendant is appropriate because it is engaging in 'Arizona-based customer service, Arizona-based marketing and sales, and Arizona-based advice'"); *Nimbus Data Sys., Inc. v. Modus LLC*, 2014 WL 7387200, at *5 (N.D. Cal. Dec. 29, 2014) (no purposeful availment in California based on sale of computer equipment and ongoing tech support provided to California company); *Treasury Mgmt. Servs., Inc. v. Wall St. Sys. Del. Inc.*, 2016 WL 6916236, at *7 (S.D. Tex. Mar. 16, 2016) (rejecting personal jurisdiction based on fact that technical support was available to Texans on defendants' website). On both counts, plaintiff's self-initiated help ticket on the BAYC Discord fails to establish personal jurisdiction over Yuga Labs.

### (2)    The Claim Does Not Arise From The Discord Server

Under the second prong of the Ninth Circuit's test for specific personal jurisdiction, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *See, e.g.*, *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004). Stated differently, it asks whether defendant's forum-related activity was a "but for" cause of plaintiff's harm. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Nothing in Yuga Labs' operation of the BAYC Discord was a "but for" cause of plaintiff's alleged injury. It did not contribute to the theft of his Bored Ape and Mutant Ape NFTs, nor is it tied to alleged downstream consequences of his having been the victim of theft. *See* Compl. ¶ 143. Yuga Labs did not cause plaintiff to contact @Nodelee (on the Cool Cats Discord) to trade his NFTs. It did not deploy a phishing scam to steal plaintiff's NFTs. And, even if Yuga Labs' operation of its own BAYC Discord channel could be deemed a

FENWICK & WEST LLP

forum-related activity (it is not), plaintiff's claim (based on events that had ***already*** transpired) does not arise out of or relate to it.  In such circumstances, personal jurisdiction simply does not attach.  *See, e.g.*, *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1400 (9th Cir. 1986) (cause of action must arise out of forum-related activities).

### c.    The Exercise Of Jurisdiction Is Unreasonable

In the absence of any activity by Yuga Labs in Nevada, much less activity even arguably tied to plaintiff's claim, the exercise of jurisdiction here is unreasonable.  *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065-66 (9th Cir. 1985) (even if minimum contacts test met, no personal jurisdiction where exercise of jurisdiction was unreasonable).  In making that assessment, the Ninth Circuit evaluates a number of factors, including:  (1) the extent of the purposeful interjection into the forum state, (2) the burden on defendant of defending in the forum, (3) the extent of conflict with the sovereignty of defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum.  *See id.*  Here, the factors overwhelmingly reflect that jurisdiction in Nevada is not reasonable.  Yuga Labs directed no actions at the state.  It is a Delaware entity, has no employees in Nevada, and any evidence relating to it would be outside the state.  Muniz Decl. ¶¶ 2-3.  Because plaintiff could just as easily seek relief in a forum where general jurisdiction is available, and as there is no special state interest to speak of, burdening Yuga Labs with litigation in Nevada, simply because plaintiff is found here, is both unwarranted and unreasonable.

### B.    Plaintiff Fails To State A Claim For Negligence Against Yuga Labs

Even if plaintiff had met his jurisdictional burden, the negligence claim against Yuga Labs fails as a matter of law and must be dismissed.  A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face" in order to survive a motion to dismiss under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This requires plaintiff to plead "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.*  "Factual allegations must be enough to raise a right to relief above the speculative

FENWICK & WEST LLP

FENWICK & WEST LLP

1  level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The facts offered must "plausibly

2  suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

3  subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202,

4  1216 (9th Cir. 2011).  Unless a claim crosses the line from what is merely conceivable, to

5  plausible, the complaint must be dismissed.  *Twombly*, 550 U.S. at 570.

6      Plaintiff asserts that Yuga Labs was negligent.  Compl. ¶¶ 137-145.  To state a negligence

7  claim under Nevada law, plaintiff must allege that "(1) the defendant owed the plaintiff a duty of

8  care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's

9  injuries, and (4) the plaintiff suffered damages." *Foster v. Costco Wholesale Corp.*, 291 P.3d 150,

10  153 (Nev. 2012) (quotation omitted); *accord Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276

11  (Nev. 2009).  The Complaint here fails as to all four elements.  As an initial matter, plaintiff does

12  not and cannot plausibly allege "an existing duty of care" owed to plaintiff by Yuga Labs.  That

13  defect alone is fatal to the negligence claim.  *Insco v. Aetna Health & Life Ins. Co.*, 673 F. Supp.

14  2d 1180, 1191 (D. Nev. 2009) (absent showing an "existing duty of care" no prima facie claim

15  for negligence); *see also Spartalian v. Citibank, N.A.*, 2013 WL 593350, at *6 (D. Nev. Feb. 13,

16  2013) (dismissing negligence claim where Nevada law does not recognize plaintiff's alleged

17  duty).  Putting aside that no cognizable legal duty is alleged, the other elements of a negligence

18  claim are just as defective where it cannot be shown that Yuga Labs breached any applicable

19  standard of care, where the causation allegations do not rise beyond mere legal conclusions, and

20  where no damages are available on the claim.  *Twombly*, 550 U.S. at 555 (2007).[2]

21          **1.      Plaintiff Cannot Allege That Yuga Labs Owed Him A Duty Of Care**

22      Under Nevada law, "liability based on negligence does not exist in the absence of a

23  breach of duty." *Bradshaw v. Blystone Equip. Co. of Nev.*, 386 P.2d 396, 397 (Nev. 1963); *see

24  also Sanchez*, 221 P.3d at 1280-81.  Whether a duty of care exists is a question of law decided by

25  the Court.  *Id.* at 1280 (affirming dismissal of negligence claim where no duty found as a matter

26  of law); *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 930 (Nev. 1996) ("Whether a

27  _____
28  [2] As discussed below, plaintiff's negligence claim against Yuga Labs is barred by the economic loss doctrine.  *See* Sec. III.B.3.

defendant owes a plaintiff a duty of care is a question of law."); *Tapia v. Cal-western Reconveyance Corp.*, 2012 WL 3231018, at *5 (D. Nev. Aug. 6, 2012) (dismissing negligence claim where no existing duty to exercise reasonable care).

Here, where the purported "duties" plaintiff alleges are entirely manufactured and ***do not exist as a matter of law***, the claim against Yuga Labs must be dismissed. Without any support in fact or law, plaintiff claims that Yuga Labs had a "duty to monitor" the Bored Ape Yacht Club community to "ensur[e] the BAYC NFTs used to access private benefits on the BAYC platform were not the product of theft or fraud and being improperly used to gain access," to respond and act quickly when stolen BAYC NFTs were detected or reported by users, and to alert and cooperate with law enforcement officials to retrieve stolen BAYC NFTs. Compl. ¶¶ 12, 138. Plaintiff also invents a purported duty "to provide adequate customer service and reporting measures" to allow individuals to report thefts or illegal activity regarding BAYC NFTs to "competent customer service agents." *See id*. ¶¶ 12, 139.

Setting aside the baseless suggestion that Yuga Labs would not assist law enforcement, Yuga Labs has found no case in the Ninth Circuit, or elsewhere, recognizing anything close to these purported "duties," much less finding negligence based on them.[3] On the contrary, in the only case involving digital assets and similar factual circumstances, a court in the United Kingdom recently held that the defendant developers of a digital currency ***had no duty*** to protect against theft of users' digital assets by third parties or to allow their users the means to recover stolen digital assets. *See Tulip Trading Ltd. v. Bitcoin Ass'n for BSV & Others* [2022] EWHC 667 (Ch) BL-2021-000313; Declaration of Jennifer Bretan, Ex. A ("*Tulip Trading*").

*Tulip Trading* is directly on point. Plaintiff was the victim of a computer hack at his home office, leading to the loss of billions of dollars-worth of Bitcoin. Ex. A at p.3, ¶ 3. In addition to reporting the theft to police, who could not locate the perpetrator, plaintiff sued 16 core software developers of Bitcoin (who had no involvement in the hack but who allegedly

---

[3] If anything, the actual facts suggest the very opposite is true. While unnecessary to a decision here given the absence of allegations focused on the BAYC website, Yuga Labs' terms and conditions (applicable to holders of the Bored Ape and Mutant Ape NFTs) expressly disclaim responsibility for the safety and management of Bored Ape and Mutant Ape NFTs, for holders' digital wallets, and for transactions involving digital collectibles. *See* Muniz Decl. ¶ 8.

FENWICK & WEST LLP

1   "controlled" the digital asset networks), arguing that they owed plaintiff a duty of care and should

2   assist in regaining his control and use of the stolen assets.  *Id.* at p. 3, ¶ 6.

3        The High Court summarily rejected the argument that the Bitcoin developers owed a duty

4   to protect cryptocurrency owners from third party fraud and the loss of their assets.  *Id.* at pp. 21-

5   22, ¶ 87; p. 24, ¶¶ 99-100 (recognizing "the complaint made is of failures to act" and "there is no

6   general duty to protect others from harm.").  Declining to impose a new-fangled legal duty of

7   care on the Bitcoin developers, the Court held that doing so would be much more than an

8   incremental extension of the law, and "cannot realistically be argued to be fair, just and

9   reasonable." *Id.* at p. 26, ¶ 109.  While based on English common law, Nevada law derives from

10  the same common law tort principles, and the decision illustrates both the lack of any duty and

11  why courts will not adopt improvident new legal duties of the type plaintiff seeks to impose here.

12       As in *Tulip Trading*, under Nevada law, a private entity has no duty to protect another

13  from dangerous or criminal activity committed by a third party unless the parties have a special

14  relationship.  *See Scialabba*, 921 P.2d at 930.  As set forth below, there is no special relationship

15  between plaintiff and Yuga Labs.  Nor did Yuga Labs voluntarily assume any purported duties

16  through its acts or representations.  Because Nevada law does not impose a duty on Yuga Labs to

17  "monitor the BAYC community" as plaintiff suggests, or to "provide adequate customer service

18  and reporting measures" (consistent with plaintiff's suggested standards), no plausible negligence

19  claim is alleged against Yuga Labs and it must be dismissed.  *See, e.g.*, *Dearaujo v. PNC Bank*,

20  2012 WL 5818131, at *4 (D. Nev. Nov. 15, 2012) (dismissing negligence claim with prejudice

21  where plaintiff failed to establish the alleged duty under Nevada law).[4]

22       **a.**      **Plaintiff Fails To Allege A Special Relationship Giving Rise To**

23                **A Duty By Yuga Labs**

24       There is no duty to control the dangerous conduct of another under Nevada law (such as

25  protecting against a third-party attack) unless a special relationship exists between the parties.

26

27  [4] In effect, plaintiff offers a circular theory of negligence:  manufacturing "duties" based on what
    Yuga Labs allegedly failed to do.  If that were enough, negligence could be made out in every
    instance.  If anything, the very opposite is true here.  Because the claimed duties here ***do not***

28  ***exist as a matter of law***, Yuga Labs cannot be shown to have breached them.

FENWICK & WEST LLP

*See Scialabba*, 921 P.2d at 930; *see also Beckman v. Match.com, LLC*, 2017 WL 1304288, at *3-4 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018).  Short of pleading a "special relationship" with Yuga Labs, plaintiff's theory of negligence necessarily fails.

Nevada courts have recognized special relationships in several specific contexts, none of which are applicable here.  *See Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001) (collecting cases recognizing a special relationship between innkeeper-guest, teacher-student, employer-employee, and restaurant-patron); *see also Scialabba*, 921 P.2d at 930 (collecting cases recognizing special a relationship between landowner-invitee, businessman-patron, school district-pupil, hospital-patient, and carrier-passenger).  As the Nevada Supreme Court has found, the special relationship exception to the general "no duty" rule only comes into play when "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of another."  *Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244-45 (Nev. 2011) (quotation omitted).  Control is a "crucial factor" in establishing liability in the context of special relationships.  *Id.*  It "must be real and not fictional and, if exercised, would meaningfully reduce the risk of the harm that actually occurred."  *Id.* at 245.  Absent that degree of control, "there is no special relationship giving rise to a duty of reasonable care." *Id.*

The Complaint does not plausibly allege a special relationship between plaintiff and Yuga Labs.  Far from it.  The allegations much more readily demonstrate that plaintiff's predicament was of his own making.  *Beckman*, 2017 WL 1304288, at *3-4 (no negligence claim where plaintiff was not under defendant's control).  Here, the key facts leading to the loss of plaintiff's NFTs do not involve Yuga Labs, nor do they demonstrate that Yuga Labs had the type of control over plaintiff necessary to establish liability.  Plaintiff concedes that he purchased his Bored Ape and Mutant Ape NFTs from a secondary seller on OpenSea.  Compl. ¶¶ 30-32.  He pleads that those NFTs were stolen through a fake link to the NFT Trader website provided by @Nodelee, who he met on a Discord server for Cool Cats (an NFT collection unaffiliated with Yuga Labs).  *Id.* at ¶¶ 46-51.  None of this has anything whatsoever to do with Yuga Labs or even hints at a special relationship.

In place of facts making that showing, plaintiff offers only that Yuga Labs "controls" the

1    BAYC community and was aware that holders of coveted NFTs may be at "heightened risk" of

2    "criminal attacks" *Id*. at ¶ 64.  This averment is wholly conclusory and just state the obvious as to

3    holders of any valuable item.  What is clear is that neither does anything to suggest a ***special***

4    ***relationship*** giving rise to a duty to prevent third-party theft of NFTs, much less in the specific

5    manner plaintiff seeks to impose on Yuga Labs.

6         Plaintiff also cannot show that his ability to protect himself from phishing scams was in

7    any way limited by or subject to Yuga Labs' control.  The Complaint is replete with allegations

8    that plaintiff took steps to protect himself and knew of the dangers that scams and hacks posed to

9    owners of valuable NFTs.  When setting up the trade that ultimately led to the theft of his NFTs,

10   plaintiff admits that he refused to transact using trading sites with which he was "unfamiliar" and

11   specifically proposed NFT Trader because he heard it was "legitimate and trustworthy."  Compl.

12   ¶ 47.  According to plaintiff, "[m]any illegal thefts and transfers of BAYC NFTs have been

13   highly publicized across the internet and garnered national media attention." *Id*. ¶ 140.  Thus,

14   plaintiff's own allegations make clear that he was aware of the risk of online theft of his NFTs

15   and, but for his own missteps, had the ability to protect himself.  In no way was his ability to do

16   so limited by submission to the control of another.  *Sparks*, 255 P.3d at 245.[5]

17        The decision in *Beckman* makes the point well.  In that case, plaintiff was the victim of an

18   assault by a man she met on Match.com's dating service.  2017 WL 1304288, at *1.  Following

19   the attack, the plaintiff sued Match for negligence, and Match moved to dismiss, arguing that no

20   special relationship existed between the parties such that Match owed duties to plaintiff under

21   Nevada law.  *Id*. at *3.  The Court agreed and dismissed the complaint, noting "Match was so far

22   removed from any relationship between [plaintiff and her attacker] at the time of the attack that

23   no special relationship between Match and [plaintiff] existed." *Id*. at *4.  The Ninth Circuit

24   affirmed, holding that the negligence claim failed because "Nevada courts have never recognized

25   _____

26   [5] There is also no duty to warn or protect plaintiff where the danger was "open and obvious."
     *Doe v. SexSearch.com*, 551 F.3d 412, 420 (6th Cir. 2008) ("Where only one conclusion can be
     drawn from the established facts, the issue of whether a risk was open and obvious may be
27   decided by the court as a matter of law.") (quotation omitted).  Here, plaintiff ***admits*** that the risk
     of attacks by NFT scammers and thieves online was no secret.  *Id*. ("Internet users' anonymity
28   and potential for false personal representations are well known.").

FENWICK & WEST LLP

a special relationship akin to that between [plaintiff and defendant]," and that plaintiff failed to allege a special relationship where her ability to protect herself was in no way limited by any "submission to the control of the other." *Beckman v. Match.com, LLC*, 743 F. App'x 142, 143 (9th Cir. 2018); *see also Bibicheff v. PayPal, Inc.*, 2020 WL 2113373, at *4-5 (E.D.N.Y. May 4, 2020) (defendant PayPal had no duty to monitor and investigate plaintiff's account for third-party criminal's activity because no special relationship existed between plaintiff and PayPal or PayPal and the bad actor), *aff'd*, 844 F. App'x 394 (2d Cir. 2021).

Laid bare, plaintiff's central grievance is that, because Yuga Labs created smart contracts for a series of NFTs that are now considered "blue-chip" (*i.e.*, digital art collectibles that are the most highly coveted), it somehow has a duty to protect him (and all others in the community of Bored Ape and Mutant Ape holders) from third-party theft, resale, and use. *See* Compl. ¶ 143 ("But for BAYC's breach of its duty of reasonable care owed to Mr. Armijo as a BAYC community member, Mr. Armijo's BAYC NFTs would not have been a target for thieves because their utility would have been significantly diminished. It was BAYC's breach of its duties that caused Mr. Armijo to lose access and benefits provided by BAYC to its BAYC NFT owners."). But nothing in those claims demonstrates a special relationship with Yuga Labs or its control over plaintiff. *See Scialabba*, 921 P.2d at 930; *see also Wiley v. Redd*, 885 P.2d 592, 595-96 (Nev. 1994) (no special relationship between alarm company and police department the company alerted); *Sanchez*, 221 P.3d at 1280-81 (no special relationship between pharmacy and third parties harmed by pharmacy's patients). Just because the Bored Ape project met with great success, and the NFTs became valuable, does not mean Yuga Labs now has a special duty to provide protection to the BAYC community, as plaintiff suggests. Compl. ¶ 113. And absent a special relationship, the question of whether Yuga Labs could foresee that owners of its NFTs would be targeted by scammers and thieves (*id.* ¶ 72) is irrelevant. *Beckman*, 2017 WL 1304288, at *4 ("Only after a special relationship is established does the defendant have a duty to warn foreseeable victims of foreseeable harms."); *Sanchez*, 221 P.3d at 1280-81 (no duty to aid others unless ***both*** a special relationship exists ***and*** the harm from defendant's conduct is foreseeable).

The consequence of accepting plaintiff's theory and recognizing a new type of duty in

FENWICK & WEST LLP

such circumstances is not trivial.  It would introduce endless liability for creators of goods that might, one day, be the target of theft.  The absurdity of that proposition is self-evident.  Imagine a Ferrari owner suing the manufacturer, or car club, because her car was stolen months (or years) after she purchased it on the secondary market.  The practical impact and cost of imposing a duty on creators to protect all downstream purchasers from harm (or to deter such attacks, as plaintiff suggests) is also contrary to public policy, and weighs against imposition of a new legal duty where none exists.  *See Wiley*, 885 P.2d at 596 ("The concept of legal duty necessarily reflects considerations of social policy, and we perceive no sound basis for extending the reach of duty to include [defendant] under the circumstances of this case.").[6]  As the court in *Tulip Trading* noted, "the fact that the alleged duty would be owed to an unlimited class is another consideration militating against the existence of a duty of care." Ex. A at p. 25, ¶ 104.  Creators of coveted NFTs, like Yuga Labs, simply cannot insure against every unrelated, downstream loss suffered by members of the BAYC community.  That is particularly true here, where Yuga Labs had nothing whatsoever to do with the circumstances leading to the theft of plaintiff's NFTs.

**b.      There Is No Other Basis To Impose A Duty On Yuga Labs**

Plaintiff's inability to plead a special relationship is fatal to his negligence claim against Yuga Labs.  Suggesting that it had a "duty to monitor" or "to provide adequate customer service" does not salvage the claim.  Compl. ¶¶ 138-139.  There is no general duty to monitor the provision of its services to prevent theft.  *See Bledsoe v. US Bancorp*, 2013 WL 12129951, at *5 (C.D. Cal. June 12, 2013) (dismissing negligence claim and rejecting plaintiff's theory of bank's duty to prevent fraudulent activity and to maintain adequate safeguards, holding that "case law has made clear that banks do not owe their depositors a duty to monitor or police their accounts."); *see also Tapia*, 2012 WL 3231018, at *5 (negligence claim dismissed where

---

[6] Finding a duty under these circumstances also suggests an open-ended obligation to investigate, which courts disfavor.  *See Yanase v. Auto. Club of S. Cal.*, 212 Cal. App. 3d 468, 475-76 (Cal. Ct. App. 1989) (no special relationship between plaintiff injured at motel and automobile club that had provided lodging guide, because court "would be imposing not just a duty to warn but a duty to investigate, monitor and evaluate reports of off-premises dangers.  Given the potential scope of this duty, we are reluctant to impose it at all."); *see also Tulip Trading*, Ex. A at p. 25, ¶ 105 (rejecting duty where defendants "would be obliged to investigate and address any claim that a person had lost their private keys or had them stolen.  How they would go about that in practice… is wholly unclear.").

FENWICK & WEST LLP

"[d]efendants had no extra-contractual duty to exercise reasonable care to protect borrowers or to advance their interests"); *Bibicheff v. PayPal*, 844 F. App'x 394, 395-96 (2d Cir. 2021) (summary order) (website has no duty to monitor for and investigate third party accounts used to commit fraud).  The notion that Yuga Labs was somehow obliged to "ensure that NFT consumers are provided with safeguards and recourse from harm" (Compl. ¶ 86) thus runs contrary to well established Nevada law.  Likewise, Yuga Labs has identified no case in Nevada (or elsewhere) where a court imposed a duty to provide adequate customer service and reporting measures.  In fact, the law suggests that such a duty would not be recognized. *See, e.g.*, *Phoneternet, LLC v. LexisNexis Risk Sols., Inc.*, 2019 WL 4748271, at *11 (N.D. Tex. Sept. 30, 2019) (dismissing negligence claim where plaintiff "cites no legal authority to support its contention that [defendant] owed it or breached a duty arising from a special relationship based on [calls to defendant's] customer service department and representations made during those calls."), *aff'd*, 816 F. App'x 909 (5th Cir. 2020).

Plaintiff also does not plausibly allege that Yuga Labs or its employees somehow voluntarily assumed a duty of care in connection with the theft of his NFTs.  That argument is foreclosed by plaintiff's ***admission*** that, when he contacted Yuga Labs' support, "the employee told [plaintiff] that… there was nothing further BAYC could do to help him."  Compl. ¶¶ 55-57.  No other interaction with Yuga Labs or its employees, that could possibly result in an assumption of duty, is alleged.

### 2.    Plaintiff Cannot Allege That Yuga Labs Caused His Injury

Legal causation has two components: actual and proximate cause.  *Clark Cnty. Sch. Dist. v. Payo*, 403 P.3d 1270, 1279 (Nev. 2017).  To demonstrate actual cause, plaintiff must allege that "but for" defendant's actions, plaintiff would not have suffered the injury. *See Goodrich & Pennington Mortg. Fund, Inc. v. J.R. Woolard, Inc.*, 101 P.3d 792, 797 (Nev. 2004).  Proximate cause is "any cause which in natural foreseeable and continuous sequence, unbroken by any efficient intervening cause, produces the injury complained of and without which the result would not have occurred." *Id.* at 797 (quoting *Taylor v. Silva*, 615 P.2d 970, 971 (Nev. 1980) (internal quotation marks omitted)).  Although causation under Nevada law is generally an issue

FENWICK & WEST LLP

for the trier of fact, it becomes a question of law if the evidence cannot support any other inference. *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992).  In assessing causation, the court need not accept as true mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)).

Plaintiff's claim that Yuga Labs was the actual or proximate cause of his injury falls flat. The assertion that "[Yuga Labs'] negligence was a direct and proximate cause of Mr. Armijo's resulting damages" from the theft of his NFTs is not enough.  *See* Compl. ¶ 143.  That statement is conclusory and plainly insufficient.  *See e.g.*, *Iqbal*, 556 U.S. at 678.  More fundamentally, no injury flowed from any claimed breach by Yuga Labs.  Even if Yuga Labs fulfilled each of the supposed "duties" (*see* Compl. ¶ 141), plaintiff ***still would have suffered the alleged injury***.  The injury here was the result of (1) a criminal act; and (2) plaintiff's own missteps.  *See id.* ¶¶ 46-51. But for those acts, plaintiff's NFTs would not have been stolen, and he would not have lost the associated rights in them.  Plaintiff alone decided to trade his NFTs with an anonymous third party (*see id.* ¶¶ 47-48) and, as a result, he fell prey to a phishing scam (*see id.* ¶ 50).  Yuga Labs is noticeably absent in that chain of events and thus cannot be the legal cause of his injury.  *See PayPal*, 844 F. App'x at 395 (causation lacking where alleged injury was result of third party's unauthorized use of plaintiff's financial information).  Further, even if the duties plaintiff seeks to impose did exist, those obligations allegedly kick in only after plaintiff's NFTs were stolen.  If so, they would be ***after the fact of the theft*** and so ***could not be said to have caused that harm***.

### 3. The Economic Loss Doctrine Bars Any Claimed Damages

In a negligence case, the economic loss doctrine bars recovery for economic losses absent personal injury or damage to other property.  *Loc. Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Loc. No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982) (citing *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303 (1927)).  Pure economic loss is generally defined as the loss of the benefit of the user's bargain, including "pecuniary damage for inadequate value, the cost of

FENWICK & WEST LLP

1  repair and replacement of the defective product, or consequent loss of profits, without any claim

2  of personal injury or damage to other property." *Calloway v. City of Reno*, 993 P.2d 1259, 1263

3  (Nev. 2000) *overruled on other grounds by Mahon v. Howard & Howard Att'ys PLLC*, 499 P.3d

4  1176 (Nev. 2021).  The purpose of the rule "is to shield a defendant from unlimited liability for

5  all of the economic consequences of a negligent act, particularly in a commercial or professional

6  setting, and thus to keep the risk of liability reasonably calculable."  *Stern*, 651 P.2d at 638.

7   Even if plaintiff could establish that Yuga Labs owed him a duty, breached that duty, and

8  somehow caused plaintiff harm, the claim would still fail because only economic harm is alleged.

9  Plaintiff claims he lost his "BAYC NFTs worth at least $1 million" and "commercialization

10  rights to the ape characters underlying his BAYC NFTs and their future earning potential worth,

11  at a minimum, $5 million."  *See* Compl. ¶ 143.[7]  This "benefit of the bargain" type of loss is

12  precisely what the economic loss doctrine prohibits.  *Calloway*, 993 P.2d at 1263 ("[T]here can

13  be no recovery in tort for purely economic losses" which are defined as "the loss of the benefit of

14  the user's bargain") (quotation omitted).  Because no personal injury or property damage is

15  alleged, the economic loss doctrine would bar such a claim (if one existed at all).  *See Stern*, 651

16  P.2d 637 (negligence and strict liability claim for lost wages and employment benefits barred by

17  economic loss doctrine); *Arco Prods. Co. v. May*, 948 P.2d 263, 266 (Nev. 1997) (barring

18  recovery for lost profits due to defective cash registers).  To hold otherwise would mean Yuga

19  Labs has "unlimited liability for all of the economic consequences of a negligent act," a result

20  clearly barred in such circumstances.  *Stern*, 651 P.2d at 638.

21  **IV. CONCLUSION**

22   Plaintiff put himself in a position to have his NFTs stolen and that is unfortunate.  But it

23  does not provide him license to pursue baseless claims against others.  Here, where plaintiff

24  cannot demonstrate that personal jurisdiction over Yuga Labs is proper, and cannot otherwise

25  overcome the many, fundamental legal and factual deficiencies dooming a purported negligence

26  claim, Yuga Labs respectfully requests that its motion to dismiss be granted with prejudice.

27
28  [7] Plaintiff not only fails to ground the more than $6 million in damages he seeks in reality (Compl. ¶ 143), he never reconciles those claimed damages with the fact that, as alleged, the theft occurred while he was attempting to ***trade away*** one of his two Mutant Ape NFTs.  *Id.* ¶ 46.

Dated:    June 3, 2022

FENWICK & WEST LLP

By:    */s/ Jennifer C. Bretan*
          Jennifer C. Bretan

Michael S. Dicke (admitted *pro hac vice*)
Katherine A. Marshall (admitted *pro hac vice*)
Alison C. Jordan (admitted *pro hac vice*)
Samuel Sahagian (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350
Email: mdicke@fenwick.com
Email: jbretan@fenwick.com
Email: kmarshall@fenwick.com
Email: ajordan@fenwick.com
Email: ssahagian@fenwick.com

John D. Tennert III (Nevada Bar No. 11728)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2200
Facsimile: 775.786.1177
Email: jtennert@fclaw.com

*Attorneys for Defendant Yuga Labs*

1

## <u>CERTIFICATE OF SERVICE</u>

2

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on June 3, 2022, a

3

true and correct copy of **YUGA LABS' MOTION TO DISMISS THE COMPLAINT AND**

4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** was

5

transmitted electronically through the Court's CM/ECF e-filing electronic notice system to all

6

attorneys associated with the above-captioned case.

7

8

*/s/ Jennifer C. Bretan*

9

Jennifer C. Bretan
Fenwick & West LLP

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP

YUGA LABS' MOTION TO DISMISS
COMPLAINT

25

Case No.: 3:22-CV-00112-MMD-CLB