MICHAEL S. DICKE (admitted *pro hac vice*)
mdicke@fenwick.com
JENNIFER C. BRETAN (admitted *pro hac vice*)
jbretan@fenwick.com
KATHERINE A. MARSHALL (admitted *pro hac vice*)
kmarshall@fenwick.com
ALISON C. JORDAN (admitted *pro hac vice*)
ajordan@fenwick.com
SAMUEL SAHAGIAN (admitted *pro hac vice*)
ssahagian@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415.875.2300

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: 775.788.2212

*Attorneys for Defendant Yuga Labs, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT ARMIJO,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation, YUGA LABS LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company; LOOKSRARE; and DOES 1 to 50,<br><br>　　　　　　Defendants. | Case No.: 3:22-cv-00112-MMD-CLB<br><br>**DEFENDANT YUGA LABS' MOTION TO STAY DISCOVERY OR EXTEND DEADLINES UNDER FRCP 26(f) AND LR 26-1 AND TO VACATE CASE MANAGEMENT AND SCHEDULING ORDERS**<br><br>**ORAL ARGUMENT REQUESTED** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL BACKGROUND ......................................................................................... 2

III.  PROCEDURAL BACKGROUND ................................................................................. 4

IV.   ARGUMENT .................................................................................................................. 5

    A.   The Jurisdictional Challenge Is Compelling And Warrants A Stay ..................... 6

    B.   Discovery Is Not Warranted Because Plaintiff Has Not And Cannot State
        A Claim For Relief ................................................................................................ 9

    C.   The Competing Interests Of The Parties Favor A Stay ...................................... 12

V.    CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*5035 Vill. Trust v. Durazo*,
  2016 WL 6246304 (D. Nev. Oct. 24, 2016) .................................................................. 6

*Abrego v. U.S. Bank Nat'l Ass'n*,
  2014 WL 374755 (D. Nev. Jan. 31, 2014) .................................................................... 6

*Alexander v. Circus Circus Enters., Inc.*,
  972 F.2d 261 (9th Cir. 1992) ........................................................................................ 9

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 76 (2021) .............................. 8

*AMC Fabrication, Inc. v. KRD Trucking W., Inc.*,
  2012 WL 4846152 (D. Nev. Oct. 10, 2012) .................................................................. 9

*Atl.-Pac. Processing Sys. NV Corp. v. Plaut*,
  2022 WL 1694523 (D. Nev. Apr. 20, 2022) ................................................................ 13

*Bank of New York Mellon v. Stewart Info. Servs., Corp.*,
  2022 WL 494213 (D. Nev. Jan. 11, 2022) .................................................................... 6

*Brennan v. Cadwell Sanford Deibert & Garry LLP*,
  2020 WL 5653673 (D. Nev. Sept. 22, 2020) ........................................................ 6, 9, 12

*Duffy v. ASNY NY, LLC*,
  2022 WL 1785395 (D. Nev. May 31, 2022) ...................................................... 9, 11, 12, 13

*Georgiou Family Trust v. Ruthen*,
  2022 WL 195076 (D. Nev. Jan. 21, 2022) ............................................................ 6, 7, 8

*Jaramillo v. Area 15 Las Vegas LLC*,
  2021 WL 5826312 (D. Nev. Dec. 8, 2021) .................................................................. 5

*Kabo Tools Co. v. Porauto Indus. Co.*,
  2013 WL 12321307 (D. Nev. Apr. 15, 2013) ............................................................... 6

*Kidneigh v. Tournament One Corp.*,
  2013 WL 1855764 (D. Nev. May 1, 2013) ................................................................ 5, 6

*Lee v. GNLV Corp.*,
  22 P.3d 209 (Nev. 2001) ............................................................................................. 10

*Liberty Media Holdings, LLC v. Letyagin*,
  2012 WL 3135671 (D. Nev. Aug. 1, 2012) ................................................................ 6, 9

*Little v. City of Seattle*,
   863 F.2d 681 (9th Cir. 1988) ........................................................................................... 5

*Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*,
   288 F.R.D 500 (D. Nev. 2013) ....................................................................................... 13

*O'Handley v. Padilla*,
   2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ...................................................................... 8

*Puckett v. Schnog*,
   2013 WL 1874754 (D. Nev. May 3, 2013) ........................................................... 9, 12, 13

*Robinson v. Las Vegas Metro. Police Dep't*,
   2021 WL 5173616 (D. Nev. Nov. 4, 2021) ............................................................ 9, 10, 11

*Sateriale v. R.J. Reynolds Tobacco Co.*,
   697 F.3d 777 (9th Cir. 2012) ......................................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ........................................................................................... 8

*Segal v. Lefebvre*,
   2013 WL 12130553 (D. Nev. Nov. 14, 2013) .................................................................. 6

*Spacey v. Burgar*,
   207 F. Supp. 2d 1037 (C.D. Cal. 2001) ........................................................................... 8

*Sparks v. Alpha Tau Omega Fraternity, Inc.*,
   255 P.3d 238 (Nev. 2011) ........................................................................................ 10, 11

*Steinmetz v. Experian Info. Solutions, Inc.*,
   2019 WL 3082720 (D. Nev. July 15, 2019) ................................................................... 10

*Tradebay, LLC v. eBay, Inc.*,
   278 F.R.D. 597 (D. Nev. 2011) .................................................................................. 9, 12

*Urban Outfitters, Inc. v. Dermody Operating Co.*,
   2021 WL 3605053 (D. Nev. Aug. 13, 2021) ..................................................... 5, 9, 11, 13

*Wood v. McEwen*,
   644 F.2d 797 (9th Cir. 1981) ........................................................................................... 5

**Other Authorities**

Federal Rule of Civil Procedure Rule 26(f) ........................................................................... *passim*

Local Rule 26-1 ...................................................................................................................... *passim*

Fenwick & West LLP

# NOTICE OF MOTION AND MOTION TO STAY DISCOVERY OR EXTEND DEADLINE UNDER FRCP 26(f) AND LR 26-1

Defendant Yuga Labs, Inc. ("Yuga Labs" or the "Company"), by and through its undersigned counsel, and pursuant to District of Nevada LR IA 6-1, hereby moves to stay discovery, extend the deadlines triggered by the Federal Rule of Civil Procedure Rule 26(f) and LR 26-1, and accordingly, to vacate the Scheduling Order entered by Magistrate Judge Baldwin on July 21, 2022 (ECF No. 66) and Order to File Case Management Report (ECF No. 69) at this time. This motion is supported by the following Memorandum of Points and Authorities, the Declaration of Michael Dicke ("Dicke Decl."), the pleadings and papers on file, any argument of counsel, and such other matters as are properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Yuga Labs does not belong in this action, nor does it belong in this Court. Plaintiff's original complaint included a single claim for negligence against Yuga Labs, the developer of a popular series of digital art non-fungible tokens (the "Bored Ape NFTs"). Plaintiff contends that Yuga Labs is somehow responsible for the theft of his Bored Ape NFTs, notwithstanding that it had nothing whatsoever to do with the events leading to the loss, which was the product of plaintiff's own missteps and the alleged criminal acts of an unrelated third party. *See* ECF No. 6 ("Complaint"). Yuga Labs moved to dismiss for lack of jurisdiction and failure to state a claim. ECF No. 52 ("MTD"). As that motion and the supporting declaration of Yuga Labs' CEO (ECF No. 53) made clear – there was no legal or factual basis for asserting personal jurisdiction over Yuga Lab in Nevada, much less supporting a purported negligence claim against it.

Rather than oppose that motion, and try to stand behind the Complaint's obvious defects, plaintiff instead filed the First Amended Complaint ("FAC") (ECF No. 62). The FAC merely reasserts the same deficient claims, however, and is no more persuasive the second time around. There is still no basis for asserting jurisdiction over Yuga Labs. The FAC also offers nothing to cure the absence of any duty by Yuga Labs that could support a negligence claim, much less anything to establish any other elements of such a claim. If that were not enough, in a strained

effort to keep Yuga Labs in a case where it never belonged, the FAC compounds the harm to and burden on Yuga Labs by tacking on two additional (equally defective) contract-based claims. Yuga Labs has moved to dismiss once again. ECF No. 74 ("MTD FAC"). Rather than reasonably agree to put off discovery, case management, and substantive case scheduling as premature in light of Yuga Labs' jurisdictional challenge (and renewed motion to dismiss directed to the substantive claims), plaintiff instead insisted on pressing ahead full bore. He refused to defer the Rule 26(f) conference, and seeks to kick off discovery and other related obligations, before the Court has even had the opportunity to weigh the jurisdictional question or assess whether the claims against Yuga Labs stand. Compounding case inefficiencies, defendant LooksRare has yet to appear in the action, an issue that plaintiff has yet to address.

As Yuga Labs' motion to dismiss the FAC once again demonstrates, not only is personal jurisdiction over the Company lacking, there also is no good faith basis for the now-multiplied claims plaintiff attempts to pursue. Where, as here, resolution of a motion to dismiss may be dispositive of all claims against a party, and especially where there is a meritorious jurisdictional challenge, it is appropriate to stay discovery and any associated obligations, including any deadlines triggered by Federal Rule of Civil Procedure Rule 26(f) and Local Rule 26-1. As set forth below, a stay is particularly warranted under the circumstances of this case.[1]

## II.    FACTUAL BACKGROUND[2]

The basic facts remain unchanged in the FAC. Yuga Labs is the developer of smart contracts (programmed lines of code) that, when executed on the Ethereum blockchain, allow individuals a license to mint pieces of digital art ("non-fungible tokens" or "NFTs"). ECF No. 75 (hereinafter "Muniz Decl.") ¶ 4. As part of a large-scale, community-driven art project, in early 2021, Yuga Labs created a smart contract for a series of NFTs called "Bored Apes." *Id.* ¶ 5; *see*

---

[1] As noted in the MTD FAC and supporting papers (*see* MTD FAC at 12 n.2), it appears that on April 25, 2022 – **_before_** the FAC was filed – plaintiff may have sold his residence in Incline Village, Nevada, which was essential to his venue allegations. *See* FAC ¶¶ 15, 21-24; *but see* ECF No. 77 ¶¶ 3-4, Exs. B, C (deed of sale and related assessor's data reflecting sale and transfer of an Incline, Nevada residence previously belonging to plaintiff). Counsel for Yuga inquired about the sale, but received no response from plaintiff's counsel. *See* Dicke Decl. ¶ 10.

[2] A more thorough recitation of the facts is set forth in Yuga Labs' MTD and MTD FAC and supporting papers. *See* ECF Nos. 52, 74-77.

MOTION TO STAY DISCOVERY OR EXTEND DEADLINES UNDER FRCP 26(f) AND LR 26-1     2     Case No.: 3:22-CV-00112-MMD-CLB

*also* FAC ¶ 38. After launching the smart contract in April 2021, collectors were able to use it to mint a digital Bored Ape NFT (from a collection of 10,000 Bored Apes that were made available to be minted) by paying 0.08 ETH (a cryptocurrency) to Yuga Labs as the developer. Muniz Decl. ¶ 5. Later in 2021, Yuga Labs created another smart contract (a "serum") that, when executed, allowed individual Bored Ape owners to receive a "mutant" version of their Bored Ape NFT, resulting in another series of digital art collectibles, each a "Mutant Ape." *Id*. ¶ 6. An additional 10,000 Mutant Ape NFTs were made available to mint, whether or not an individual held a Bored Ape NFT. *Id*.; *see also* FAC ¶ 39. Once minted, a Bored Ape or Mutant Ape NFT confers on its holder certain commercial rights with respect to content featured on the NFT, which rights are tied to and transfer along with the NFT. Muniz Decl. ¶ 7. Yuga Labs does not control secondary purchases, sales, transfer, or trading of Bored Ape or Mutant Ape NFTs. *Id*.

Plaintiff alleges that he purchased one Bored Ape NFT and two Mutant Ape NFTs from secondary sellers (***not*** Yuga Labs). FAC ¶¶ 34, 36-37. A bad actor later allegedly duped plaintiff into providing access to the digital wallet containing plaintiff's collection of NFTs. FAC ¶¶ 80-85. The thief then stole plaintiff's Bored Ape NFTs and quickly sold them. *Id*. ¶¶ 85, 94.

Plaintiff did not buy the NFTs at issue from Yuga Labs. *See* FAC ¶¶ 33-37. Nor does he allege that Yuga Labs was connected ***in any way*** to the theft, the series of events that led to the theft, or to any of the software or mechanisms used to steal his NFTs. *Id*. ¶¶ 80-85. Yuga Labs also had nothing to do with the eventual resale of plaintiff's NFTs. *Id*. ¶¶ 94-95. The only purported interaction plaintiff had with Yuga Labs was in connection with an ***after-the-fact*** help ticket he submitted on Discord (a community chat and sharing platform used by many different NFT and gaming projects). FAC ¶¶ 89-91. Even though Yuga Labs had nothing to do with the theft of plaintiff's NFTs, plaintiff asked Yuga Labs to post about his stolen NFTs on social media and to "blacklist" and deny any holder of the stolen NFTs access to the Bored Ape Yacht Club website (the virtual home of Bored Ape NFTs), supposedly to "disincentivize the theft" (although the theft had ***already*** occurred). *Id*. ¶ 91. As a representative explained to plaintiff, while the Company was sorry to hear about what happened, there was nothing Yuga Labs could do to help him. *Id*. ¶ 90. Plaintiff claims no other interaction with Yuga Labs, its employees, or any of its

services or products.

During the events at issue in the FAC, Yuga Labs was a Delaware limited liability company with its principal place of business in Alexandria, Virginia. FAC ¶ 17. It subsequently converted to a Delaware corporation. *See* Muniz Decl. ¶ 2. Yuga Labs has no offices in Nevada, and none of its employees or contractors reside there. *Id.* ¶ 3. Yuga Labs has never purchased or used any physical advertising space in the state of Nevada, and it has never held a sales or marketing event – or an event of any kind – in the state of Nevada. *Id.*

### III.     PROCEDURAL BACKGROUND

Plaintiff's original Complaint, alleging a single claim (for negligence) against Yuga Labs, was filed in this Court on February 22, 2022. ECF Nos. 1, 6. On June 3, 2022, Yuga Labs moved to dismiss the Complaint for lack of jurisdiction and failure to state a claim, after efforts by Yuga Labs to disabuse plaintiff of his flawed assertion of jurisdiction proved unsuccessful. *See* ECF No. 52; Dicke Decl. ¶ 3. Ostensibly recognizing the jurisdictional defects and that his negligence claim would not withstand scrutiny, rather than oppose that motion, on June 24, 2022, plaintiff elected instead to file a first amended complaint. ECF No. 62 (the "FAC"). Ignoring Yuga Labs' lack of contacts with Nevada, the FAC does nothing to address the lack of jurisdiction, reasserts the same defective negligence claims, and now purports to add claims for breach of contract and breach of the covenant of good faith and fair dealing against Yuga Labs – despite Yuga Labs having **nothing whatsoever** to do with what led plaintiff to lose his NFTs. *See* FAC at ¶¶ 169-88.

Yuga Labs moved to dismiss the FAC on July 29, 2022. ECF No. 74. That motion reasserts Yuga Labs' challenges to this action on jurisdictional and substantive grounds. Despite the fact that the Court has not yet had the opportunity to weigh those likely dispositive issues, plaintiff refused to stipulate to defer the Rule 26(f) and LR 26-1 deadlines as premature. *See* Dicke Decl. ¶¶ 4, 6. On July 8, 2022, without waiving its jurisdictional arguments, Yuga Labs participated in a Rule 26(f) conference in good faith, raising its objection to discovery (including initial disclosures) proceeding and to setting a schedule for further proceedings until such time as the Court has had an opportunity to weigh the jurisdictional and substantive issues raised by the

FENWICK & WEST LLP

1. (now-pending) motions to dismiss. *See id.* ¶ 7. The parties also met and conferred on this motion to stay discovery, with plaintiff reiterating a refusal to stipulate to defer Rule 26(f) and LR 26-1 pending resolution of any motions to dismiss the FAC and indicating that he would seek to move forward with discovery notwithstanding any such motion, thereby necessitating this stay motion. *See id.* ¶ 8. The parties' positions regarding discovery were outlined in the Stipulated Discovery Plan and Scheduling Order, filed on July 20, 2022, including an express objection to the timing of initial disclosures under Federal Rules 26(a)(1)(c). *See id.* ¶ 9; ECF No. 65.

On July 21, 2022, the Court entered a Scheduling Order adopting plaintiffs' proposed discovery schedule. ECF No. 66. The same day, the Court issued an order requiring the parties to meet and confer regarding discovery matters in this action and to file a case management report. ECF No. 69.

## IV. ARGUMENT

Courts have broad discretionary power to control discovery. *See, e.g., Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). In deciding whether to grant a stay of discovery, the Court is guided by Rule 1's objective to ensure a just, speedy, and inexpensive determination of every action. *See Kidneigh v. Tournament One Corp.*, 2013 WL 1855764, at *2 (D. Nev. May 1, 2013). Courts in Nevada typically employ a three-factor test and ask: (1) whether there is a pending dispositive motion; (2) whether the potentially dispositive motion can be decided without additional discovery; and (3) whether a "preliminary peek" at the merits of the potentially dispositive motion suggests plaintiff will be unable to state a claim for relief.[3] *Urban Outfitters, Inc. v. Dermody Operating Co.*, 2021 WL 3605053 (D. Nev. Aug. 13, 2021) (citing *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601, 602-03 (D. Nev. 2011) (granting stay based on alleged lack of personal jurisdiction)); *see also Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (district court may "stay discovery when it is convinced that the plaintiff will be unable to

---

[3] More recent decisions adopt a more abbreviated approach, asking only whether "(1) the dispositive motion can be decided without further discovery; and (2) good cause exists to stay discovery." *Jaramillo v. Area 15 Las Vegas LLC*, 2021 WL 5826312, at *3 (D. Nev. Dec. 8, 2021) (granting stay and finding good cause exists where preliminary issues of personal jurisdiction are pending). Because good cause exists if "the movant can convince the Court that plaintiff cannot state a claim[,]" the "good cause" test is functionally the same as the "preliminary peek" test for purposes of this motion. *Id.*

state a claim for relief"). In light of these factors, courts frequently grant motions to stay to alleviate the burdens of discovery while potentially meritorious motions to dismiss are pending.[4] For the reasons discussed below, the Court should do so here.

### A. The Jurisdictional Challenge Is Compelling And Warrants A Stay

Personal jurisdiction is a foundational issue that often justifies a stay. *See Georgiou Family Trust v. Ruthen*, 2022 WL 195076 (D. Nev. Jan. 21, 2022) (granting stay based on alleged lack of personal jurisdiction); *Kabo Tools Co. v. Porauto Indus. Co.*, 2013 WL 12321307, at *1-2 (D. Nev. Apr. 15, 2013) (same); *Brennan v. Cadwell Sanford Deibert & Garry LLP*, 2020 WL 5653673, at *2 (D. Nev. Sept. 22, 2020) (granting stay where defendant's personal jurisdiction arguments "may have merit"). "[C]ourts are more inclined to stay discovery pending resolution of a motion to dismiss challenging personal jurisdiction because it presents a critical preliminary question." *Kabo*, 2013 WL 12321307, at *1 (internal quotations omitted). Put plainly, "[a] defendant should not be required to engage in expensive and burdensome discovery in a court that has no jurisdiction over him." *See Liberty Media Holdings, LLC v. Letyagin*, 2012 WL 3135671, at *5 (D. Nev. Aug. 1, 2012) (citing *E.I. Du Pont De Nemours & Co. v. Teflon Blood Inc.*, 2010 WL 1957306, at *2 (D. Colo. May 13, 2010) (finding defendant would be irreparably prejudiced by engaging in discovery only to have a Rule 12(b)(2) motion granted)). Thus, courts in this District have found that ***a motion challenging personal jurisdiction "strongly favors a stay***." *Kabo*, 2013 WL 12321307, at *1 (citing *AMC Fabrication, Inc. v. KRD Trucking W., Inc.*, 2012 WL 4846152, at *2 (D. Nev. Oct. 10, 2012) (granting stay based on alleged lack of personal jurisdiction)) (emphasis added).

---

[4] *See, e.g.*, *Bank of New York Mellon v. Stewart Info. Servs., Corp.*, 2022 WL 494213, at *4 (D. Nev. Jan. 11, 2022) (granting stay for potential lack of personal jurisdiction because "a stay of discovery will accomplish the objectives of Rule 1, particularly that which ensures the inexpensive determination of the action"); *5035 Vill. Trust v. Durazo*, 2016 WL 6246304, at *3 (D. Nev. Oct. 24, 2016) (granting discovery stay where the pending motion "present[ed] a dispositive legal question that would resolve Plaintiff's claims without the need for discovery"); *Abrego v. U.S. Bank Nat'l Ass'n*, 2014 WL 374755, at *1-3 (D. Nev. Jan. 31, 2014) (granting discovery stay pending resolution of motion to dismiss); *Segal v. Lefebvre*, 2013 WL 12130553, at *2 (D. Nev. Nov. 14, 2013) (granting stay because "it is more just to delay discovery to accomplish the inexpensive determination of the case than to speed the parties along in discovery while the dispositive motions are pending"); *Kidneigh*, 2013 WL 1855764, at *2 (granting motion to stay discovery because "temporary stay of discovery will further the goals of judicial economy and control of the Court's docket").

   This result makes sense and is wholly consistent with this Court's standing order, which states that "[j]urisdictional motions such as . . . Motions for Lack of Personal or Subject Matter Jurisdiction will be addressed before other motions in an effort to **diminish the need for the parties to engage in unnecessary discovery**." *See* United States District Judge Miranda M. Du's Civil Standing Order No. 1. ("Du Standing Order") at 1 (emphasis added). As the standing order makes clear, discovery prior to a ruling on a jurisdictional motion may prove entirely unnecessary if it turns out that the Court lacks jurisdiction over the parties or case.

   The procedural posture here closely resembles that in *Georgiou*. In *Georgiou*, defendants moved to dismiss, or in the alternative, strike plaintiff's amended complaint, which had triggered Rule 26(f) and LR 26-1 deadlines. 2022 WL 195076, at *1-2. Plaintiffs subsequently filed a motion to amend the complaint, and one defendant moved to stay discovery (joined by the other defendant), based on an alleged lack of personal jurisdiction over defendants. *Id*. at *2. The court granted the motion to stay because "[p]reliminary issues of jurisdiction [were] currently pending in front of the court[,]" and "[t]he motions to dismiss" may be dispositive of the entire case. *Id*. at *5. Furthermore, "[n]o additional discovery [was] necessary" because, after taking a "preliminary peek" at the pending motions to dismiss, the court was "not convinced Plaintiffs will overcome Defendants' arguments." *Id*.

   Here, just as in *Georgiou*, Yuga Labs challenges personal jurisdiction. As Yuga Labs' motion and supporting declaration reflect, jurisdiction is disputed here, where (1) Yuga Labs is not "at home" in the forum state, but is a Delaware corporation, with no offices, employees, or contractors in this state; (2) Yuga Labs has never advertised in Nevada or held an event of any kind in Nevada; (3) none of Yuga Labs' sales (if any) to Nevada residents have any connection to plaintiff's claims; and (4) plaintiff's after-the-fact effort to contact Yuga Labs through its Discord server does not constitute commercial activity supporting jurisdiction. *See* MTD FAC at 6-12; Muniz Decl. ¶¶ 2-3, 10-12.

   The FAC's effort to bolster the personal jurisdiction allegations, for example by characterizing the community of holders of Bored Ape NFTs (the Bored Ape Yacht Club or "BAYC") as a nationwide club run by Yuga Labs with members in Nevada (FAC ¶ 21), does not

change this result. As noted, courts in a particular state do not have personal jurisdiction over a club (especially a virtual one) simply because the organization supposedly has members in a state – even where the organization interacts with those members. *See* MTD FAC at 7-8; *O'Handley v. Padilla*, 2022 WL 93625, at *25 (N.D. Cal. Jan. 10, 2022) (granting motion to dismiss for lack of personal jurisdiction because "[n]ational organizations are not subject to jurisdiction in every state where their members live").

Likewise, efforts by ***third parties*** to engage with Nevada residents about the BAYC through "advertisements, airdrops, and exclusive commercial opportunities" (FAC ¶ 22) does not constitute purposeful direction or purposeful availment ***by Yuga Labs*** in Nevada. *See* MTD FAC at 8-9; *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211-12 (9th Cir. 2020) (affirming dismissal for lack of personal jurisdiction where third parties used defendant's website to geo-target forum state residents but defendant "d[id] not personally control the advertisements shown on the site"), *cert. denied*, 142 S. Ct. 76 (2021); *Spacey v. Burgar*, 207 F. Supp. 2d 1037, 1044-45 (C.D. Cal. 2001) (no personal jurisdiction based on third party advertisements on defendants' websites).[5] But even if Yuga Labs itself advertised to Nevada residents in Nevada (it did not), there is still no personal jurisdiction because ***plaintiff's*** claims do not arise out of those ads. *See* MTD FAC at 9; *and see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (no personal jurisdiction unless claim "arises out of or relates to the defendant's forum-related activities"). For similar reasons, none of the purportedly "interactive" websites described in the FAC (FAC ¶¶ 75-79) establish personal jurisdiction over Yuga Labs because plaintiff's alleged claims do not arise from his interaction with those sites. *See* MTD FAC at 9-12; *Schwarzenegger*, 374 F.3d at 802 (claims must relate to the alleged "forum-related activities.").

Because these "issues of jurisdiction" may be dispositive, they weigh heavily in favor of staying discovery at this time. *See, e.g.*, *Georgiou*, 2022 WL 195076, at *5. Nor is any

---

[5] *Spacey* is on point. Plaintiff relies on billboards and bus stop ads featuring images of Bored Ape NFTs in Nevada, claiming "[i]t is unclear what role BAYC itself played in the advertising campaign" and that it is "[m]ore likely" that BAYC "implicitly allowed" the campaign to be conducted. FAC ¶ 70. Plaintiff's confusion on this point is a mystery, however, as he raised these issues with Yuga Labs' counsel ***before filing the FAC*** and was told, in no uncertain terms, that the Company had ***nothing to do with those advertisements***. *See* Dicke Decl. ¶ 2. The uncontroverted declaration of Yuga Labs' CEO also forecloses the issue. *See* Muniz Decl. ¶ 3.

discovery on the issue necessary.  Whether personal jurisdiction exists is a "matter[] of law," and the facts on this point, as provided in Yuga Labs' CEO's supporting declaration, are uncontroverted.  *See Brennan*, 2020 WL 5653673, at *2 (whether the court has personal jurisdiction is a matter of law); *Alexander v. Circus Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (for "purposes of personal jurisdiction," a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit").  Yuga Labs should not be forced to engage in substantive case management obligations and negotiations on discovery matters, much less face potentially invasive, burdensome, and expensive discovery, where jurisdiction is absent.  *See Liberty Media Holdings*, 2012 WL 3135671, at *5.

Even if the magistrate judge were to find plaintiff's jurisdictional allegations sufficient, ***a stay is still appropriate*** because the way "the [magistrate judge] sees the jurisdictional picture may be very different from how the assigned district judge will see the jurisdictional picture." *AMC Fabrication*, 2012 WL 4846152, at *4.  Because it is ultimately the district court judge who will make a final determination on personal jurisdiction, "the orderly course of justice," suggests that it is appropriate to stay discovery pending the resolution of the motion to dismiss. *Puckett v. Schnog*, 2013 WL 1874754, at *3 (D. Nev. May 3, 2013); *see also AMC Fabrication*, 2012 WL 4846152, at *4.  A meritorious challenge to jurisdiction pending, either way, Yuga Labs' motion to stay discovery should be granted.

### B.  Discovery Is Not Warranted Because Plaintiff Has Not And Cannot State A Claim For Relief

A stay of discovery is appropriate for the separate and independent reason that the complaint likely fails to state a viable claim for relief.  *See Duffy v. ASNY NY, LLC*, 2022 WL 1785395 (D. Nev. May 31, 2022) (granting stay where plaintiff likely failed to state a claim for relief); *Robinson v. Las Vegas Metro. Police Dep't*, 2021 WL 5173616 (D. Nev. Nov. 4, 2021) (same); *Urban Outfitters*, 2021 WL 3605053 (same).  "The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery." *Tradebay*, 278 F.R.D. at 601 (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)).  "[D]iscovery follows the filing

of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim for relief." *Steinmetz v. Experian Info. Solutions, Inc.*, 2019 WL 3082720, at *1 (D. Nev. July 15, 2019) (quoting *Mujica v. AirScan Inc.*, 771 F.3d 580, 583 n.7 (9th Cir. 2014)).

*Robinson* is instructive. There, taking a preliminary peek at the merits of defendant's pending motion to dismiss, the Court found the underlying claims wanting and stayed discovery. *Robinson*, 2021 WL 5173616, at *2. Specifically, the court found that "[t]he gravamen of Defendant's motion is that Plaintiff has failed to provide the factual basis for her claims and has asserted claims that are not applicable against the [Las Vegas Metropolitan Police Department]." *Id*. Thus, the court held, "this is a case where a temporary stay of discovery will further the goal of judicial economy." *Id*. Just as in *Robinson*, there is no factual or legal basis for any of the claims against Yuga Labs and a stay of discovery is warranted. *See* MTD FAC at 1-3, 13-24.

Specifically, as set forth in its motion to dismiss, absent a special relationship among the parties, none of the purported "duties" underlying plaintiff's negligence claim have any basis in law. *See* MTD FAC at 13-18. Plaintiff's new-fangled contention that putative membership in the virtual Bored Apes Yacht Club, as a holder of Bored Ape NFT, somehow creates a special relationship with Yuga Labs (*see* FAC ¶ 209) has no basis in law. *See* MTD FAC at 14-18. Nevada courts recognize special relationships only in certain specific contexts, and club membership is not among them. *See Lee v. GNLV Corp.*, 22 P.3d 209, 212 (Nev. 2001). More fundamentally, and as described at length in Yuga Labs' motion, a special relationship requires that a party's ability to protect itself has somehow been limited by another. *See* MTD FAC at 15; *and see Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d 238, 244-45 (Nev. 2011) (special relationship requires a showing that "ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of the other"). But as the motion makes clear, there is no such showing. MTD FAC at 15-16. No facts are alleged to show that **Yuga Labs** somehow limited plaintiff's ability to avoid interacting with a bad actor, on a third-party website, or to click (multiple times) on an unverified phishing link provided by an alleged thief. *Id*. On the contrary, **by plaintiff's own admission (***see* FAC ¶¶ 81-85***)**, Yuga Labs

had nothing to do with the events leading to the theft, and he alone opened the door, unlocked the safe, and let the thief right in. *See* MTD FAC at 15-18. Nor is any other cognizable legal duty alleged on the facts here, much less the other elements of a negligence claim (such as breach, causation, or damages). *See id.* at 18-20.

Plaintiff's manufactured contract claim in the FAC is also an afterthought and suffers from numerous facial deficiencies. *See id.* at 20-23. Statements by Yuga Labs on the BAYC website or Twitter cannot constitute a contractual "offer" to join the BAYC. *See id.* at 20-21. Even if one could consider the statements "advertisements" (itself a subject of debate), they are merely "preliminary invitations," not "offers" in the contractual sense, unless they "leave nothing for negotiation." *Id.* (citing *Foremost Pro Color, Inc. v. Eastman Kodak Co.*, 703 F.2d 534, 539 (9th Cir. 1983)); *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 788 (9th Cir. 2012). As set forth in the motion, here, where the purported "offer" fails to specify any details of the alleged contract, much less provide for perpetual BAYC membership benefits to any "rightful" owner of a Bored Ape NFT, irrespective of holding a Bored Ape NFT (*see* FAC ¶¶ 158, 178-79), the contract claim fails out of the gate. *See* MTD FAC at 20-23 (noting plaintiff cannot point to any language, *anywhere*, stating that BAYC membership benefits are available to individuals who do not hold a Bored Ape NFT according to the blockchain and discussing the BAYC terms and conditions which provide the opposite).

Likewise, plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails. *See id.* at 23-24. As noted, such a claim is available only where there is literal compliance with a contract but conduct that otherwise "deliberately [contravenes] the intention and spirit of the contract." *Id.* at 23 (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991)). As discussed in the motion, however, the technology underlying the Bored Ape NFTs functioned precisely as they were programmed to do: identifying cryptographically current holders of Bored Ape NFTs. *See id.* at 23.

Here, just as in *Robinson*, *Duffy*, and *Urban Outfitters*, consideration of the pending motion(s) to dismiss on substantive grounds heavily favor a stay of discovery.[6] No discovery is

---

[6] The arguments described herein are equally applicable to the pending motion by Ozone

necessary, either, because Yuga Labs' arguments are based on "matters of law[,]" (*Brennan*, 2020 WL 5653673, at *2) and the very "purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint *without* subjecting themselves to discovery" (*Tradebay*, 278 F.R.D. at 601 (citing *Rutman Wine*, 829 F.2d at 738) (emphasis added)).  Because Yuga Labs' motion should lead the Court to reject plaintiff's misguided effort to insert Yuga Labs into a case where it does not belong, and nothing can cure those defects, a stay of discovery and all related obligations is warranted at this time.

### C. The Competing Interests Of The Parties Favor A Stay

In deciding whether a stay is appropriate, some courts also weigh "the competing interests of the parties," taking into account "'the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Puckett*, 2013 WL 1874754, at *3 (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (competing interests weigh in favor of a stay where defendant's motion was likely to dispose of the entire case).  Engaging in that exercise here clearly favors entry of a discovery stay.  Nevada courts consistently hold that a defendant will be greatly prejudiced if it is forced to commence discovery in the absence of jurisdiction or where a claim lacks merit. *See, e.g.*, *Duffy*, 2022 WL 1785395, at *3 ("Defendants would be prejudiced by spending time and money responding to premature discovery.  The prejudice is increased if Plaintiffs discovered facts without which they otherwise could not assert a claim").  This precise concern is echoed in the Court's standing order, which provides for jurisdictional motions to be addressed first in order to reduce the need for "unnecessary discovery." Du Standing Order at 1.

Plaintiff, on the other hand, is not at all prejudiced by a short delay while the Court considers the jurisdictional and substantive challenges set forth in Yuga Labs' anticipated motion to dismiss the FAC. *See Puckett*, 2013 WL 1874754, at *3 (finding that "[p]laintiff will not suffer hardship from the stay").  In fact, given that Yuga Labs' anticipated motion to dismiss the Networks (ECF No. 71), which also weighs in favor of a stay of discovery.

FAC is very likely dispositive of the entire case, "forcing the parties to conduct discovery … *could cause both parties unnecessary hardship.*" *Id*. (emphasis added). The parties will be able to set a schedule for further proceedings in this action, and engage in discovery, once the Court ensures that it has jurisdiction and the pleadings are framed (*if* the Court concludes any viable claim remains).[7] *See Duffy*, 2022 WL 1785395, at *3 ("[I]f discovery is stayed and the Court later denies Defendant's motion to dismiss, Plaintiffs may only suffer a delay in receiving answers to their discovery requests."). Under the circumstances here, where jurisdiction is absent and where potentially dispositive motions are pending, it makes all the sense in the world to pause so that the Court has the opportunity to weigh these issues *before* burdening defendants further. Pressing forward with discovery is just not warranted at this time.

## V. CONCLUSION

For all the reasons set forth in Yuga Labs' motion to dismiss the FAC, Yuga Labs has raised compelling jurisdictional and substantive challenges that are likely dispositive of the entire case against it. Therefore, the Court should stay discovery, including the deadlines triggered by Rule 26(f) and LR 26-1, and vacate the Rule 26(f) report, Scheduling Order, and Order to File Case Management Report (and attendant discovery-related obligations) entered July 21, 2022 as premature, and adjourn further case scheduling until such time as the pending motions to dismiss have been decided.[8]

Dated: August 3, 2022            FENWICK & WEST LLP

By:    */s/ Jennifer C. Bretan*
        Jennifer C. Bretan

---

[7] Setting a schedule is also premature where one named defendant, LooksRare, has yet to appear.

[8] *See Urban Outfitters*, 2021 WL 3605053, at *5 (granting stay where "each of the *Tradebay* **factors supports staying discovery**") (emphasis added); *Duffy*, 2022 WL 1785395, at *3 (noting a discovery stay "accomplish[es] the objectives of Rule 1, especially considering that Plaintiffs must satisfy Rule 8's pleading requirement before engaging in discovery"); *Atl.-Pac. Processing Sys. NV Corp. v. Plaut*, 2022 WL 1694523, at *1 (D. Nev. Apr. 20, 2022) (granting stay where motions to dismiss were "sufficiently meritorious" and "potentially dispositive"); *see also id.* at *2 (mooting case management orders and ordering discovery plan to be resubmitted after resolution of pending motions to dismiss if any claims survive); *Ministerio Roca Solida v. U.S. Dep't of Fish & Wildlife*, 288 F.R.D 500, 507 (D. Nev. 2013) (granting discovery stay and ordering parties to file a joint status report or proposed discovery plan and scheduling order only *after* ruling on pending motions to dismiss).

Michael S. Dicke (admitted *pro hac vice*)
Katherine A. Marshall (admitted *pro hac vice*)
Alison C. Jordan (admitted *pro hac vice*)
Samuel Sahagian (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350
Email: mdicke@fenwick.com
Email: jbretan@fenwick.com
Email: kmarshall@fenwick.com
Email: ajordan@fenwick.com
Email: ssahagian@fenwick.com

John D. Tennert III (Nevada Bar No. 11728)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2200
Facsimile: 775.786.1177
Email: jtennert@fclaw.com

*Attorneys for Defendant Yuga Labs, Inc.*

# **CERTIFICATE OF SERVICE**

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on August 3, 2022, a true and correct copy of **YUGA LABS' MOTION TO STAY DISCOVERY OR EXTEND DEADLINE UNDER FRCP 26(f) AND LOCAL RULE 26-1 AND TO VACATE CASE MANAGEMENT AND SCHEDULING ORDERS** was transmitted electronically through the Court's CM/ECF e-filing electronic notice system to all attorneys associated with the above-captioned case.

*/s/ Jennifer C. Bretan*
Jennifer C. Bretan
Fenwick & West LLP