MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone: 702.678.5070
Facsimile: 702.878.9995
malarie@atllp.com

EMILY NUVAN, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 17722
ARMSTRONG TEASDALE LLP
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Telephone: 801.401.1406
enuvan@atllp.com

ROMAINE C. MARSHALL, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 9654
JOSE ABARCA, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 12762
POLSINELLI
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104
rmarshall@polsinelli.com
jabarca@polsinelli.com

*Attorneys for Plaintiff Robert Armijo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT ARMIJO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation; YUGA LABS, LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company; LOOKSRARE; and DOES 1 to 50,<br>　　　　Defendants. | Case No.: 3:22-cv-00112-MMD-CLB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT YUGA LABS' MOTION TO STAY DISCOVERY OR EXTEND DEADLINES UNDER FRCP 26(f) AND LR 26-1 AND TO VACATE CASE MANAGEMENT AND SCHEDULING ORDERS (ECF NO. 78)** |

   Plaintiff Robert Armijo, by and through his counsel, Armstrong Teasdale LLP and Polsinelli, files this Opposition to Defendant Yuga Labs, Inc.'s f/k/a Yuga Labs, LLC d/b/a Bored Ape Yacht Club ("Yuga Labs") Motion to Stay Discovery or Extend Deadlines Under FRCP 26(f) and LR 26-1 and to Vacate Case Management and Scheduling Orders ("Motion to Stay"). This Response in

1

opposition is made and based upon the following Memorandum of Points and Authorities, the papers and pleadings already on file herein, and any argument the Court may allow at the time of the hearing on the Motion.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

Mr. Armijo's claims arise from the latest technologies and newest iteration of the internet known as "web3." Web3 involves a complex web of concepts, including blockchain technology, decentralization, cryptocurrencies, decentralized autonomous organizations ("DAOs"), and non-fungible tokens ("NFTs"). To date, web3 remains largely unregulated, and courts are only now beginning to determine how these new concepts and technologies interact within our established legal system.

In this new world, Yuga Labs has emerged as an early leader of the web3 space. As creator of the enormously popular Bored Ape Yacht Club ("BAYC"), its corresponding Bored Ape and Mutant Ape NFTs (collectively, "BAYC NFTs"), and subsequent expansion into other real world and digital spaces, Yuga Labs has enjoyed astronomical success. Yuga Labs' BAYC NFTs are one of the most popular NFT collections ever created. However, despite its success (financial and otherwise) and significant expansion beyond simply "creating" the BAYC NFTs collection, Yuga Labs has failed to implement even basic security measures to discourage BAYC NFT theft, which has created a situation where thieves are emboldened to target BAYC NFT owners without fear of consequences. This failure led to a thief stealing three BAYC NFTs owned by Mr. Armijo, which were quickly sold at a price far below their value. Rather than help Mr. Armijo, Yuga Labs disclaimed all responsibility, stripping Mr. Armijo, a rightful club member, of his membership in the BAYC club and depriving him of the multitude of benefits Mr. Armijo is entitled to as a BAYC club member. This lawsuit seeks to hold Yuga Labs responsible for its actions (and inactions) that damaged Mr. Armijo.

Yuga Labs filed a Motion to Dismiss the First Amended Complaint, arguing that this Court

---

[1] Defendant OpenSea joined and adopted Yuga Labs' Motion to Stay. *See* Joinder to Defendant Yuga Labs' Motion to Stay Discovery or Extend Deadlines (ECF No. 82). Therefore, the arguments in this Response in opposition apply equally to both Yuga Labs and OpenSea.

1   lacks personal jurisdiction over Yuga Labs pursuant to Federal Rule of Civil Procedure 12(b)(2) and
2   that Mr. Armijo has failed to state a claim pursuant to Rule 12(b)(6). *See* ECF No. 74 ("MTD").  Based
3   on the potentially dispositive motion, Yuga Labs now asks this Court to stay all discovery pending
4   adjudication of its motion. *See* Motion to Stay, ECF No.78.  A discovery stay is inappropriate because
5   Yuga Lab's dispositive motion is without merit.  There is no reason to disturb the orderly progress of
6   discovery in this case.

7       Yuga Labs first claims that because it is a Delaware entity with no offices or employees in
8   Nevada this Court cannot have personal jurisdiction over it. *See id.* at 2. Yuga Labs argument falls flat.
9   The First Amended Complaint ("FAC," ECF No. 62) sets forth a multitude of facts demonstrating
10  Yuga Labs' extensive use of interactive websites to conduct commercial transactions with and
11  otherwise reach out to BAYC club members like Mr. Armijo and those that reside in Nevada.
12  Moreover, Yuga Labs touts itself as part of the decentralized web3 space and its commercial business
13  relies on these new technology concepts.  Yuga Labs appreciates the benefits of decentralization in its
14  commercial transactions.  As such, Yuga Labs should be prohibited form relying on traditional
15  boundary notions when its own business model seeks to eliminate those very same boundaries.

16      Yuga Labs also claims that even if the Court were to find personal jurisdiction, Mr. Armijo has
17  failed to state a claim requiring dismissal of the entire case thereby warranting a stay of discovery.
18  Again, Yuga Labs argument falls flat.  Yuga Labs' motion is forcing this Court to make an early
19  determination regarding the merits of the case and the likelihood of success of the party's motion to
20  dismiss. This process circumvents the usual procedures for resolving such motions. *See Turner*
21  *Broadcasting Sys., Inc. v. Tracinda Corp.* 175 F.R.D. 554, 556 (D. Nev. July 18, 1997). As such, stays
22  should only be granted "where the complaint was utterly frivolous, or filed merely for settlement
23  value." *Id.*

24      That is not the case here.  Discovery should therefore proceed.
25      Indeed, a "preliminary peek" at the issues raised in the FAC demonstrates that, not only did
26  Yuga Labs purposely direct its conduct toward Nevada, and therefore, establish personal jurisdiction
27  in this District, but that Yuga Labs has a special relationship with Mr. Armijo due to its complete
28  control of all aspects of the BAYC club, including the distribution of all benefits and opportunities that

BAYC club members enjoy. This special relationship gave rise to Yuga Labs' duty to monitor the BAYC club—a duty that Yuga Labs breached by failing to verify that the BAYC NFTs used to access its exclusive club were not the product of theft or fraud. Knowing that Yuga Labs' refuses to perform its gatekeeping duties, thieves are incentivized to target and attack BAYC NFT owners because they know that Yuga Labs is no respecter of property rights and will reward the "holder" of a BAYC NFT with the benefits of BAYC club membership even if that "holder" is a thief with no legal right to the underlying property.

Yuga Labs disputes the existence of a special relationship and denies that it has a duty to monitor its BAYC club and protect BAYC NFT owners. These are factual contentions. Discovery should only be stayed based on a pending dispositive motion "when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." *Brennan v. Cadwell Sanford Deibert & Garry LLP*, No. 2:20-cv-00799-JAD-VCF, 2020 WL 5653673, at *2 (D. Nev. Sept. 22, 2020). As described below, the FAC includes numerous factual issues that go beyond the bounds of being mere questions of law. *See Kor Media Grp., LLC v. Green*, 294 F.R.D. 579 (D. Nev. Oct. 29, 2013) (holding that the Court was not convinced that Plaintiff would be unable to state a claim for relief because Plaintiff's complaint raised "questions of fact properly developed through discovery").

For these reasons, Yuga Labs' request to stay discovery pending adjudication of the MTD should be denied.

II.     BACKGROUND

Yuga Labs is the original creator and developer of the BAYC NFTs, which consist of 10,000 original Bored Ape NFTs and up to 20,000 Mutant Ape NFTs. *See* FAC at ¶¶ 38-39. Far more than a "community-driven art project," *see* Motion to Stay, ECF No. 78, at 2, BAYC NFTs are the key to membership in the exclusive BAYC club, which allows BAYC NFT owners to receive all the special rights and privileges that Yuga Labs releases (and will continue to release) to the members of the BAYC club. The membership benefits include substantial perks, such as access to exclusive community events, airdrops of valuable BAYC NFTs and affiliated NFTs, access to limited-time-only BAYC merchandise, preferential status in Yuga Labs' new virtual metaverse known as "The

Otherside," and airdrops of Yuga Labs' defacto cryptocurrency known as ApeCoin, which is used to buy and sell goods throughout the BAYC ecosystem. *See* FAC at ¶¶ 61-68. But most importantly, Yuga Labs grants BAYC NFT owners the full commercial rights to their digital images and the underlying ape characters. *Id.* at ¶ 52. BAYC NFT owners have capitalized on this unique situation by, among other things, creating music bands with their apes at the helm, opening Bored Ape restaurants, and licensing their ape characters for comic books, film, and tv projects. *Id.* To say the least, membership in the BAYC club has substantial financial reward.

Yuga Labs is the gatekeeper of the exclusive BAYC club. It is also the distributor of the opportunities and benefits that come with BAYC NFT ownership and BAYC club membership, including the grant of the license to the underlying commercialization rights. As such, Yuga Labs has the ability to deny access to the BAYC club, refuse to disperse BAYC club benefits, and revoke a BAYC NFT's commercialization rights should Yuga Labs choose to do so. A BAYC NFT that has been barred from accessing the BAYC club and stripped of its membership benefits and commercialization rights would have no utility. The incentive to buy, hold, or sell such a BAYC NFT would be minimal and, thus, a powerful deterrent against thieves. Regrettably, Yuga Labs refuses to take any such measures despite its apparent extensive knowledge of these issues.

Mr. Armijo is an NFT enthusiast who became involved with the NFT community in November 2021. Through his purchase of Bored Ape NFT #4329 and Mutant Ape NFTs #1819 and #7713, Mr. Armijo became a member of the exclusive BAYC club. On February 1, 2022, all three of Mr. Armijo's BAYC NFTs were stolen in an instant. *See Id.* at 80-85. The theft occurred when Mr. Armijo was unwittingly interacting with a thief through the online communication platform known as "Discord." *Id.* Discord is a different and separate entity that is completely unaffiliated with Yuga Labs, but highly active within the web3 space. Until recently, Discord appeared to be one of Yuga Lab's preferred online communication platforms.

Following the theft, Mr. Armijo desperately contacted OpenSea, an online NFT marketplace, to try and have OpenSea block any sales of Mr. Armijo's stolen BAYC NFTs. *Id.* at ¶¶ 86-87. OpenSea did not respond. Mr. Armijo next turned to Yuga Labs for help. He went to the BAYC Discord server and began messaging with a Yuga Labs employee on the Discord customer service channel for Yuga

Labs. *Id.* at ¶ 89. Rather than offer help, Yuga Labs employee told Mr. Armijo there was nothing Yuga Labs could do about it because "there are too many issues like this happening." *Id.* at ¶¶ 89-91.

Yuga Labs may not have been involved in the theft of Mr. Armijo's BAYC NFTs, but Yuga Labs' negligence knowingly put a target on Mr. Armijo's back. Among other things, Yuga Labs owed Mr. Armijo as a BAYC club member a duty to implement adequate security processes and monitor its BAYC club for stolen NFTs, and a duty to provide adequate customer service for victims of BAYC NFT theft. These duties arose from the special relationship Yuga Labs has with Mr. Armijo and all BAYC club members—namely, as the gatekeeper of the BAYC club, Yuga Labs is in the best and most effective position to implement standards and processes that will disincentive BAYC NFT theft and the targeting of BAYC club members. Any person who purchases a BAYC NFT and becomes a BAYC club member submits themselves to Yuga Labs' control, and their ability to protect themselves is limited by the actions and nonactions of Yuga Labs.

### III.   PROCEDURAL HISTORY

Mr. Armijo filed his initial Complaint on February 28, 2022, with a corrected image filed the next day.[2] (ECF No. 6.) Mr. Armijo thereafter agreed to provide Yuga Labs substantial additional time to respond to the Complaint. (ECF No. 27.) Yuga Labs filed its motion to dismiss the Complaint asserting a lack of personal jurisdiction over it and failure to state a claim. (ECF No. 52.)

Mr. Armijo then timely and properly elected to exercise his right under Fed. R. Civ. P. 15(a) to amend his pleading as a matter of course, and filed the FAC on June 24, 2022. (ECF No. 62.) Mr. Armijo again granted Yuga Labs substantial additional time to respond to the FAC. On July 29, 2022, Yuga Labs moved to dismiss the FAC, renewing its jurisdictional and substantive challenges. (ECF No. 74.)

---

[2] Yuga Labs continues to draw attention to the fact that Mr. Armijo sold his residence in Incline Village, Nevada on April 25, 2022, two months after the case began but before the FAC was filed. *See* Motion to Stay (ECF No. 78), at 2 n.1; MTD (ECF No. 74), at 12 n.2. Although Yuga Labs' motives are unclear, it is worth noting that the sale has no bearing on the jurisdiction or venue considerations in this case. Mr. Armijo was a resident of Nevada at the time the events described in the initial Complaint occurred and when the initial Complaint was filed in this District. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004) (quoting *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824)) ("It has long been the case that the jurisdiction of the court depends upon the state of things at the time of the action brought.") (internal citations omitted).

Thereafter, Mr. Armijo initiated the scheduling of the Fed. R. Civ. P. 26(f) conference required under Local Rule 26-1, but faced pushback from Yuga Labs regarding its scheduling. The Fed. R. Civ. P. 26(f) conference eventually occurred on July 8, 2022. The parties were unable to reach an agreement on discovery scheduling because, in part, Yuga Labs (and OpenSea) noted that it would be moving to stay discovery. Following the Fed. R. Civ. P. 26(f) conference, the parties submitted a Stipulated Discovery Plan and Scheduling Order on July 20, 2022, in which the parties outlined their opposing views regarding how discovery in this case should proceed. (ECF No. 65.) On July 21, 2022, this Court entered a Scheduling Order adopting Mr. Armijo's proposed discovery plan and timeline. (ECF No. 66.) Mr. Armijo served his Initial Disclosures to Yuga Labs on July 22, 2022. Yuga Labs served its objection to serving initial disclosures that same day. Yuga Labs filed the instant Motion to Stay on August 3, 2022. (ECF No. 78.)

As explained below, a stay of discovery is not warranted merely because a dispositive motion is pending. Discovery should be allowed to continue according to the Scheduling Order.

## IV.   LEGAL STANDARD

There is no provision in the Federal Rules of Civil Procedure that provides for "automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. Dec. 13, 2011). With the exception of challenges to preliminary issues such as jurisdiction, venue, or immunity, courts in this District have found that "ordinarily, a dispositive motion does not warrant a stay of discovery." *Id.* at 601 (citations omitted). "[M]otions to stay may be granted when: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a 'preliminary peek' at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief." *Kor*, 294 F.R.D. at 581.

The party seeking the stay of discovery "carries the heavy burden of making a strong showing why discovery should be denied." *Tradebay*, 278 F.R.D. at 601 (citing *Turner*, 175 F.R.D. at 556). The moving party "must show a particular and specific need" for staying discovery, and mere inconvenience and expense is not enough to establish good cause for the delay of the normal course of discovery proceedings. *Id.* at 601-02.

1   Because motions to dismiss are a frequent part of federal practice, the speedy determination of
2   cases has become increasingly difficult, and prohibiting or delaying all discovery often causes
3   "unwarranted delay," which is in direct contradiction to the Court's mandate under Rule 1: "to secure
4   the just, speedy, and inexpensive determination of every action." *Tradebay*, at 603; Fed. R. Civ. P. 1.
5   Therefore, "[a] stay of all discovery should only be ordered if the court is 'convinced' that a plaintiff
6   will be unable to state a claim for relief." *Kor*, 294 F.R.D. at 583 (quoting *Tradebay*, 278 F.R.D. at
7   603). This is a difficult standard to meet. "Generally, there must be *no question* in the court's mind that
8   the dispositive motion will prevail, and therefore, discovery is a waste of effort. Absent extraordinary
9   circumstances, litigation should not be delayed simply because a non-frivolous motion has been filed."
10  *Id.* (citation omitted) (emphasis in original).

## V. LEGAL ARGUMENT

### A. Yuga Labs' Jurisdictional Challenge Does Not Warrant a Stay of Discovery.

Pending dispositive motions do not ordinarily warrant a stay of discovery; though challenges to preliminary issues such as jurisdiction are sometimes an exception. *Tradebay*, 278 F.R.D. at 601. "Whether the Court has personal jurisdiction over [defendant] is a critical preliminary question. However, it is not a question that *mandates* a stay of discovery." *AMC Fabrication, Inc. v. KRD Trucking W., Inc.*, No. 2:12-CV-00146-LDG, 2012 WL 4846152, at *2 (D. Nev. Oct. 10, 2012) (emphasis in original). Issuing a stay on discovery is within the sound discretion of the court. The three-factor test announced in *Kor Media Group* requires that the court consider whether: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief." 294 F.R.D. at 581. Under this test, discovery should be allowed to continue in the ordinary course "where pertinent facts bearing on the question of jurisdiction are controverted *or* where a more satisfactory showing of the facts is necessary." *AMC Fabrication*, 2012 WL 4846152, at *4 (emphasis in original).

The deadline for Mr. Armijo to oppose Yuga Labs' MTD is still two weeks away, thus Mr. Armijo has not yet had the opportunity to fully articulate his response to the jurisdictional issues raised

in the MTD.³ However, for purposes of this opposition, Mr. Armijo focuses on the more limited issues raised in Yuga Labs' Motion to Stay: (1) Yuga Labs' business model; (2) BAYC advertisements in Nevada; and (3) how Mr. Armijo's claims relate to Yuga Labs' contacts with this forum.

First, Yuga Labs is not a traditional manufacturer of widgets, nor is it a typical online retailer or seller of ordinary goods. Rather, Yuga Labs is a web3 company that is built for and relies upon an international community of BAYC club members. Yuga Labs may be incorporated in Delaware, but its business is anywhere its BAYC club members reside. Buying a BAYC NFT and becoming a BAYC club member is not a one-time interaction with Yuga Labs—it is merely the beginning of a continuing relationship in which Yuga Labs promises that the "benefits and offerings will increase over time." *See* FAC ¶ 22. Yuga Labs communicates directly with its BAYC club members through Twitter and Discord, using its social media platforms to announce new interactive websites, promotional activities, and exclusive commercial opportunities and interactions for the community to engage in. Yuga Labs also encourages a resale market for its BAYC NFTs (and profits off same to the tune of 2.5% per re-sale). Any person who buys a BAYC NFT becomes a BAYC club member regardless of whether they purchased the BAYC NFT from Yuga Labs directly or from a third-party seller. *See Ford Motor Comp. v. Eighth Judicial District Court*, 141 S.Ct. 1017, 1022-23 (2021) (explaining how plaintiff fostered an ongoing relationship between Ford and its customers that satisfied the threshold for establishing personal jurisdiction).

Disregarding the substantial contacts and ongoing relationship it fosters with each BAYC community member, including those who live in Nevada, Yuga Labs insists that its contacts with this District are so minimal they could never rise to the level to support a finding of personal jurisdiction. Under this theory, the only place Yuga Labs could ever face a lawsuit is its place of incorporation in Delaware. Yuga Labs is attempting to have a foot in both worlds: it wants to take advantage of the decentralized nature of web3, allowing Yuga Labs to have a substantial impact wherever its members are located, while simultaneously relying on traditional business case law to save it from suit in a

---

³ Mr. Armijo believes the FAC contains more than enough jurisdictional facts to overcome Yuga Labs' jurisdictional challenge. However, Mr. Armijo's response in opposition to the MTD will include a request to conduct limited jurisdictional discovery to address controverted facts (including the vague statements within the Declaration of Nicole Muniz) bearing on the question of jurisdiction.

1   district where one of its members suffered injury because of Yuga Labs' negligence. This cannot stand.

2   As detailed in the FAC, and upon information and belief, Yuga Labs maintains substantial and ongoing relationships with BAYC club members, which include Mr. Armijo and other Nevada residents. Yuga Labs has created continuing obligations to its Nevada BAYC club members by offering exclusive access to merchandise, gifts, opportunities, and sales of all new Yuga Labs products and experiences. Yuga Labs also partners with and/or implicitly allows third parties to solicit its club members and the public in Nevada and engage with BAYC club members in Nevada through the use of advertisements, airdrops, and exclusive commercial opportunities. *See* FAC at ¶¶ 59-79.

To the extent Yuga Labs challenges these contentions, Mr. Armijo requests jurisdictional discovery to ascertain how many BAYC club members have lived or currently live in Nevada and the history of transactions, including both physical and digital goods, that have been sent to BAYC club members in Nevada. "[J]urisdictional discovery would be helpful to elaborate on the contacts [Yuga Labs] had with Nevada" and could help determine purposeful availment. *See Klein v. Freedom Strategic Partners, LLC*, 595 F.Supp. 2d 1152, 1160 (D. Nev. Feb. 2, 2009). Because Yuga Labs' MTD cannot be decided without further jurisdictional discovery, the Motion to Stay should be denied. *See Kor Media Group*, 294 F.R.D. at 581 (second factor in three-factor test).

Second, in July 2021, a large advertising campaign featuring BAYC NFT images as well as Yuga Labs' intellectual property, including the official "BAYC" name and BAYC logo, was conducted throughout Las Vegas, Nevada. FAC ¶¶ 69-70. Despite Yuga Labs' contending that it has "never purchased or used any physical advertising space in the state of Nevada," s*ee* Declaration of Nicole Muniz, ECF No. 75 ¶ 3, Yuga Labs has never explained why its intellectual property was used in this Nevada-based and directed advertising campaign. Yuga Labs does not explain who actually conducted the advertising campaign and whether they did so with the approval of Yuga Labs. Yuga Labs must explain why its intellectual property was used in such a blatant and public display in one of the most popular cities in the world. Mr. Armijo requests jurisdictional discovery to ascertain the origins of this advertising campaign and Yuga Labs' knowledge of it. As such, the Motion to Stay should be denied because this issue cannot be decided without further jurisdictional discovery.

Third, Yuga Labs argues that even if it did advertise in Nevada or use commercial interactive

websites to purposely direct its conduct toward Nevada residents, this still wouldn't be enough to establish personal jurisdiction over Yuga Labs because Mr. Armijo's claims did not arise out of his interactions with those sites or advertisements. *See* Motion to Stay (ECF No. 78), at 8. Yuga Labs' "causation-only approach" to personal jurisdiction is incorrect. *See Ford Motor*, 141 S.Ct. at 1026. As the Supreme Court recently held in *Ford Motor*, "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do . . . our most common formulation of the rule demands that the suit 'arise out of *or relate to* the defendant's contacts with the forum.'" *Id.* (citation omitted) (emphasis in original). Indeed, there must be a "strong relationship among the defendant, the forum, and the litigation." *Id.* at 1028 (citation omitted). Such is the case here.

Yuga Labs encourages people all over the world, including in Nevada, to buy BAYC NFTs and become members of the BAYC club. As previously explained, once a person becomes a BAYC club member, Yuga Labs creates continuing obligations and duties to them by offering exclusive access to merchandise, gifts, opportunities, and sales of all new Yuga Labs products and experiences. Yuga Labs uses commercial interactive websites as one method of directing its conduct toward each BAYC club member in the jurisdiction where they live.

Yuga Labs conducts business in the state of Nevada and with Nevada residents who belong to the BAYC club. Mr. Armijo was a resident of Nevada at the time he purchased his BAYC NFTs and became part of the BAYC club; he also interacted with Yuga Labs and the BAYC club from his home in Nevada; and he was at home in Nevada when his BAYC NFTs were stolen. The underlying lawsuit relates to these contacts, thus creating a strong connection between Yuga Labs, Nevada, and the instant litigation.

Yuga Labs dispositive motion is meritless because the facts offered in the FAC are sufficient to establish personal jurisdiction over Yuga Labs. Accordingly, a discovery stay is not warranted and Yuga Labs' Motion to Stay should be denied.

**B.  Yuga Labs' Substantive Challenge Does Not Warrant a Stay of Discovery.**

Yuga Labs also argues that discovery should be stayed because Mr. Armijo's FAC fails to state a viable claim for relief. Like a jurisdictional challenge, the Court applies the same three-part test

established in *Kor Media Group* to determine whether a stay of discovery is warranted taking into consideration whether: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief." 294 F.R.D. at 581. Here, Yuga Labs' MTD is a dispositive motion, and based solely on the nature of review of a Rule 12(b)(6) motion, additional discovery is not required for the Court to make its decision. *See id.* at 582 (when considering a Rule 12(b)(6) motion, "the court asks only whether the pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to support the pleadings") (citation omitted).

The third factor is where the dispute lies—the "preliminary peek."

The Court's "preliminary peek" into the merits of Yuga Labs' MTD will show that Mr. Armijo's claims for relief are anything but futile. Additionally, Yuga Labs' arguments are not based on pure questions of law; rather, the issues raised by Yuga Labs are factual disputes in need of further immediate exploration. *See Brennan*, 2020 WL 5653673, at *2.

First, Yuga Labs alleges there is no factual or legal basis for any of the claims Mr. Armijo makes against it. *See* Motion to Stay, at 10. Specifically, Yuga Labs argues there is no special relationship between Yuga Labs and Mr. Armijo that would give rise to the alleged duties underlying Mr. Armijo's negligence claim. *Id.*

In Nevada, "[w]hether a defendant owes a plaintiff a duty of care is a question of law," and "[a]s a general rule, a private person does not have a duty to protect another from a criminal attack by a third person" unless a "special relationship" exists between the parties and the harm is created by foreseeable conduct. *Sciaballa v. Brandise Constr. Co.*, 921 P.2d 928, 968 (Nev. 1996); *Beckman v. Match.com, LLC*, No. 2:13-cv-97-JCM-NJK, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018). Whether a special relationship exists "is premised on the notion that the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of another." *Beckman*, 2017 WL 1304288, at *3. This is a factually intensive inquiry, and courts have applied it in a number of different situations. *See Sciaballa*, 921 P.2d at 968-69 (citing cases).

Here, Mr. Armijo has alleged numerous facts establishing that a special relationship existed between himself and Yuga Labs. Specifically, Yuga Labs controls all aspects of BAYC club membership, including the gatekeeping function and distribution of benefits to club members. FAC at ¶ 209. Any person who becomes a BAYC club member submits themselves to Yuga Labs' control. Based on this special relationship, Yuga Labs had a duty to protect Mr. Armijo and other BAYC NFT owners from third-party criminal attacks, to monitor the BAYC club for stolen BAYC NFTs, and to provide sufficient and effective customer service to prevent the use of stolen BAYC NFTs from accessing the BAYC club and all its benefits. *Id.* at ¶¶ 207-208. Had Yuga Labs performed these duties, the theft of valuable BAYC NFTs would have been disincentivized and Mr. Armijo would not have been a target for thieves.

Yuga Labs' disputes the existence of a special relationship, but its arguments highlight the *factual* disagreements between the parties that are not based on a pure question of law. *See* Motion to Stay (ECF No. 78), at 10-11; *see also Brennan*, 2020 WL 5653673, at *2. Yuga Labs' is not arguing the legal question of whether a duty of care can exist when premised on a special relationship—clearly, it can—rather, Yuga Labs' question is *whether such a duty exists in this case based on the facts presented*. In seeking to stay discovery, Yuga Labs asks this Court to prematurely deliver a ruling on the merits of this question before Mr. Armijo even has an opportunity to properly respond. This circumvention of the usual procedures for resolving motions to dismiss is exactly what the *Turner* court was concerned with when it held that discovery stays should only be granted when a complaint is "utterly frivolous." *See Turner*, 175 F.R.D. at 556.

Second, Yuga Labs argues that Mr. Armijo's contract claim fails because the statements made by Yuga Labs on BAYC's Twitter account and the BAYC website are merely "preliminary invitations" that cannot be considered to be "offers" in the contractual sense. Motion to Stay (ECF No. 78), at 11.

"The determination of whether a particular communication constitutes an operative offer, rather than an inoperative step in the preliminary negotiation of a contract, depends upon all the surrounding circumstances." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 784 (9th Cir. 2012). Looking into the "surrounding circumstances" is another way of saying that this Court must make an inquiry into the facts of the case. Again, Yuga Labs highlights the factual disagreements between the parties:

13

1  Yuga Labs claims it never made a contractual offer, while Mr. Armijo claims that it did. Without even
2  having the benefit of Mr. Armijo's response to the MTD, Yuga Labs is prematurely asking this Court
3  to declare a victor on this issue. Clearly, whether an offer was made and a contract existed between
4  Yuga Labs and Mr. Armijo is a factual dispute in need of further immediate exploration among other
5  things. *See Brennan*, 2020 WL 5653673, at *2.

6  Finally, Yuga Labs argues that Mr. Armijo's claim for breach of the implied covenant of good
7  faith and fair dealing fails because Yuga Labs did not deliberately contravene the intention and spirit
8  of "the contract" because "the technology underlying the Bored Ape NFTs functioned precisely as they
9  were programmed to do: identifying cryptographically current holders of Bored Ape NFTs." Motion
10 to Stay, at 11. As a preliminary matter, this argument is perplexing—is Yuga Labs is referring to the
11 contract for BAYC club membership between Yuga Labs and Mr. Armijo that Yuga Labs had just
12 finished insisting didn't exist, or the smart contract (computer code) underlying the BAYC NFTs?

13 Regardless, the FAC makes clear that upon purchasing his three BAYC NFTs, Mr. Armijo
14 entered into "a respective contract with BAYC with the justified expectation that he would receive,
15 among other things, membership in the BAYC club along with all of the current and future benefits
16 and offerings bestowed upon BAYC club members[.]" FAC ¶ 190. Whether Yuga Labs breached the
17 implied covenants of good faith and fair dealing, as an alternative to breaching the direct terms of the
18 contract, by "wrongfully depriving Mr. Armijo of his BAYC club membership" is a factual dispute in
19 need of further immediate exploration. *See Brennan*, 2020 WL 5653673, at *2.

20 A "preliminary peek" into the merits of Mr. Armijo's claims shows that Yuga Labs will be
21 unlikely to succeed on its MTD. As such a discovery stay is not warranted and Yuga Labs' Motion to
22 Stay should be denied.

23 **C.  The Competing Interests of the Parties Favors Allowing Discovery to Progress.**

24 Courts sometimes also weigh the competing interests of the parties to determine whether to
25 grant a discovery stay.

26 Here, Yuga Labs states that it "will be greatly prejudiced if it is forced to commence discovery
27 in the absence of jurisdiction or where a claim lacks merit." *See* Motion to Stay (ECF No. 78), at 12.
28 Beyond this general proclamation, Yuga Labs does not identify any specific prejudice it will suffer. As

the *Tradebay* court explained, "A showing that discovery may involve some inconvenience and expense does not suffice to establish good cause" for issuance of a stay of discovery. 278 F.R.D. at 601. Rather, the party "must show a particular and specific need" for the stay. *Id.* Yuga Labs fails in this regard.

On the other hand, Mr. Armijo will be significantly prejudiced should this Court stay discovery. Mr. Armijo has a basic right to a just and speedy determination of his action under Fed. R. Civ. P. 1; however, any delay of this case will cause Mr. Armijo to continue to lose out on the benefits conferred on BAYC members, like him. Mr. Armijo has already lost out on the benefits that have been conferred on BAYC club members since his BAYC NFTs were stolen on February 1, 2022,[4] but further delays will cost Mr. Armijo even more as Yuga Labs (and its partners) continue to confer promised benefits on BAYC members. Mr. Armijo has a legal right to receive and/or participate in these benefits, and any stay of discovery in this case will continue to inflict injury upon Mr. Armijo. In many instances, the benefits conferred on BAYC club members are invaluable and cannot be remedied through economic compensation.

In addition, web3 is a fast-paced and constantly changing world, and much of the evidence needed to support Mr. Armijo's claims is located on platforms such as Twitter and Discord. Evidence of this nature is easily lost due to its fleeting nature. It is necessary to begin conducting discovery as soon as possible to reduce the risk of losing important evidence.

Last, another defendant, OpenSea, is not objecting to personal jurisdiction. Thus, a discovery stay based on Yuga Labs' personal jurisdiction challenge will delay important discovery between Mr. Armijo and OpenSea.

For the foregoing reasons, Yuga Labs' request to stay discovery should be denied.

/ / /

/ / /

---

[4] To name just one benefit mentioned in the FAC, in March 2022, BAYC NFT holders were airdropped the right to claim a new and valuable cryptocurrency, ApeCoin, for free.

## VI. CONCLUSION

The Court should deny Yuga Labs' Motion to Stay and allow discovery to proceed as ordered in the July 21, 2022 Scheduling Order.

DATED this 22nd day of August, 2022.

**ARMSTRONG TEASDALE LLP**

By: _/s/ Michelle D. Alarie_
MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

EMILY NUVAN, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 17722
ARMSTRONG TEASDALE LLP
201 South Main Street, Suite 750
Salt Lake City, Utah 84111

ROMAINE C. MARSHALL, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 9654
JOSE ABARCA, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 12762
POLSINELLI
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104

*Attorneys for Plaintiff Robert Armijo*

# CERTIFICATE OF SERVICE

Pursuant to Fed.R.Civ.P.5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the foregoing document:

☒ was served via electronic service to the address(es) shown below:

John Patrick Desmond   jdesmond@dickinsonwright.com,
Justin James Bustos   jbustos@dickinsonwright.com
John D. Tennert   jtennert@fclaw.com,
Erin Joan Cox   erin.cox@mto.com
Alison Clare Jordan   ajordan@fenwick.com,
Michael S. Dicke   mdicke@fenwick.com
Jennifer C. Bretan   jbretan@fenwick.com
Katherine A. Marshall   kmarshall@fenwick.com
Samuel Sahagian   ssahagian@fenwick.com
April D. Youpee-Roll   april.youpee-roll@mto.com
Jonathan H. Blavin   jonathan.blavin@mto.com
Brandon R. Teachout   brandon.teachout@mto.com

☐ will be served via the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, dated June 27, 2022, and to the address(es) shown below:

LooksRare, Ltd.
Chase Business Center
39-41 Chase Side
London, United Kingdom, N14 5BP

Date: August 22, 2022              */s/Christie Rehfeld*
                                   An employee of Armstrong Teasdale LLP