MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone:  702.678.5070
Facsimile:  702.878.9995
malarie@atllp.com

EMILY NUVAN, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 17722
ARMSTRONG TEASDALE LLP
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Telephone: 801.401.1406
enuvan@atllp.com

ROMAINE C. MARSHALL, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 9654
JOSE ABARCA, ESQ. (LR IA 11-2 admitted)
Utah Bar No. 12762
POLSINELLI
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104
rmarshall@polsinelli.com
jabarca@polsinelli.com

*Attorneys for Plaintiff Robert Armijo*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT ARMIJO,<br><br>   Plaintiff,<br><br>vs.<br><br>OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation; YUGA LABS, LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company; LOOKSRARE; and DOES 1 to 50,<br><br>   Defendants. | Case No.:  3:22-cv-00112-MMD-CLB<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT OZONE NETWORKS, INC.'S MOTION TO STAY DISCOVERY OR EXTEND DEADLINES (ECF NO. 80)** |

Plaintiff Robert Armijo, by and through his counsel, Armstrong Teasdale LLP and Polsinelli, files this Opposition to Defendant Ozone Networks, Inc.'s d/b/a OpenSea ("OpenSea") Motion to Stay Discovery or Extend Deadlines ("Motion to Stay").  This Response in opposition is made and based upon the following Memorandum of Points and Authorities, the papers and pleadings already on file

1

herein, and any argument the Court may allow at the time of the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

OpenSea filed a Motion to Dismiss the Amended Complaint arguing that Mr. Armijo has failed to state a claim. *See* ECF No. 71 ("MTD"). Because the MTD is potentially dispositive of the entire case, OpenSea asks this Court to stay discovery. *See* Motion to Stay, ECF No. 80. Under these circumstances, the Court is forced to make an early determination regarding the merits of the case and the likelihood of success of the party's motion to dismiss. This process circumvents the usual procedures for resolving such motions. *See Turner Broadcasting Sys., Inc. v. Tracinda Corp.* 175 F.R.D. 554, 556 (D. Nev. July 18, 1997). Stays should only be granted "where the complaint was utterly frivolous, or filed merely for settlement value." *Id.*

That is not the case here. The discovery stay should be denied.

Indeed, a "preliminary peek" at the issues raised in the First Amended Complaint ("FAC") (ECF No. 62) demonstrates that important and novel questions regarding web3, blockchain technology, decentralization, and non-fungible tokens ("NFTs") are at issue, and any decision from the Court will determine how these new concepts and technologies interact within our established legal system.

Further, discovery should only be stayed based on a pending dispositive motion "when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive." *Brennan v. Cadwell Sanford Deibert & Garry LLP*, No. 2:20-cv-00799-JAD-VCF, 2020 WL 5653673, at *2 (D. Nev. Sept. 22, 2020). For the reasons described below, the FAC includes numerous factual issues that go beyond the bounds of being mere questions of law, including whether OpenSea was in a special relationship with Mr. Armijo that would give rise to a duty to protect Mr. Armijo from the criminal acts of third parties. *See Kor Media Grp., LLC v. Green*, 294 F.R.D. 579 (D. Nev. Oct. 29, 2013) (holding that the Court was not convinced that Plaintiff would be unable to state a claim for relief because Plaintiff's complaint raised "questions of fact properly developed through discovery").

Finally, OpenSea has failed to articulate in any way how participating in the everyday requirements of discovery will cause any prejudice to OpenSea. In contrast, a stay of discovery in this

case would severely prejudice Mr. Armijo and would frustrate the goals of Rule 1 of the Federal Rules of Civil Procedure, which requires courts to "secure the just, speedy, and inexpensive determination of every action and proceeding."

For these reasons, OpenSea's request to stay discovery pending adjudication of the MTD should be denied.

## II.   BACKGROUND

OpenSea is an online web3 marketplace that allows users to buy, sell, and create NFTs. Although other such marketplaces exist in the web3 arena, OpenSea, valued at $13.3 billion, is the undisputed industry leader, commanding more users, transactions, and market share than any other marketplace. *See* FAC ¶ 8. Despite its size, wealth, and clout within the NFT community, OpenSea has failed to protect NFT consumers, made holders of valuable NFTs a target for thieves and scammers, and has allowed the OpenSea marketplace to be used by thieves as a platform to offload stolen and highly valuable NFTs with impunity.

Mr. Armijo is an NFT enthusiast who became involved with the NFT community in November 2021. Following his purchase of Bored Ape Yacht Club ("BAYC") NFT #4329 and Mutant Ape Yacht Club ("MAYC") NFTs #1819 and #7713, Mr. Armijo became a member of the exclusive and highly sought after Bored Ape Yacht Club. Due to the popularity and extensive membership benefits BAYC club members enjoy both socially and financially, BAYC NFTs are one of the most popular NFT collections ever created. Unfortunately, this popularity, combined with OpenSea's failure to implement basic security safeguards and provide adequate and reasonable customer service and theft deterrents, has made BAYC NFT owners the victims of sophisticated and targeted attacks designed to steal their BAYC NFTs and has also made OpenSea the marketplace of choice for thieves to quickly offload stolen goods.

On February 1, 2022, Mr. Armijo fell prey to a phishing scam and all three of his BAYC NFTs were stolen in an instant. *See* FAC ¶¶ 80-85. The theft occurred when Mr. Armijo unwittingly interacted with a thief through the online communication platform known as "Discord." *Id.* Discord is a different and separate entity that is completely unaffiliated with OpenSea. However, knowing that the thief would take advantage of OpenSea's lack of security and screening processes for stolen NFTs, Mr.

Armijo desperately contacted OpenSea's customer service department to report the theft and stop the sale of Mr. Armijo's BAYC NFTs on OpenSea's platform. *Id.* ¶ 87. Mr. Armijo received no response from OpenSea, and Mr. Armijo watched helplessly as his BAYC NFT #4329 was sold on the OpenSea platform just hours after the theft and at a price far below its actual value. *Id.* ¶ 94. It was not until several hours after the theft occurred—and, upon information and belief, only after Yuga Labs customer service employees reached out to OpenSea through an unofficial communication channel—that OpenSea took the belated step of freezing Mr. Armijo's stolen BAYC NFTs, disallowing them from being bought or sold on OpenSea's marketplace. *Id.* ¶ 95.

Although OpenSea was not involved in the actual theft of Mr. Armijo's BAYC NFTs, Mr. Armijo would not have been targeted had the theft not been incentivized due to OpenSea's negligence. Among other things, OpenSea owed Mr. Armijo as an NFT consumer a duty to implement adequate security processes and monitor its NFT marketplace for stolen NFTs, and a duty to provide adequate customer service for the victims of theft that occurred on the OpenSea platform. These duties arose from the special relationship OpenSea has with Mr. Armijo and all NFT consumers—namely, as the industry leader with a near monopoly on all NFT purchases and sales, OpenSea sets the standards for the industry regarding safety, security, and the sale of stolen NFTs. Any individual who participates in the buying, selling, or trading of NFTs submits themselves to OpenSea's control, and their ability to protect themselves is limited by the actions and nonactions of OpenSea.

In the MTD and Motion to Stay, OpenSea disputes the existence of a special relationship, that it owed any duties to Mr. Armijo, and whether those duties were breached. *See* Motion to Stay, at 1 (ECF No. 80). OpenSea further argues that OpenSea's Terms of Service and the economic loss doctrine bar Mr. Armijo's claims. *Id.* For these reasons, OpenSea has asked the Court to stay all discovery until the Court can resolve OpenSea's pending MTD.

On July 8, 2022, the parties participated in a Fed. R. Civ. P. 26(f) conference as required by Local Rule 26-1(a). Following the conference, the parties submitted a Stipulated Discovery Plan and Scheduling Order on July 20, 2022, in which the parties outlined their opposing views regarding how discovery in this case should proceed. (ECF No. 65.) On July 21, 2022, this Court entered a Scheduling Order adopting Mr. Armijo's proposed discovery plan and timeline. (ECF No. 66.) Mr. Armijo served

4

his Initial Disclosures to OpenSea on July 22, 2022. OpenSea served its objection to serving initial disclosures that same day. OpenSea filed the instant Motion to Stay on August 3, 2022. (ECF No. 80.)

As explained below, a stay of discovery is not warranted merely because a dispositive motion is pending. Discovery should be allowed to continue according to the Scheduling Order.

### III. LEGAL STANDARD

There is no provision in the Federal Rules of Civil Procedure that provides for "automatic or blanket stays of discovery when a potentially dispositive motion is pending." *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 600 (D. Nev. Dec. 13, 2011). With the exception of challenges to preliminary issues such as jurisdiction, venue, or immunity, courts in this District have found that "ordinarily, a dispositive motion does not warrant a stay of discovery." *Id.* at 601 (citations omitted). "[M]otions to stay may be granted when: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief." *Kor*, 294 F.R.D. at 581.

The party seeking the stay of discovery "carries the heavy burden of making a strong showing why discovery should be denied." *Tradebay*, 278 F.R.D. at 601 (citing *Turner*, 175 F.R.D. at 556). The moving party "must show a particular and specific need" for staying discovery, and mere inconvenience and expense is not enough to establish good cause for the delay of the normal course of discovery proceedings. *Id.* at 601-02.

Because motions to dismiss are a frequent part of federal practice, the speedy determination of cases has become increasingly difficult, and prohibiting or delaying all discovery often causes "unwarranted delay," which is in direct contradiction to the Court's mandate under Rule 1: "to secure the just, speedy, and inexpensive determination of every action." *Tradebay*, at 603; Fed. R. Civ. P. 1. Therefore, "[a] stay of all discovery should only be ordered if the court is 'convinced' that a plaintiff will be unable to state a claim for relief." *Kor*, 294 F.R.D. at 583 (quoting *Tradebay*, 278 F.R.D. at 603). This is a difficult standard to meet. "Generally, there must be *no question* in the court's mind that the dispositive motion will prevail, and therefore, discovery is a waste of effort. Absent extraordinary circumstances, litigation should not be delayed simply because a non-frivolous motion has been filed."

5

1  *Id.* (citation omitted) (emphasis in original).

2  **IV.    LEGAL ARGUMENT**

The three-factor test announced in *Kor Media Group* requires that the Court consider: (1) the pending motion is potentially dispositive; (2) the potentially dispositive motion can be decided without additional discovery; and (3) the Court has taken a "preliminary peek" at the merits of the potentially dispositive motion and is convinced that the plaintiff will be unable to state a claim for relief." 294 F.R.D. at 581. OpenSea's MTD is a dispositive motion, and based solely on the nature of review of a Rule 12(b)(6) motion, additional discovery is not required for the Court to make its decision. *See Id.* at 582 (when considering a Rule 12(b)(6) motion, "the court asks only whether the pleadings are sufficient to establish a claim, not whether the Plaintiff could find evidence to support the pleadings") (citation omitted).

The third factor is where the dispute lies – the "preliminary peek."

The Court's "preliminary peek" into the merits of OpenSea's MTD will show that Mr. Armijo's claims for relief are anything but futile. Additionally, OpenSea's arguments are not based on pure questions of law; rather, the issues raised by OpenSea are factual disputes in need of further immediate exploration. *See Brennan*, 2020 WL 5653673, at *2.

The deadline for Mr. Armijo to oppose OpenSea's MTD is still more than two weeks away. Mr. Armijo has not yet had the opportunity to fully articulate his response to all issues raised in the MTD. Here, Mr. Armijo will focus his response to the more limited issues raised in OpenSea's Motion to Stay: (1) whether a special relationship existed between OpenSea and Mr. Armijo which established a duty for OpenSea to protect Mr. Armijo from the criminal acts of third parties; (2) whether OpenSea breached that duty; (3) whether OpenSea's Terms of Service apply to Mr. Armijo's claims; and (4) whether Mr. Armijo's claims are subject to the economic loss doctrine. Finally, Mr. Armijo will address the prejudice he will suffer if the Motion to Stay is granted.

First, the FAC alleges sufficient facts to show that a "special relationship" existed between OpenSea and Mr. Armijo at the time of the theft. *See* FAC ¶¶ 133-46, 193-94. Based on this special relationship, OpenSea had a duty to protect Mr. Armijo as an NFT consumer and others like him from third-party criminal attacks, to provide a platform that is free from fraud and theft, and to provide

adequate and effective customer service to prevent the sale of stolen goods on its platform. Had OpenSea performed these duties, the theft of valuable NFTs would have been disincentivized and Mr. Armijo would not have been a target for thieves. But importantly, his stolen BAYC NFT would not have been sold on its platform.

In Nevada, "[w]hether a defendant owes a plaintiff a duty of care is a question of law," and "[a]s a general rule, a private person does not have a duty to protect another from a criminal attack by a third person" unless a "special relationship" exists between the parties and the harm is created by foreseeable conduct. *Sciaballa v. Brandise Constr. Co.*, 921 P.2d 928, 968 (Nev. 1996); *Beckman v. Match.com, LLC*, No. 2:13-cv-97-JCM-NJK, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018). Whether a special relationship exists "is premised on the notion that the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of another." *Beckman*, 2017 WL 1304288, at *3. This is a factually intensive inquiry, and courts have applied it in a number of different situations. *See Sciaballa*, 921 P.2d at 968-69 (citing cases).

Here, Mr. Armijo has alleged numerous facts establishing that a special relationship existed between himself and OpenSea. Specifically, Mr. Armijo explains that OpenSea, as the industry leader with a near-monopoly on all NFT purchases and sales, dominates and exercises control over the entire NFT community, and any individual who engages in buying, selling, or trading NFTs submits themselves to the control of OpenSea regardless of whether those transactions occur on OpenSea's platform. *See* FAC ¶¶ 133-46, 193-94. Not only does Mr. Armijo allege that OpenSea has a duty to protect NFT consumers based on this special relationship, OpenSea itself acknowledges that this duty exists. *See* FAC ¶¶ 133, 139, 145, 192. As recently as August 10, 2022, OpenSea defined the duties it owes to the NFT community and individuals like Mr. Armijo. In a Twitter thread posted on the official OpenSea Twitter account, OpenSea clarified its "stolen items policy," and stated the following: "2/ Our policy is designed to keep our community safe . . ."; "4/ So why do we have this policy? It is against US law to knowingly allow the sale and transfer of stolen items. We do not want to incentivize theft by allowing our platform to be used to help sell stolen items."; "9/ In the long term, our key focus areas continue to be on finding solutions that tackle this problem at the root. Efforts are already

underway to automate threat and theft detection . . .";  "10/ Beyond that, we are collaborating closely with ecosystem partners to help prevent and disincentivize theft . . ."; "We care DEEPLY about enabling users to operate safely on our platform. Allowing the sale of stolen items and operating with stolen goods is no sign of a healthy ecosystem . . ."; "13/ Doing better begins w/ sharing & listening more . . . ." *See* @opensea, Twitter (Aug. 10, 2022, 4:02 PM), https://twitter.com/opensea/status/1557487545876762625.

OpenSea's argues against the existence of a special relationship, but these arguments highlight the factual disagreements between the parties and expose that the dispute is not a pure question of law. *See* Motion to Stay, at 4; *see also Brennan*, 2020 WL 5653673, at *2. OpenSea's is not arguing the legal question of whether a duty of care can exist when premised on a special relationship—clearly, it can—rather, OpenSea's question *is whether such a duty exists in this case based on the facts presented*. In seeking to stay discovery, OpenSea is asking this Court to prematurely deliver a ruling on the merits of its arguments in the MTD before Mr. Armijo has a chance to properly respond. This circumvention of the usual procedures for resolving motions to dismiss is exactly what the *Turner* court was concerned about when it held that discovery stays should only be granted when a complaint is "utterly frivolous." *See Turner*, 175 F.R.D. at 556.

Second, OpenSea argues that even if it owed Mr. Armijo a duty, it did not breach that duty and that OpenSea was not the proximate cause of Mr. Armijo's damages. Motion to Stay, at 4. Again, OpenSea's argument on this point reiterates the factual disagreements between the parties and asks the Court to prematurely declare a victor.

In fact, OpenSea argument presents the classic strawman.  OpenSea mischaracterizes Mr. Armijo's argument by reframing the issue of duty in a light more favorable to its version of events. OpenSea argues it did not have a duty to prevent a third party from stealing Mr. Armijo's NFTs and then listing them for sale on the OpenSea platform. *See* Motion to Stay, at 4-5. Because OpenSea was not involved in the theft, OpenSea believes it could not have breached these duties even if they existed. *Id.* This wholly misstates Mr. Armijo's arguments regarding the duty OpenSea owed to Mr. Armijo and others like him.

The FAC alleges that OpenSea owed a duty to Mr. Armijo as an NFT consumer to exercise

reasonable care in monitoring its NFT marketplace for stolen NFTs, which included designing adequate screening and verification processes. FAC at ¶ 190. OpenSea breached this duty by failing to implement adequate screening processes for the NFTs listed on its platform, failing to collect adequate identification information for the users of its platform, failing to respond immediately to reports of theft, and failing to contact law enforcement about reported illegal activity on its platform. *Id.* at ¶ 200. The FAC also claims that OpenSea owed a further duty to Mr. Armijo as an NFT consumer to exercise reasonable care in providing adequate customer service for victims of theft, which included providing timely, effective, and equal customer service to all NFT consumers. *Id.* at ¶ 191. OpenSea breached this duty by failing to provide immediate and accessible customer service support, failing to implement immediate reporting procedures for stolen NFTs, and failing to provide timely, effective, and equal recourse to all NFT consumers. *Id.* at  ¶ 201.  OpenSea actions and inactions caused Mr. Armijo's stolen BAYC NFT to be illegally sold on OpenSea's platform.

With regard to the claims for negligent hiring, training, and supervision, Mr. Armijo clearly alleges that OpenSea's employees caused him harm when OpenSea and its employees allowed Mr. Armijo's stolen BAYC NFT to be illegally sold on OpenSea's platform. In paragraph 222 of the FAC, it states, "[T]he illegal trades and sales of NFTs cannot occur without the knowledge, complicity, or negligence by OpenSea . . . employees." And due to OpenSea's failure to "hire sufficient numbers of competent security and customer service employees," Mr. Armijo was harmed when his BAYC NFT was illegally sold on OpenSea's platform. *Id.* at ¶¶ 230-231.

The issue of whether OpenSea breached its duties of care to Mr. Armijo is clearly a factual dispute in need of further immediate exploration. *See Brennan*, 2020 WL 5653673, at *2.

Third, Mr. Armijo's claims do not rely upon OpenSea's Terms of Service because Mr. Armijo was not subject to the Terms of Service when the theft of his BAYC NFTs and his attempts to recover them occurred. As OpenSea clearly states in its Motion to Stay, Mr. Armijo's BAYC NFTs were stolen "by a third-party scammer operating not on OpenSea, but on a completely different, unaffiliated online platform called 'Discord.'" Motion to Stay, at 1. OpenSea seems to think that just because Mr. Armijo purchased his BAYC NFTs on OpenSea months prior to the theft that Mr. Armijo is bound by OpenSea's Terms of Service wherever he goes. This is not correct. Individuals can only be subject to

9

OpenSea's Terms of Service when they are actively using and engaging with OpenSea's platform in the manner for which it is intended—buying, selling, listing, or minting NFTs. Attempting to contact OpenSea's customer service department to report a theft from a third-party website does not subject an individual to OpenSea's Terms of Service.

In this scenario, the only person who actually used OpenSea's platform was the thief who stole Mr. Armijo's BAYC NFTs and listed them for sale on OpenSea, which was a clear violation of OpenSea's Terms of Service. As articulated in the Terms of Service, users are prohibited from violating any law or third party right, using the OpenSea Service "in any manner that could interfere with, disrupt, negatively affect or inhibit other users from fully enjoying the Service," or using the OpenSea Service "for any illegal or unauthorized purpose." *See* Declaration of Ian L. Meader Ex. A at 5-6, ECF No. 72.

For these same reasons, Mr. Armijo intends to object to OpenSea's request for judicial notice of the Terms and Conditions when he responds to OpenSea's MTD. The Terms of Service do not form the basis of Mr. Armijo's claims, nor does Mr. Armijo rely upon or reference the Terms of Service at any point in his FAC. *See* OpenSea's Request for Judicial Notice at 3, ECF No. 73. Regarding the instant Motion to Stay, the parties' differing opinions on the applicability of the Terms of Service once again raises a factual dispute in need of further immediate exploration rather than a pure question of law. *See Brennan*, 2020 WL 5653673, at *2. It would be premature for the Court to deliver a ruling on the merits of the argument at this stage in the proceedings.

Fourth, Mr. Armijo's claims are not barred by Nevada's economic loss doctrine because the losses Mr. Armijo suffered are not solely monetary in nature. Due to OpenSea's failure to provide consumer protections and deter criminal activity in the NFT community, Mr. Armijo was targeted and attacked by thieves, which caused him to lose his BAYC NFTs, but also, his membership in the BAYC club and the commercialization rights he possessed in his underlying Bored Ape and Mutant Ape images. FAC ¶¶ 159-161.

As the FAC illustrates, membership in the BAYC club provides a multitude of social and experiential benefits that are not tethered to any economic benefit. *See, e.g.*, FAC ¶¶ 42-52, 64, 68. The BAYC club is a cultural phenomenon, and BAYC club members are granted a multitude of privileges,

including admittance to exclusive parties, access to limited-time only merchandise, and the ability to collaborate and help build BAYC's newest venture, the Otherside Metaverse. *Id.* Mr. Armijo's loss of his NFTS and BAYC club membership is a significant loss that is not subject to the economic loss doctrine.

Likewise, Mr. Armijo has a significant property interest in the commercialization rights of his stolen BAYC NFTs, which was damaged when Mr. Armijo was targeted and attacked by thieves due to OpenSea's negligent actions. *Calloway v. City of Reno*, 993 P.2d 1259, 1267 (Nev. 2000), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31, 33 (Nev. 2004) (holding that the economic loss doctrine does not bar recovery where there is "personal injury or damage to property").

OpenSea argues that in order to survive dismissal under the economic loss rule, Mr. Armijo must allege physical harm to person or property. *See* Motion to Stay, at 6-7. This is too narrow of an interpretation of Nevada law. In *Sadler v. PacifiCare of Nevada*, the Nevada Supreme Court clarified that the definition of injury is not limited only to a physical injury. *See* 130 Nev. 990, 999-1000, 340 P.3d 1264, 1270 (Nev. 2014). Rather, the definition of injury includes "the invasion of *any legally protected interest* of another." *Id.* (citation omitted) (emphasis in original). Therefore, a physical injury is not a required "prerequisite to a tort claim generally." *Id.* at 1268 (explaining that certain torts, such as negligent infliction of emotional distress, do require a showing of a physical injury due to the elements of the claim). Here, Mr. Armijo had a legally protected interest in his NFTs, his BAYC club membership, and the commercialization rights to his BAYC NFTs. As such, Mr. Armijo suffered a noneconomic injury when his BAYC NFTs were stolen and these interests were invaded due to OpenSea's negligent actions.

OpenSea is prematurely asking the Court to circumvent the usual procedure for adjudicating motions to dismiss by asking the Court to make determinations on the merits of a factual dispute that needs further immediate exploration. *See Brennan*, 2020 WL 5653673, at *2.

Finally, OpenSea has failed to show how its participation in the ordinary course of discovery will cause it to be prejudiced in any way. Indeed, there is not a single mention of any detriment or harm that will befall OpenSea in the entirety of the Motion to Stay. As previously explained, the party seeking a stay of discovery "carries the heavy burden of making a strong showing why discovery

11

1 should be denied." *Tradebay*, 278 F.R.D. at 601. This is most easily done by "demonstrating harm or prejudice that will result from discovery." *Bacon v. Reyes*, No. 2:12-cv-01222-JCM, 2013 WL 5522263, at *4 (D. Nev. Oct. 3, 2013). OpenSea has completely failed to carry this heavy burden.

On the other hand, Mr. Armijo will be significantly prejudiced should this Court stay discovery. Mr. Armijo has a basic right to a just and speedy determination of his action under Fed. R. Civ. P. 1; however, any delay of this case will cause Mr. Armijo to continue to lose out on the benefits conferred on BAYC members, like him. Mr. Armijo has already lost out on the benefits that have been conferred on BAYC club members since his BAYC NFTs were stolen on February 1, 2022,[1] but further delays will cost Mr. Armijo even more as Yuga Labs (and its partners) continue to confer promised benefits on BAYC members. Mr. Armijo has a legal right to receive and/or participate in these benefits, and any stay of discovery in this case will continue to inflict injury upon Mr. Armijo. In many instances, the benefits conferred on BAYC club members are invaluable and cannot be remedied through economic compensation.

In addition, web3 is a fast-paced and constantly changing world, and much of the evidence needed to support Mr. Armijo's claims is located on platforms such as Twitter and Discord. Evidence of this nature is easily lost due to its fleeting nature. It is necessary to begin conducting discovery as soon as possible to reduce the risk of losing important evidence.

For the foregoing reasons, OpenSea's request to stay discovery should be denied.

/ / /

/ / /

/ / /

/ / /

---

[1] To name just one benefit mentioned in the FAC, in March 2022, BAYC NFT holders were airdropped the right to claim a new and valuable cryptocurrency, ApeCoin, for free.

## V. CONCLUSION

This Court should deny OpenSea's Motion to Stay Discovery or Extend Deadlines and allow discovery to proceed as ordered in the July 21, 2022 Scheduling Order.

DATED this 22nd day of August, 2022.

**ARMSTRONG TEASDALE LLP**

By: */s/ Michelle D. Alarie*
MICHELLE D. ALARIE, ESQ.
Nevada Bar No. 11894
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

EMILY NUVAN, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 17722
ARMSTRONG TEASDALE LLP
201 South Main Street, Suite 750
Salt Lake City, Utah 84111

ROMAINE C. MARSHALL, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 9654
JOSE ABARCA, ESQ.
(LR IA 11-2 admitted)
Utah Bar No. 12762
POLSINELLI
2825 E Cottonwood Parkway, Suite 500
Salt Lake City, UT 84104

*Attorneys for Plaintiff Robert Armijo*

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b) and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of ARMSTRONG TEASDALE LLP, and that the foregoing document:

☒   was served via electronic service to the address(es) shown below:

John Patrick Desmond   jdesmond@dickinsonwright.com,
Justin James Bustos   jbustos@dickinsonwright.com
John D. Tennert   jtennert@fclaw.com,
Erin Joan Cox   erin.cox@mto.com
Alison Clare Jordan   ajordan@fenwick.com,
Michael S. Dicke   mdicke@fenwick.com
Jennifer C. Bretan   jbretan@fenwick.com
Katherine A. Marshall   kmarshall@fenwick.com
Samuel Sahagian   ssahagian@fenwick.com
April D. Youpee-Roll   april.youpee-roll@mto.com
Jonathan H. Blavin   jonathan.blavin@mto.com
Brandon R. Teachout   brandon.teachout@mto.com

☐   will be served via the U.S. Postal Service at Las Vegas, Nevada, in a sealed envelope, with first-class postage prepaid, dated June 27, 2022, and to the address(es) shown below:

LooksRare, Ltd.
Chase Business Center
39-41 Chase Side
London, United Kingdom, N14 5BP

Date: August 22, 2022                    */s/Christie Rehfeld*
                                          An employee of Armstrong Teasdale LLP