MICHAEL S. DICKE (admitted *pro hac vice*)
mdicke@fenwick.com
JENNIFER C. BRETAN (admitted *pro hac vice*)
jbretan@fenwick.com
KATHERINE A. MARSHALL (admitted *pro hac vice*)
kmarshall@fenwick.com
SAMUEL SAHAGIAN (admitted *pro hac vice*)
ssahagian@fenwick.com

FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Tel: 415.875.2300

JOHN D. TENNERT III (Nevada Bar No. 11728)
jtennert@fennemorelaw.com
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Tel: 775.788.2212

*Attorneys for Defendant Yuga Labs, Inc.*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ROBERT ARMIJO,<br><br>               Plaintiff,<br><br>v.<br><br>OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation, YUGA LABS LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company; LOOKSRARE; and DOES 1 to 50,<br><br>               Defendants. | Case No.: 3:22-cv-00112-MMD-CLB<br><br>**DEFENDANT YUGA LABS' REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY OR EXTEND DEADLINES UNDER FRCP 26(F) AND LR 26-1 AND TO VACATE CASE MANAGEMENT AND SCHEDULING ORDERS**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS JURISDICTIONAL ARGUMENTS ARE PURE SPECULATION ............................................................. 1

III. A STAY IS ALSO WARRANTED BECAUSE PLAINTIFF'S OPPOSITION CONFIRMS THAT HE CANNOT STATE A CLAIM FOR RELIEF .......................... 4

    A. The FAC Fails To State A Viable Claim For Negligence ................................... 5

    B. Plaintiff's Breach Of Contract Claim Also Fails As A Matter Of Law ................ 6

    C. Plaintiff's Alternative Implied Covenant Claim Is Equally Defective ................ 8

IV. THE COMPETING INTERESTS OVERWHELMINGLY FAVOR A STAY ............... 9

V. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                 **Page(s)**

*AMC Fabrication, Inc. v. KRD Trucking W., Inc.*,
  2012 WL 4846152 (D. Nev. Oct. 10, 2012) ................................................................. 1

*Baton v. Ledger SAS*,
  2021 WL 5226315 (N.D. Cal. Nov. 9, 2021), *appeal filed* ....................................... 2

*Doe v. Tapang*,
  2019 WL 3576995 (N.D. Cal. Aug. 6, 2019), *aff'd*, 834 F. App'x 399 (9th Cir. 2021) ............................................................................................................................. 4

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
  141 S. Ct. 1017 (2021) ............................................................................................. 2, 4

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) .................................................................................... 2, 3

*Sinatra v. Nat'l Enquirer, Inc.*,
  854 F.2d 1191 (9th Cir. 1988) ..................................................................................... 4

*Software Dev. & Inv. of Nevada v. Wall*,
  2006 WL 8442597 (D. Nev. Feb. 13, 2006) .............................................................. 2, 3

*Tradebay, LLC v. eBay, Inc.*,
  278 F.R.D. 597 (D. Nev. 2011) .................................................................................... 1

*Urban Outfitters, Inc. v. Dermody Operating Co.*,
  2021 WL 3605053 (D. Nev. Aug. 13, 2021) ............................................................... 1

*Worley v. Montgomery*,
  2021 WL 3616710 (D. Nev. Aug. 16, 2021) ............................................................... 4

**Other Authorities**

Federal Rule of Civil Procedure 26(f) ................................................................................. 1

Local Rule 26-1 .................................................................................................................... 1

## I. INTRODUCTION

Courts in this District regularly grant motions to stay discovery pending dispositive motions, particularly those raising jurisdictional challenges. Yuga Labs' motion established that a stay is appropriate in this matter because a "preliminary peek" at the merits of Yuga Labs' pending motion to dismiss demonstrates that personal jurisdiction is lacking and that plaintiff will be unable to state a viable claim for relief. Plaintiff's opposition ("Opp.") does not cite a single case suggesting otherwise. The only purported bases for personal jurisdiction plaintiff raises are directly contradicted by case law. And plaintiff's arguments on the merits of his negligence and contract claims not only ignore his fundamental pleading obligations, but also are an admission that he needs additional facts in order to plausibly allege each element of his claims. Yuga Labs' motion to dismiss raises substantial, dispositive legal issues that are likely to be resolved in its favor and plaintiff does not identify any real prejudice that would result from a stay.

Because resolution of the motion to dismiss will likely be dispositive of all claims, a stay of discovery and any associated obligations, including any deadlines triggered by Federal Rule of Civil Procedure 26(f) and Local Rule 26-1, is not only warranted, but favored.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THAT HIS JURISDICTIONAL ARGUMENTS ARE PURE SPECULATION

Plaintiff concedes that a stay of discovery is warranted where there is a pending dispositive motion that may be decided without additional discovery, and a "preliminary peek" at the merits of the motions suggests plaintiff will be unable to state a claim for relief. *Urban Outfitters, Inc. v. Dermody Operating Co.*, 2021 WL 3605053 (D. Nev. Aug. 13, 2021) (granting stay based on alleged lack of personal jurisdiction) (*see* Opp. at 7). As the cases cited in plaintiff's opposition make clear, "a pending motion challenging jurisdiction **strongly favors a stay**." *AMC Fabrication, Inc. v. KRD Trucking W., Inc.*, 2012 WL 4846152, at *2 (D. Nev. Oct. 10, 2012) (granting motion to stay discovery based on alleged lack of personal jurisdiction) (emphasis added); *see also Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 601 (D. Nev. 2011) (granting motion to stay discovery pending disposition of motion to dismiss on jurisdictional grounds and failure to state a claim) (*see* Opp. at 8). Here, Yuga Labs' motion to dismiss established that there

is no general jurisdiction over Yuga Labs in Nevada because it is not "essentially at home" in Nevada, but instead is a Delaware corporation with no offices, employees, or contractors in Nevada. Specific personal jurisdiction is also lacking here. Plaintiff has not – and cannot – meet his burden to establish **both** (1) that Yuga Labs directed its activities at Nevada and "purposely availed itself" of conducting activities in Nevada; *and* (2) that plaintiff's claims arise out of or relate to forum-related activities **by Yuga Labs**. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). *See* MTD FAC[1] at 6-12; Stay Mot. at 7-9.

The opposition to the motion to stay raises only two purported bases for jurisdiction: (1) Yuga Labs' purported interactions with members of the virtual BAYC who happen to reside in Nevada; and (2) Yuga Labs' alleged partnerships with third parties to engage with BAYC club members in Nevada. Opp. at 9-11. Both theories fail.

With respect to the claim based on purported membership in the BAYC, numerous courts around the country have confirmed that there is no jurisdiction over a nationwide club in a particular state simply because the club provides services to members there.[2] *See, e.g., Baton v. Ledger SAS*, 2021 WL 5226315, at *6 (N.D. Cal. Nov. 9, 2021) ("[A] finding [of] purposeful direction cannot 'be based on the mere fact that [an entity] provides services to customers nationwide, including but not limited to [the forum state].'"), *appeal filed*. Ignoring this clear case law, plaintiff points to Yuga Labs' social media communications on Twitter and Discord with BAYC club members and the world at large, asserting that these communications constitute "substantial contacts" with BAYC community members here. Opp. at 9. But again, cases from this district and other jurisdictions universally hold otherwise. Personal jurisdiction is not established based on websites that are merely informational or that advertise. *See Software Dev. & Inv. of Nevada v. Wall*, 2006 WL 8442597, at *2 (D. Nev. Feb. 13, 2006) (no specific personal

---

[1] Defined terms have the same meaning as in Yuga Labs' motion to stay ("Stay Mot.").

[2] Plaintiff's sole case, *Ford Motor*, does not hold otherwise. That Court **did not** find jurisdiction was established because of an "ongoing relationship between Ford and its customers," but rather, because plaintiffs' claims related to car accidents that occurred in the forum states involving cars sold by Ford, *i.e.*, there was an "activity [or] occurrence involving the defendant that takes place within the State[.]" *See Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1019, 1023, 1026-30 (2021).

| YUGA LABS' REPLY ISO MOTION TO STAY DISCOVERY | 2 | Case No.: 3:22-CV-00112-MMD-CLB |
|---|---|---|

1  jurisdiction based on "passive websites provid[ing] information and advertising"). Even an
2  interactive website or social forum – such as a blog – does not suffice unless it is primarily
3  "commercial" in nature (and incidental sales do not count). *Id.* at *3.

4  Plaintiff's contention that the "decentralized nature of web3" (Opp. at 9) somehow creates
5  a novel legal question is disingenuous and makes no sense: the Internet has been around for
6  decades, and courts addressing the question of how to handle jurisdiction when websites are
7  available everywhere (including websites that offer, sell, and distribute things, and allow users to
8  interact) is nothing new. Web3 is merely a new way for individuals to interact with the internet.
9  As the countless cases cited in Yuga Labs' motion to dismiss demonstrate (*see* MTD FAC at 7-
10 12), the virtual club of BAYC NFT holders, and the BAYC website, Twitter, and Discord do not
11 create personal jurisdiction over Yuga Labs in every state simply because they are accessible from
12 every state.³ Plaintiff offers nothing persuasive to the contrary.

13 Nor could these deficiencies be cured through plaintiff's request for "jurisdictional
14 discovery" (Opp. at 10) into purported sales or distributions of physical and digital goods by Yuga
15 Labs to *other* Nevada residents (not plaintiff, who does not allege that ever having purchased or
16 received goods of any kind from Yuga Labs). That discovery is simply irrelevant here, where
17 plaintiff's claims do not arise out of those sales or distributions. *See Schwarzenegger*, 374 F.3d at
18 802 (no personal jurisdiction unless plaintiff's claim "arises out of or relates to the defendant's
19 forum-related activities").

20 Plaintiff's "advertising" argument fares no better. Despite two letters and two sworn
21 declarations explaining to plaintiff that Yuga Labs had nothing to do with a Las Vegas advertising
22 campaign, plaintiff's opposition doubles down on his unsupported theory that Yuga Labs is
23 somehow behind that advertising nonetheless. *See* Opp. at 10. That claim is a red herring. Even
24 if Yuga Labs had advertised in Nevada (and, again, ***the uncontroverted facts are that it did not***),
25 that still could not create personal jurisdiction in ***this action*** because plaintiff does not bring

---

³ Equally absurd is plaintiff's claim that under Yuga Labs' theory, the "only place" Yuga Labs could ever face a lawsuit is its place of incorporation. Not so. Like every other company, Yuga Labs is subject to jurisdiction anywhere it purposefully avails itself of conducting business and where the claim arises out of those business activities. Plaintiff's claims present no such facts.

claims for false advertising, use of someone's name or likeness in advertising, or otherwise remotely related to the alleged advertising campaign. *Cf. Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195-98 (9th Cir. 1988) (finding purposeful availment where claim was specifically based on content of the ads at issue). Again, plaintiff's reliance on *Ford Motor* is misplaced. There, the Supreme Court held that where an automobile manufacturer regularly sells cars in a state, it is subject to jurisdiction for accidents occurring in that state caused by product defects in the same type of car it sells in the state, notwithstanding that the specific cars involved in the accidents were originally sold in other states. *See Ford Motor*, 141 S. Ct. at 1029-30. Here, even if Yuga Labs regularly sold NFTs in Nevada (which plaintiff does not assert), plaintiff does not bring claims based on some inherent defect in NFTs he purchased from a third party (not Yuga Labs) in another state. Instead, plaintiff brings negligence and contract claims against Yuga Labs based on his interactions on a generally available community Discord channel – activities that have no connection to any sales or advertising of any kind, inside or outside Nevada.[4]

### III. A STAY IS ALSO WARRANTED BECAUSE PLAINTIFF'S OPPOSITION CONFIRMS THAT HE CANNOT STATE A CLAIM FOR RELIEF

A stay of discovery is appropriate where a complaint likely fails to state a viable claim for relief. Opp. at 11-12; *see Duffy v. ASNY NY, LLC*, 2022 WL 1785395 (D. Nev. May 31, 2022) (granting stay where plaintiff likely failed to state a claim for relief); *Robinson v. Las Vegas*

---

[4] Plaintiff asks why Yuga Labs "draw[s] attention" to the fact that plaintiff **now** admits he did not reside in Nevada when the FAC was filed. Opp. at 6 n.2. Simple. It appears plaintiff misstated this fact to bolster the appearance that Nevada is the right forum for this suit. While it is correct that diversity jurisdiction is measured at the time of the initial suit, that alone does not resolve the question of whether the Court has subject matter jurisdiction based on complete diversity. It is plaintiff's burden to show that he was domiciled in Nevada at the time the complaint was filed, not just that he resided there. It is not clear that the Incline Village, Nevada home, which was promoted as an airbnb rental and sold just after this case was filed, was in fact ever plaintiff's domicile. And here, where Does are named, the question takes on even more significance in determining subject matter jurisdiction and complete diversity. *See Doe v. Tapang*, 2019 WL 3576995, at *4 (N.D. Cal. Aug. 6, 2019), *aff'd*, 834 F. App'x 399 (9th Cir. 2021). Current residence is also a factor courts consider in deciding appropriate venue. *See, e.g.*, *Worley v. Montgomery*, 2021 WL 3616710, at *2 (D. Nev. Aug. 16, 2021) (plaintiff's forum choice carries "little weight" where she does not reside in forum). The cavalier approach to pleading basic jurisdictional facts also calls into question other allegations in the FAC.

*Metro. Police Dep't*, 2021 WL 5173616 (D. Nev. Nov. 4, 2021) (same); *Urban Outfitters*, 2021 WL 3605053 (same). The purpose of Federal Rule of Civil Procedure 12(b)(6) is to enable defendants to challenge the legal sufficiency of a complaint without subjecting themselves to discovery. *Tradebay*, 278 F.R.D. at 601 (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). "[D]iscovery follows the filing of a well-pleaded complaint. It is not a device to enable the plaintiff to make a case when his complaint has failed to state a claim for relief." *Steinmetz v. Experian Info. Solutions, Inc.*, 2019 WL 3082720, at *1 (D. Nev. July 15, 2019) (quoting *Mujina v. AirScan Inc.*, 771 F.3d 580, 583 n.7 (9th Cir. 2014)). Here, plaintiff's opposition confirms that the FAC does not state a claim against Yuga Labs.

### A.   The FAC Fails To State A Viable Claim For Negligence

Plaintiff acknowledges that, in Nevada, "[w]hether a defendant owes a plaintiff a duty of care is a question of law." Opp. at 12; *Scialabba v. Brandise Constr. Co.*, 921 P.2d 928, 968 (Nev. 1996); *Beckman v. Match.com, LLC*, 2017 WL 1304288, at *3 (D. Nev. Mar. 10, 2017), *aff'd*, 743 F. App'x 142 (9th Cir. 2018). Yet, he takes the irreconcilable position that determining whether a special relationship exists, which goes hand in hand with whether a duty exists, "is a factually intensive inquiry" that requires further discovery. *See* Opp. at 12. In doing so, plaintiff misrepresents the facts and contradicts the very law that he cites. *See id.*; *Beckman*, 2017 WL 1304288, at *4 (dismissing negligence claim at motion to dismiss stage because no special relationship existed between plaintiff and Match.com as a matter of law).[5] A complaint only survives a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where plaintiff meets the ***pleading*** standard of alleging facts sufficient to "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Contrary to plaintiff's claim, Yuga Labs' Rule 12(b)(6) motion to dismiss did not raise "factual disagreements between the parties" (Opp. at 13) because Yuga Labs was forced to accept the allegations in the FAC as true. Instead, the motion to dismiss contended that no special relationship exists as a matter of law based on the

---

[5] Plaintiff inexplicably relies on *Brennan v. Cadwell Sanford Deibert & Garry LLP*, 2020 WL 5653673 (D. Nev. Sept. 22, 2020), but the motion to stay discovery there ***was granted*** because the issues were "matters of law that the Court can decide without discovery." *Id.* at *2. The same is true here as to jurisdiction and plaintiff's inability to state a viable claim under Rule 12(b)(6).

facts as alleged in the FAC. A preliminary peek at the merits of this question makes clear that plaintiff pleads no facts even remotely supporting a special relationship.

Plaintiff concedes that the threshold legal question of a special relationship is satisfied only where "the ability of one of the parties to provide for his own protection has been limited in some way by his submission to the control of another." *Beckman*, 2017 WL 1304288, at *3. Despite acknowledging this principle, plaintiff fails to identify *any* allegations in the FAC that indicate that his "ability" to provide for his own "protection" was "limited" by Yuga Labs' actions. Instead, plaintiff makes the unremarkable point that the FAC alleges that Yuga Labs controls the gatekeeping function for BAYC club membership and the distribution of benefits to club members. Opp. at 13. Putting aside that that is purely a function of who holds an NFT according to the blockchain, what plaintiff never explains is how this purported control by Yuga Labs over the BAYC somehow ***limited plaintiff's ability*** to ***decide not to open his wallet to a thief***. Reading through the opposition, this Court would not know that a third-party criminal stole plaintiff's NFTs from plaintiff's personal digital wallet after he ***voluntarily*** interacted with an unknown individual, on a Discord server unrelated to Yuga Labs or the BAYC, and then clicked on a link provided by the bad actor (which he did not verify), and thereby provided access to his digital wallet. Plaintiff does not allege that Yuga Labs had any control whatsoever over that chain of events, nor could he – plaintiff admits that he acted freely of his own accord. If anything, a preliminary peek at the merits demonstrates that, just as in *Beckman*, plaintiff fails to plead a special relationship and, given the lack of a cognizable duty, his negligence claim fails. The claim also fails for the independent reasons that causation is not plausibly alleged and the claim is barred by the economic loss doctrine – defects the opposition does not even attempt to address.

**B.    Plaintiff's Breach Of Contract Claim Also Fails As A Matter Of Law**

Yuga Labs' challenge to the legal sufficiency of plaintiff's breach of contract claim is also likely to prevail. The FAC fails to adequately allege that (a) Yuga Labs made a contractual offer, or (b) the parties formed a contract that includes "lifetime membership" in the BAYC or "membership benefits to 'rightful' owners of a Bored Ape or Mutant Ape NFT irrespective of whether they hold an NFT according to the blockchain." MTD FAC at 20-23 (noting the absence

Fenwick & West LLP

of any factual allegations stating that BAYC membership benefits are available to individuals who do not hold a Bored Ape NFT according to the blockchain and discussing the BAYC terms and conditions that provide the opposite).

Attempting to sidestep Yuga Lab's *actual* challenges to the contract claim, plaintiff focuses exclusively on whether Yuga Labs' online statements constitute "'offers' in the contractual sense." Opp. at 13. Specifically, plaintiff argues that, because the question of whether Yuga Labs made "an operative offer" "depends upon all the surrounding circumstances," the parties' factual disagreements regarding contract formation prevent Yuga Labs from prevailing on its motion to dismiss. Opp. at 13-14 (quoting *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 784 (9th Cir. 2012). Again, plaintiff misunderstands 12(b)(6) motions. Plaintiff's FAC offers vague and conclusory assertions on contract formation that are insufficient as a matter of law. He claims that "BAYC made this offer on [BAYC's] "official Twitter account," which is allegedly "explained in further detail on BAYC's official website." *See* FAC ¶¶ 170-181 (allegations regarding the first claim for relief – breach of contract). Yuga Labs' motion to dismiss challenges the legal sufficiency of these threadbare allegations. In particular, the motion to dismiss argues that plaintiff's complaint identifies statements that are, at most, advertisements, and as a matter of law "[a]dvertisements count as offers only where they 'invite the performance of a specific act without further communication and ***leave nothing for negotiation***.'" MTD FAC at 20 (quoting *Sateriale*, 697 F.3d at 788 (emphasis added)). As the motion to dismiss explains, according to plaintiff's own allegations, which must be accepted as true at this stage of the litigation, the purported "offer" said nothing about what membership entails or the supposed term that plaintiff claims Yuga Labs allegedly breached – that membership belongs to those making claims of "rightful" ownership of a qualifying NFT and not according to the blockchain. *Id.* at 20-21; *see also* Stay Mot. at 11. As a result, plaintiff fails to plead the necessary element of an offer.

Indeed, plaintiff completely misreads the rule in *Sateriale* regarding whether a communication constitutes an operative contractual offer, asserting that "[l]ooking into the 'surrounding circumstances' is another way of saying that this Court must make an inquiry into

the facts of the case." Opp. at 13. And on this basis, plaintiff asserts that there is a "factual dispute in need of further immediate exploration" that precludes granting Yuga Labs' motion to dismiss. Opp. at 14 (citing *Brennan*, 2020 WL 5653673 at *2). *Sateriale* held no such thing. In that case, the district court dismissed the plaintiff's contract claim under Rule 12(b)(6). 697 F.3d at 784. While the appellate court reversed the dismissal, that decision had nothing to do with the parties' opposing positions regarding contract formation (*i.e.*, whether or not defendant's statements constituted an "offer") or suggesting that a factual inquiry into the "surrounding circumstances" was necessary to decide the issue as a matter of law under Rule 12(b)(6). *Id*. at 784-92. Instead, the appellate court found that ***as a matter of pleading***, the allegations had been sufficient "in light of the totality of the circumstances surrounding RJR's communications to consumers." *Id*. at 787-88 (finding that the alleged offer "invited the performance of specific acts . . . without further communication, and leaving nothing for negotiation."). That does nothing to undermine the fact that the operative pleading ***here*** is and remains facially deficient.

### C. Plaintiff's Alternative Implied Covenant Claim Is Equally Defective

Just as with the breach of contract claim, plaintiff mischaracterizes Yuga Labs' challenge to the implied covenant claim and misunderstands the Court's analysis on a 12(b)(6) motion. Yet again, plaintiff incorrectly asserts that there "is a factual dispute in need of further immediate exploration" that prevents granting the motion to dismiss. Opp. at 14 (citing *Brennan*).

Consistent with the law, Yuga Labs' position is that an implied covenant claim is "available only where there is literal compliance with a contract but conduct that otherwise 'deliberately [contravenes] the intention and spirit of the contract.'" Stay Mot. at 11 (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991)); *see also* MTD FAC at 23-24 (citing multiple cases following this general rule and dismissing implied covenant claims). Here, where plaintiff has not sufficiently alleged that a contract was formed, the implied covenant does not apply. But even if plaintiff had effectively done so, he has not alleged (as he must) Yuga Labs' compliance with the terms of that agreement, or any conduct by Yuga Labs undermining the intention and spirit of any such contract. If anything, Yuga Labs has done precisely what the terms and conditions attached to Bored Ape NFTs said it would do –

"rely on the blockchain to determine ownership and rely on NFT holders to safeguard themselves." MTD FAC at 23 (noting plaintiff's repeated admissions regarding the applicability of such terms). Instead, plaintiff attempts to repackage his breach of contract claim as a breach of the implied covenant claim without pleading the required elements as a matter of law. *See* Opp. at 14 (asserting that plaintiff entered into a contract for membership benefits and whether Yuga Labs breached the implied covenant is a factual dispute). That plaintiff did not meet his pleading burden is not reasonably subject to dispute, however. Dismissal of this claim is also appropriate.

### IV. THE COMPETING INTERESTS OVERWHELMINGLY FAVOR A STAY

Although plaintiff agrees that Nevada courts may balance "the competing interests of the parties" when determining whether a stay is appropriate, he cites the wrong standard for weighing those interests. *See* Opp. at 14-15.[6] The correct standard considers, among other things, "the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Puckett v. Schnog*, 2013 WL 1874754, at *3 (D. Nev. May 3, 2013) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)) (competing interests favor a stay where defendant's motion was likely to be case dispositive).

Here, these factors weigh heavily in favor of granting a stay. Indeed, there is no greater inequity than forcing a party to participate in discovery as to defective claims, and that is all the worse where jurisdiction is also lacking. *See, e.g.*, *Duffy*, 2022 WL 1785395, at *3 (even without jurisdictional issues, finding time and money spent on discovery on defective claims results in prejudice). There is also no question that the orderly course of justice, and ample case law in this jurisdiction, provides that a stay is appropriate where there is a pending meritorious motion to dismiss for lack of personal jurisdiction or failure to state a claim. *See* Section II *supra* (citing

---

[6] Plaintiff improperly grafts the heightened standard for seeking a protective order under Fed. R. Civ. P. 26(c), as articulated in *Tradebay*, onto the competing interests analysis: "A showing that discovery may involve some inconvenience and expense does not suffice to establish good cause for issuance *of a protective order*. … Rather, a party *seeking a protective order* must show a particular and specific need for the *protective order*." 278 F.R.D. at 601 (emphasis added). It does not apply here where the argument is that all discovery is premature.

cases). Here, **both grounds are established**. A discovery stay until the motions to dismiss are resolved also makes sense, as those rulings serve to simplify the "issues, proof, and questions of law." *Puckett*, 2013 WL 1874754, at *3. These principles are also reflected in Judge Du's standing order, which aims to avoid "unnecessary discovery." Standing Order at 1. For all these reasons, a stay is appropriate and this Court should grant Yuga Labs' request.

Plaintiff's arguments to the contrary are unavailing. *First*, Plaintiff relies on Federal Rule of Civil Procedure 1 to argue that he is entitled "to a just and speedy determination of his action." Opp. at 15. But Rule 1 cuts both ways. Forcing Yuga Labs to engage in expensive and burdensome discovery before this Court has determined if it even has jurisdiction over Yuga Labs, or whether plaintiff's claims have any merit, also runs afoul of Rule 1's mandates. *See Duffy*, 2022 WL 1785395, at *3 (noting a discovery stay "accomplish[es] the objectives of Rule 1, especially considering that Plaintiffs must satisfy Rule 8's pleading requirement before engaging in discovery"). *Second*, plaintiff argues that a delay in discovery will cause him "to continue to lose out on the benefits conferred on BAYC members" (Opp. at 15), but plaintiff's loss of access to the BAYC (and any alleged benefits from any source that may accrue to NFT holders) is the result of plaintiff's own carelessness and the bad acts of a third party, not this Court's procedural decisions. Moreover, commencing discovery will not (and frankly cannot, absent the return of his NFTs, which **Yuga Labs** does not have) result in any benefits, nor has plaintiff sought any immediate relief from this Court. *See Duffy*, 2022 WL 1785395, at *3 ("[I]f discovery is stayed and the Court later denies Defendant's motion to dismiss, Plaintiffs may only suffer a delay in receiving answers to their discovery requests."). *Third*, plaintiff contends that there is a "risk of losing important evidence" if discovery is not allowed to proceed at this time. But there is nothing to support that contention[7] (Yuga Labs is well aware of its preservation obligations) and Nevada courts have rejected similar arguments before. *See Puckett*, 2013 WL 1874754, at *3 (rejecting plaintiff's argument that defendant "will hide valuable assets").

---

[7] Indeed, nothing prevented plaintiff from day one from collecting evidence from online platforms that he has identified as possessing supporting evidence, nor did plaintiff serve any third-party subpoenas at the first opportunity. If plaintiff is truly concerned about the loss of evidence caused by a modest delay, he could send preservation notices to third party witnesses to address the issue.

## V. CONCLUSION

The only thing that plaintiff's opposition confirms is that a stay of discovery is warranted here because Yuga Labs has raised compelling, dispositive jurisdictional and substantive challenges to plaintiff's claims, to which plaintiff has no answer. Yuga Labs respectfully requests that the Court stay discovery, including the deadlines triggered by Rule 26(f) and LR 26-1, and vacate the Rule 26(f) report, Scheduling Order, and Order to File Case Management Report (and attendant discovery-related obligations) entered July 21, 2022 as premature, and adjourn further case scheduling until such time as the pending motions to dismiss have been decided.

Dated: September 2, 2022

FENWICK & WEST LLP

By: /s/ Jennifer C. Bretan
    Jennifer C. Bretan

Michael S. Dicke (admitted *pro hac vice*)
Katherine A. Marshall (admitted *pro hac vice*)
Samuel Sahagian (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350
Email: mdicke@fenwick.com
Email: jbretan@fenwick.com
Email: kmarshall@fenwick.com
Email: ssahagian@fenwick.com

John D. Tennert III (Nevada Bar No. 11728)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2200
Facsimile: 775.786.1177
Email: jtennert@fclaw.com

*Attorneys for Defendant Yuga Labs, Inc.*

# CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on September 2, 2022, a true and correct copy of **YUGA LABS' REPLY IN SUPPORT OF MOTION TO STAY** was transmitted electronically through the Court's CM/ECF e-filing electronic notice system to all attorneys associated with the above-captioned case.

/s/ *Jennifer C. Bretan*
Jennifer C. Bretan
Fenwick & West LLP