DICKINSON WRIGHT PLLC
JOHN P. DESMOND
Nevada Bar No. 5618
JUSTIN J. BUSTOS
Nevada Bar No. 10320
100 W. Liberty Street, Suite 940
Reno, NV  89501
Tel: 702-550-4400
Fax: 844-670-6009
Email:  jdesmond@dickinsonwright.com
Email:  jbustos@dickinsonwright.com

(Additional counsel listed on signature page)

*Attorneys for Defendant Ozone Networks, Inc.
d/b/a OpenSea, a New York Corporation*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| ROBERT ARMIJO,<br><br>    Plaintiff,<br><br> vs.<br><br>OZONE NETWORKS, INC. d/b/a OPENSEA, a New York Corporation, YUGA LABS, LLC d/b/a BORED APE YACHT CLUB, a Delaware limited liability company, LOOKSRARE; and DOES 1 to 50,<br><br>    Defendants. | CASE NO.  3:22-CV-00112-MMD-CLB<br><br>**DEFENDANT OZONE NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY OR EXTEND DEADLINES** |

## TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ...................................................................................................1

II.     PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD ...........................3

III.    A "PRELIMINARY PEEK" ESTABLISHES PLAINTIFF IS HIGHLY UNLIKELY TO STATE A CLAIM ...................................................................................................4

      A.      Plaintiff's Own Allegations Demonstrate That OpenSea Owed Him No Duty.......4

      B.      There Are No Factual Issues in Need of Exploration To Resolve OpenSea's Other Arguments To Dismiss Plaintiff's Claims ................................................................8

IV.     OPENSEA WOULD PLAINLY BE PREJUDICED IF DISCOVERY PROCEEDS, AND PLAINTIFF IDENTIFIES NO PREJUDICE ...................................................11

V.      CONCLUSION...................................................................................................12

OPENSEA'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*757BD, LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,*
804 F. App'x 592 (9th Cir. 2020) ...........................................................8

*Am. Tel. & Tel. Co. v. E. Pay Phones, Inc.,*
767 F. Supp. 1335 (E.D. Va. 1991) ........................................................6

*Bacon v. Reyes,*
No. 2:12-CV-01222-JCM, 2013 WL 5522263 (D. Nev. Oct. 3, 2013) ...................11

*Beckman v. Match.com, LLC,*
743 F. App'x 142 (9th Cir. 2018) .......................................................2, 4

*Beckman v. Match.com, LLC,*
No. 2:13-CV-97 JCM (NJK), 2017 WL 1304288 (D. Nev. Mar. 10, 2017) ...............4

*Bibicheff v. PayPal, Inc.,*
844 F. App'x 394 (2d Cir. 2021) .......................................................2, 4, 7

*Bock-Kasminoff v. Walmart, Inc.,*
No. 2:20-CV-00949-JAD-EJY, 2022 WL 891448 (D. Nev. Mar. 24, 2022) ...............8

*Brennan v. Cadwell Sanford Deibert & Garry LLP,*
No. 2:20-cv-00799-JAD-VCF, 2020 WL 5653673 (D. Nev. Sept. 22, 2020)...........1, 2, 4

*Cnty. of Santa Clara v. Astra USA, Inc.,*
No. C 05-03740 WHA, 2006 WL 1344572 (N.D. Cal. May 17, 2006)....................6

*Del Webb Communities, Inc. v. Partington,*
652 F.3d 1145 (9th Cir. 2011) ............................................................5

*Dyroff v. Ultimate Software Grp., Inc.,*
934 F.3d 1093 (9th Cir. 2019) .......................................................2, 5, 8

*Godwin v. Senior Garden Apartments,*
No. 2:17-CV-02178-MMD-DJA, 2021 WL 564901 (D. Nev. Jan. 26, 2021)...............2

*Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.,*
No. 09 CV 5874 (RPP), 2009 WL 2777076 (S.D.N.Y. Sept. 1, 2009) ..................3

*King v. Facebook, Inc.,*
No. 21-CV-04573-EMC, 2021 WL 5279823 (N.D. Cal. Nov. 12, 2021) ................6

*Kor Media Grp., LLC v. Green,*
294 F.R.D. 579 (D. Nev. 2013)......................................................2, 11

*Mujica v. AirScan Inc.,*
771 F.3d 580, 593 (9th Cir. 2014) .......................................................6

*Patel v. Citibank Corp.*,
No. SA CV 19-1539-DOC-KES, 2019 WL 7987113
(C.D. Cal. Sept. 27, 2019)..................................................................................................6

*Pelletier v. Rodriguez*,
No. 3:17-CV-00642-MMD-EJY, 2021 WL 3008594 (D. Nev. July 15, 2021).....................10

*Puckett v. Schnog*,
No. 2:12-CV-01958-GMN, 2013 WL 1874754 (D. Nev. May 3, 2013)................................11

*Richey v. Axon Enterprises, Inc.*,
No. 3:19-CV-00192-MMD-CLB, 2020 WL 3800524 (D. Nev. July 6, 2020)....................3, 5

*Segal v. Lefebvre*,
No. 2:13-CV-01511-JCM, NJK, 2013 WL 12130553 (D. Nev. Nov. 14, 2013)...................10

*Turner Broadcasting Sys., Inc. v. Tracinda Corp.*,
175 F.R.D. 554 (D. Nev. July 18, 1997).............................................................................3

*Urb. Outfitters, Inc. v. Dermody Operating Co.*,
No. 3:21-cv-00109-MMD-CLB, 2021 WL 3605053 (D. Nev. Aug. 13, 2021) .................3, 11

**STATE CASES**

*Cardiello v. Venus Grp., Inc.*,
No. 58925, 2013 WL 7158504 (Nev. Nov. 14, 2013) ...........................................................8

*Farmers Ins. Exch. v. Neal*,
64 P.3d 472 (Nev. 2003).....................................................................................................9

*Fed. Ins. Co. v. Coast Converters*,
339 P.3d 1281 (Nev. 2014)................................................................................................10

*Sadler v. PacifiCare of Nevada*,
340 P.3d 1264 (Nev. 2014)................................................................................................10

*Sciaballa v. Brandise Constr. Co.*,
921 P.2d 928 (Nev. 1996)...................................................................................................4

**FEDERAL RULES**

Fed. R. Civ. P. 26(f)..........................................................................................................12

**STATE RULES**

LR 26-1 .............................................................................................................................12

OPENSEA'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY

**I.      INTRODUCTION**

The issue before this Court is simple and straightforward:  whether to grant a discovery stay in this case in light of defendant Ozone Networks, Inc. d/b/a OpenSea's ("OpenSea") pending Motion to Dismiss.  The parties' briefing has greatly narrowed and clarified this issue. Indeed, Plaintiff's Opposition makes several critical concessions that make clear that such a stay is wholly warranted here.

In the Opposition, Plaintiff acknowledges that discovery should "be stayed based on a pending dispositive motion 'when there are no factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive.'"  (Opp., ECF No. 86, at 2 (quoting *Brennan v. Cadwell Sanford Deibert & Garry LLP*, No. 2:20-cv-00799-JAD-VCF, 2020 WL 5653673, at *2 (D. Nev. Sept. 22, 2020) (granting stay when issues raised in motion to dismiss are "matters of law that the Court can decide without discovery")).)  Plaintiff also readily concedes that OpenSea's pending Motion to Dismiss "is a dispositive motion," and that "additional discovery is not required for the Court to make its decision" on that motion.  (*Id.* at 6 ("The third factor is where the dispute lies – the 'preliminary peek.'"); *cf.* Mem., ECF No. 80, at 3-4.)

Having conceded these fundamental points, the Opposition rests entirely on one argument:  Plaintiff insists that the motion does not satisfy the "preliminary peek" step because certain "factual disputes" exist.  (*See* Opp., ECF No. 86, at 6.)  But Plaintiff has failed to identify any specific factual dispute relevant to OpenSea's Motion to Dismiss, or what discovery might resolve them.  Indeed, Plaintiff has not even served any discovery.  Plaintiff's simple recitation of unidentified "factual disputes" cannot conjure such a dispute into existence.  The Court should stay discovery pending resolution of OpenSea's Motion to Dismiss.

A "preliminary peek" at the underlying Motion reveals that Plaintiff's own factual allegations, taken as true, fail to state a claim.  The cases cited by OpenSea, including two Ninth Circuit decisions, demonstrate that courts consistently uphold the dismissal of similar negligence claims *on the pleadings*, holding that Internet platforms owe no duty to their users to prevent third-party harm, precisely what is alleged here.  (Mem., ECF No. 80, at 4; OpenSea MTD, ECF

No. 71, at 7-13; *Beckman v. Match.com, LLC*, 743 F. App'x 142, 142 (9th Cir. 2018) (Mem. Disp.); *Dyroff v. Ultimate Software Grp., Inc.,* 934 F.3d 1093, 1100-01 (9th Cir. 2019); *Bibicheff v. PayPal, Inc.*, 844 F. App'x 394, 397 (2d Cir. 2021) (summary order).) As the Ninth Circuit has held, "Nevada courts have never recognized a special relationship akin to that" between a website and its users establishing such a duty. *Beckman*, 743 F. App'x at 142. Plaintiff provides no reason for this Court to be the first.

The Opposition itself acknowledges that "[w]hether a defendant owes a plaintiff a duty of care is a question of law." (Opp., ECF No. 86, at 7) And Plaintiff's own allegations establish that no such duty exists here. Plaintiff acknowledges that "all three of his BAYC NFTs were stolen in an instant" when he "fell prey to a phishing scam" executed by a third-party "thief through the online communication platform known as 'Discord,'" which is "a *different and separate entity* that is completely unaffiliated with OpenSea." (*Id.* at 3 (emphasis added); *id.* at 4 ("OpenSea was not involved in the actual theft of Mr. Armijo's BAYC NFTs.").) Plaintiff also acknowledges that the stolen NFTs could be sold on other platforms besides OpenSea, including LooksRare—where two of the three NFTs were in fact resold after OpenSea disabled listings of the NFTs on its own platform. (*See* FAC, ECF No. 62, ¶¶ 95-96.) These allegations, taken as true, establish as a matter of law that there was no "special relationship" giving rise to a duty of OpenSea to prevent the harm caused by a third party.

OpenSea has three additional independent arguments for dismissal of all of Plaintiff's claims, as set forth below and in OpenSea's Motion to Dismiss (ECF No. 71, at 13-24)—each of which provides an additional, independent reason to stay discovery. This includes the absence of any alleged proximate causation here, which Plaintiff's Opposition *fails to address at all*.

Because there are no "factual issues in need of further immediate exploration, and the issues before the Court are purely questions of law that are potentially dispositive," *Brennan*, 2020 WL 5653673, at *2, a stay is necessary to avoid prejudicing OpenSea with the significant costs of unnecessary discovery. *Godwin v. Senior Garden Apartments*, No. 2:17-CV-02178-MMD-DJA, 2021 WL 564901, at *1-2 (D. Nev. Jan. 26, 2021) (granting stay when "the Court is not convinced that Plaintiff will survive dismissal" (citing *Kor Media Grp., LLC v. Green*, 294

F.R.D. 579, 581 (D. Nev. 2013))); *Urb. Outfitters, Inc. v. Dermody Operating Co.*, No. 3:21-cv-00109-MMD-CLB, 2021 WL 3605053, at *4-5 (D. Nev. Aug. 13, 2021) (noting that "the Court's duty is to ensure an inexpensive determination of this action" and granting stay even while "recogniz[ing] the District Court may disagree and find that dismissal is not proper").  A stay is particularly warranted under the circumstances here, where Plaintiff has not identified what discovery he seeks, has not served any such discovery, and has not even provided a timeline for serving discovery; where briefing on the motion to dismiss is ongoing; and where the length of the stay is likely to be only a few months.  *See Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874 (RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (granting stay when briefing on motion to dismiss is not yet complete and no discovery requests were served because delay of "a few months" would not prejudice plaintiff).[1]

## II.   PLAINTIFF MISSTATES THE APPLICABLE LEGAL STANDARD

Contrary to Plaintiff's contention, it is not the law that "[s]tays should *only* be granted 'where the complaint was utterly frivolous, or filed merely for settlement value.'"  (Opp., ECF No. 86, at 2 (emphasis added) (quoting *Turner Broadcasting Sys., Inc. v. Tracinda Corp.*, 175 F.R.D. 554, 556 (D. Nev. July 18, 1997).)  While *Turner* states that a stay *may* be granted in such circumstances, it further holds that a stay may *also* be appropriate where, as here, "the complaint . . . did not raise factual issues that required discovery for their resolution."  175 F.R.D. at 556.  Moreover, *Turner*, which is 25 years old, predates much more recent precedent from this District holding that even when "the undersigned may not be entirely convinced that" a motion to dismiss will be granted, "the court must also consider whether, as a general matter, granting a limited state is nonetheless appropriate under the circumstances."  *Richey v. Axon Enters., Inc.*, No. 3:19-CV-00192-MMD-CLB, 2020 WL 3800524, at *3 (D. Nev. July 6, 2020) (granting stay because "how the undersigned sees the issues presented by the motion to strike may be very different from how the assigned district judge will see these same issues").

---

[1] Plaintiff's Opposition noted that the deadline to file an Opposition is "more than two weeks away," but this was extended by joint stipulation and order to October 3, 2022 at Plaintiff's request.  Briefing will be complete on November 8, 2022.  (*See* ECF No. 88.)

**III.     A "PRELIMINARY PEEK" ESTABLISHES PLAINTIFF IS HIGHLY UNLIKELY TO STATE A CLAIM**

**A.     Plaintiff's Own Allegations Demonstrate That OpenSea Owed Him No Duty**

As Plaintiff acknowledges, "[w]hether a defendant owes a plaintiff a duty of care is a question of law" in Nevada.  (Opp., ECF No. 86, at 7 (quoting *Sciaballa v. Brandise Constr. Co.*, 921 P.2d 928, 968 (Nev. 1996)); *cf. Brennan*, 2020 WL 5653673, at *2 (stay appropriate when "the issues before the Court are purely questions of law that are potentially dispositive").)[2]  Specifically, when a plaintiff alleges that a defendant is liable in negligence for harm caused by a third party and the plaintiff's factual allegations do not support their claim that a special relationship existed, the claim should be dismissed.  *Beckman v. Match.com, LLC*, No. 2:13-CV-97 JCM (NJK), 2017 WL 1304288 at *3 (D. Nev. Mar. 10, 2017) ("Beckman has not sufficiently alleged the prerequisite relationship."), *aff'd*, 743 F. App'x 142 (9th Cir. 2018). That is precisely the situation here.

Plaintiff's claim that OpenSea had a duty of care to prevent a third-party scammer from stealing his NFTs via a phishing attack on the unaffiliated Discord platform and relisting the stolen NFTs on OpenSea is contrary to the law.  As the Ninth Circuit stated in holding that the dating website Match.com owed no duty to prevent or block third parties from causing harm to its users, affirming the dismissal of a complaint on the pleadings, "Nevada courts have never recognized a special relationship akin to that" between a website and its users.  *Beckman*, 743 F. App'x at 142.  Several other courts have similarly dismissed claims on the pleadings.  The Second Circuit, for example (citing the Ninth Circuit in *Beckman*) emphasized that "courts generally do not impose a duty on businesses to protect their customers from the acts of third parties absent special circumstances not alleged here," and concluded that PayPal owed no duty to monitor its platform for accounts created by third parties in its users' names causing harm, as PayPal and its users were not in a special relationship.  *Bibicheff*, 844 F. App'x at 396-97 & n.1

---

[2] Plaintiff cites *Sciaballa* for the proposition that the question whether a special relationship exists "is a factually intensive inquiry," but the case says no such thing.  *See* 921 P.2d at 968-69.

(noting that the plaintiff's "injury was a result of [a third party's] access to [her] personal and business information, including credit card information–access used by the [third party] to defraud [the plaintiff], but for which PayPal is not alleged to have been responsible"); *see also, e.g.*, *Dyroff*, 934 F.3d at 1100-01 (upholding grant of motion to dismiss where user allegedly connected with drug dealer on social media site resulting in overdose as no special relationship existed, and noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content"). Plaintiff's claim to a duty is even weaker than the basis for the duties proposed in these cases, as the wrongdoer here did not even connect with Plaintiff using OpenSea's platform.

Notwithstanding this weight of authority, Plaintiff proffers the bald and unsupported assertion that this case is different because "[a]ny individual who participates in the buying, selling, or trading of NFTs submits themselves to OpenSea's control, and their ability to protect themselves" *anywhere on the Internet* is somehow "limited by the actions and nonactions of OpenSea" due to its purported market position.  (Opp., ECF No. 86, at 4.)   Plaintiff has not cited a single case from Nevada or any other jurisdiction supporting this contention, because none exists.  Indeed, the dismissal of Plaintiff's claims is particularly warranted here given that Plaintiff is asking this Court, sitting in diversity, to extend Nevada state law without any citation to case law supporting his theories.  The Ninth Circuit has specifically cautioned federal courts against doing so.  *See Del Webb Communities, Inc. v. Partington*, 652 F.3d 1145, 1154–55 (9th Cir. 2011) ("Federal courts should 'hesitate prematurely to extend the law . . . in the absence of an indication from the [state] courts or the [state] legislature that such an extension would be desirable.'").[3]

---

[3] Plaintiff contends that "important and novel questions regarding web3, blockchain technology, decentralization, and non-fungible tokens ("NFTs") are at issue," (Opp., ECF No. 86, at 2) but as explained in OpenSea's Motion to Dismiss, these technologies may be novel but the legal issues are not—courts routinely address questions of duty in the context of negligence allegations, including on the Internet.  (*See* OpenSea MTD, ECF No. 71, at 1.)  Even if the issues at play in the Motion to Dismiss were novel—and they are not—when "the issues presented by the [underlying motion] are novel and present a variety of issues that appear to be legally unsettled," it is "more prudent to grant the requested stay . . . until the assigned district judge makes a determination of the merits of" the underlying motion.  *Richey*, 2020 WL 3800524, at *3.

Plaintiff's argument not only fails to cite a single case supporting his novel theory, it also fails to grapple with the fact that courts repeatedly have held that online platforms do not have a special relationship with their users even where they indisputably have dominant market share.  (*See* OpenSea MTD, ECF No. 71, at 12 & n.2 (citing, *e.g.*, *Patel v. Citibank Corp.*, No. SA CV 19-1539-DOC-KES, 2019 WL 7987113, at *6 (C.D. Cal. Sept. 27, 2019) ("no special relationship between Apple/Google and Plaintiffs"); *King v. Facebook, Inc.*, No. 21-CV-04573-EMC, 2021 WL 5279823, at *6 (N.D. Cal. Nov. 12, 2021) (no duty of Facebook "by virtue of a special relationship")).)  And courts have specifically rejected the notion that a party's market position is at all relevant to the question of whether a "special relationship" exists as is necessary to establish a duty.  (OpenSea MTD, ECF No. 71, at 12 (citing, *e.g.*, *Am. Tel. & Tel. Co. v. E. Pay Phones, Inc.*, 767 F. Supp. 1335, 1340 (E.D. Va. 1991), *opinion vacated on non-substantive grounds*, 789 F. Supp. 725 (E.D. Va. 1992) (rejecting argument that alleged "monopol[y]" creates a special relationship); *Cnty. of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2006 WL 1344572, at *10 (N.D. Cal. May 17, 2006), *aff'd*, *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110 (2011) ("disparities in market power" not sufficient to create special relationship)).)

Apart from these legal deficiencies, Plaintiff not only identifies no factual disputes or discovery he would need to establish the existence of a duty, but the FAC is replete with factual allegations that *contradict* Plaintiff's cursory theory by showing that the NFT community is far broader than OpenSea and that OpenSea in no way controls the general NFT market.[4]  First, Plaintiff acknowledges that "OpenSea was not involved in the actual theft of Mr. Armijo's BAYC NFTs," which occurred when he "fell prey to a phishing scam" executed by a third party on "Discord," "a different and separate entity that is completely unaffiliated with OpenSea."

---

[4] Plaintiff asserts that "the dispute is not a pure question of law" because "OpenSea's question *is whether such a duty exists in this case based on the facts presented*."  (Opp., ECF No. 86, at 8 (emphasis in original).)  This is nonsensical:  OpenSea contends that the answer to the pure question of law whether such a duty exists is that it does not, *based on the facts alleged in Plaintiff's Complaint*.  Moreover, it is black-letter law that plaintiffs "must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it."  *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (emphasis in original).

(Opp., ECF No. 86, at 3-4; *cf.* FAC, ECF No. 62, ¶¶ 3, 9, 25-28, 30-31, 193-194.)  And as to the reselling of the stolen NFTs, Plaintiff alleges that other NFT marketplaces exist and that two of the three stolen NFTs were in fact resold using one of those alternative platforms—LooksRare, another defendant here—after OpenSea disabled listings of those NFTs on its own platform within hours.  (*Id.* ¶¶ 4, 95-96 (OpenSea cannot "prevent the stolen NFTs from being purchased or traded on any other NFT marketplaces").)  These allegations show that OpenSea's ability to monitor or prohibit listings on its own platform cannot prevent the resale of NFTs elsewhere (as its disabling of Plaintiff's NFTs did not prevent their actual resale elsewhere).  Because Plaintiff's factual allegations make clear that the NFT market is not controlled by *anyone*, least of all OpenSea, they cannot support his (unsubstantiated) theory that he somehow subjected himself to OpenSea's control.[5]

Finally, Plaintiff's contention that "OpenSea itself acknowledges that [the alleged] duty exists" because it has publicly stated that its policies are "designed to keep our community safe" and that it "do[es] not want to incentivize theft by allowing [its] platform to be used to help sell stolen items" begs the question.  (*See* Opp., ECF No. 86, at 6-7.)  Of course OpenSea (like any number of Internet platforms) seeks to make its platform safe for its users, and here, did disable listings of two of the three NFTs at issue within hours—and as a result they were never resold using OpenSea.  But such good-faith efforts and policies do not give rise to a special relationship, as courts have specifically held.  *See, e.g.*, *Bibicheff*, 844 F. App'x at 396 (PayPal did not have a special relationship with its users to prevent third-party fraud even though it stated on its website that "'[e]very transaction is monitored and analyzed within milliseconds to identify and help prevent fraud before it occurs,' that '[e]very transaction is heavily guarded behind our advanced encryption' and that PayPal 'monitor[s] transactions 24/7 to help prevent fraud and identity theft.'").  Indeed, a holding to the contrary would, if anything, *disincentivize*

---

[5] Plaintiff's FAC further alleges that that no matter what OpenSea did, Plaintiff was likely to be targeted when he went on Discord "[b]ecause Discord hosts many NFT services in an open, community-based format, [and] the platform is [therefore] easily accessible to bad actors and is rife with phishing scams and malicious hacking."  (FAC, ECF No. 62, ¶¶ 31, 128.)

1   platforms from taking such steps to begin with, out of fear establishing a legal duty to do so.  *See*

2   *Dyroff*, 934 F.3d at 1100-01 ("No website could function if a duty of care was created when a

3   website facilitates communication, in a content-neutral fashion, of its users' content.").

4          Because no special relationship exists, OpenSea had no duty to Plaintiff and Plaintiff's

5   negligence claims fail as a matter of law.

6      **B.    There Are No Factual Issues in Need of Exploration To Resolve OpenSea's
              Other Arguments To Dismiss Plaintiff's Claims**

7

8          A discovery stay is independently justified by several of OpenSea's other arguments for

9   dismissal of all claims.

10         ***First***, Plaintiff *entirely ignores* a standalone basis for dismissal:  OpenSea did not

11  directly or proximately cause his harm.  As set forth in OpenSea's Motion to Dismiss, courts

12  routinely decide questions of proximate cause on the pleadings, particularly where (as here) the

13  plaintiff alleges to have been harmed by the actions of a third party.  (OpenSea MTD, ECF No.

14  71, at 14-16; *Cardiello v. Venus Grp., Inc.*, No. 58925, 2013 WL 7158504 (Nev. Nov. 14, 2013)

15  (unpublished disposition) (dismissing claim against employer when alleged injuries were caused

16  by third party).)  As Plaintiff's own allegations demonstrate, his loss of his NFTs became

17  "permanent and irreversible" within seconds of the time he clicked on the third-party attacker's

18  links on a fake website operated by the attacker.  (FAC, ECF No. 62, ¶ 4 ("Because blockchain

19  technology is decentralized and spread across thousands of computer nodes at various locations,

20  individual NFT marketplaces do not have the ability to undo a transaction once it has been

21  completed on the blockchain—it becomes permanent and irreversible."); *id.* ¶ 84.)  Thus,

22  regardless of whether OpenSea prevented the resale of some, none, or all of Plaintiff's NFTs on

23  its site, Plaintiff would have suffered the *identical* injury, and OpenSea thus cannot be the

24  proximate cause of such harm.  (OpenSea MTD, ECF No. 71, at 14-16; *757BD, LLC v. Nat'l*

25  *Union Fire Ins. Co. of Pittsburgh, PA*, 804 F. App'x 592, 594 n.3 (9th Cir. 2020) ("It is

26  axiomatic that X cannot be a proximate cause of Y if Y has already occurred before X.").)

27  Indeed, Plaintiff acknowledges that even where OpenSea did disable two of the three stolen

28  NFTs at issue within hours, those NFTs were subsequently resold on LooksRare, another NFT

1   marketplace, and Plaintiff suffered the same harm of which he complains.  (*See* FAC, ECF No.

2   62 ¶¶ 95-96 (alleging that OpenSea could "not prevent the stolen NFTs from being purchased or

3   traded on any other NFT marketplaces").)

4         This rationale applies with equal force to Plaintiff's substantially identical claims for

5   negligent hiring, training, and supervision, which separately require that the harms at issue are

6   affirmatively caused *by an employee*, not, as here, by a third-party attacker.  (OpenSea MTD,

7   ECF No. 71, at 16-19; *Bock-Kasminoff v. Walmart, Inc.*, No. 2:20-CV-00949-JAD-EJY, 2022

8   WL 891448, at *3 (D. Nev. Mar. 24, 2022) ("Without evidence that Walmart was responsible for

9   the liquid on the floor, [Plaintiff] can't" show that her "injury was caused by an employee" as the

10  doctrine requires).)  Plaintiff identifies no factual dispute or discovery relevant to the issue of

11  proximate causation, and his failure to adequately plead causation is dispositive of all his claims

12  and provides an independent basis to stay discovery.

13        **Second**, the potentially dispositive question whether all of Plaintiff's claims are barred by

14  OpenSea's Terms of Service (as OpenSea contends) is plainly a question of law, and is resolved

15  in OpenSea's favor.  *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003) ("Interpretation

16  of a contract is a question of law.").  Plaintiff asserts that "the parties' differing opinions on the

17  applicability of the Terms of Service once again raises a factual dispute," but the *facts* are not in

18  dispute here:  Plaintiff does not contest that he *voluntarily accepted* the Terms of Service or that

19  the Terms contain an enforceable and unambiguous exculpatory clause.  (Opp., ECF No. 86, at

20  9-10; OpenSea MTD, ECF No. 71, at 19-23; Meader Decl., ECF No. 72, Ex. A at 11 ("WE

21  WILL NOT BE RESPONSIBLE OR LIABLE TO YOU FOR . . . ANY LOSSES, DAMAGES,

22  OR CLAIMS ARISING FROM . . . THIRD PARTY ACTIVITIES, INCLUDING WITHOUT

23  LIMITATION . . . PHISHING").)  Plaintiff confusingly contends, seemingly acknowledging

24  OpenSea's limited role, that the disclaimer and limitation of liability provisions of the Terms do

25  not apply to his claims arising out of his activity *elsewhere* on the Internet, *e.g.*, the phishing

26  attack on Discord.  (Opp., ECF No. 86, at 9-10.)  Plaintiff is wrong.  The clause plainly applies to

27  the claims at issue here, as it covers *any* alleged damages or claims arising from "***third party***

28  ***activities***," Meader Decl., ECF No. 72, Ex. A at 11 (emphasis added), which would include *both*

1    Plaintiff's claims and damages arising out of the phishing activity on Discord, *and* the attempted

2    resale by a third party of the stolen NFTs on OpenSea.  This "is a question of contract

3    interpretation, and thus, is a question of law."  *Fed. Ins. Co. v. Coast Converters*, 339 P.3d 1281,

4    1284 (Nev. 2014).

5        ***Finally***, all of Plaintiff's claims are also barred by Nevada's economic loss doctrine

6    because he does not allege any physical harm to person or property as is required to survive

7    dismissal under the economic loss rule.  (*See* OpenSea MTD, ECF No. 71, at 23-25.)  Plaintiff's

8    reliance on *Sadler v. PacifiCare of Nevada* is misplaced, because it is the exception that proves

9    the rule.  340 P.3d 1264 (Nev. 2014).  In that case, the Nevada Supreme Court held that claims

10   for medical monitoring were permissible in tort because "although the expense may be an

11   economic loss, that economic loss *is accompanied by noneconomic losses*, including unwillingly

12   enduring an unsafe injection practice and the resulting increase in risk of contracting a latent

13   disease and need to undergo medical testing that would not otherwise be required."  *Id.* at 1271

14   ("[T]here are significant policy reasons for allowing a recovery for medical monitoring costs, not

15   the least of which is that early detection can permit a plaintiff to mitigate the effects of a disease,

16   such that the ultimate costs for treating the disease may be reduced.").  Plaintiff, of course,

17   alleges no such accompanying physical, non-economic harms like the risk of disease—the harm

18   he alleges (lost BAYC NFTs, related commercialization rights, and fringe benefits such as free

19   cryptocurrency) is "purely economic"; this is established by the fact that Plaintiff's purchase of

20   additional BAYC NFTs would restore all of these benefits.  *Pelletier v. Rodriguez*, No. 3:17-CV-

21   00642-MMD-EJY, 2021 WL 3008594, at *9 (D. Nev. July 15, 2021) ("Plaintiff does allege harm

22   to his property, but the harm alleged is purely economic: 'damages to crop, loss of cattle business

23   opportunities, loss of profits from sale of Alfalfa/Orchard grass, and delays of closing.'").

24       For each of these reasons, OpenSea is likely to succeed in dismissing the FAC, and a stay

25   of discovery pending the Court's resolution of OpenSea's motion to dismiss is therefore

26   warranted.  *Segal v. Lefebvre*, No. 2:13-CV-01511-JCM, NJK, 2013 WL 12130553, at *2 (D.

27   Nev. Nov. 14, 2013) ("[I]t is more just to delay discovery to accomplish the inexpensive

28   determination of the case than to speed the parties along in discovery while the dispositive

motions are pending."); *Urb. Outfitters*, 2021 WL 3605053, at *4-5 (noting that "the Court's duty is to ensure an inexpensive determination of this action" and granting motion to stay even while "recogniz[ing] the District Court may disagree and find that dismissal is not proper").

## IV.   OPENSEA WOULD PLAINLY BE PREJUDICED IF DISCOVERY PROCEEDS, AND PLAINTIFF IDENTIFIES NO PREJUDICE

"The determination of whether to stay proceedings is best determined by weighing the competing interests of the parties and of the Court." *Puckett v. Schnog*, No. 2:12-CV-01958-GMN, 2013 WL 1874754, at *3 (D. Nev. May 3, 2013) (including the "hardship or inequity which a party may suffer in being required to go forward"). The competing interests here clearly favor a stay.

Plaintiff contends that OpenSea somehow failed to articulate how it would be prejudiced if its motion to stay discovery is not granted (citing two cases that precede *Kor Media Group* for the proposition that such a showing is required). Even if that were so, Plaintiff ignores OpenSea's contention that "delaying discovery would prevent economic waste, since conducting discovery before the ruling on the motions to dismiss would be futile." (*See* Mem., ECF No. 80, at 3-4 (quoting *Urb. Outfitters*, 2021 WL 3605053, at *3 ("With Rule 1 as its prime directive, the court must decide whether it is more just to speed the parties along in discovery while a dispositive motion is pending or to delay discovery to accomplish the inexpensive determination of the case.")); *see also Bacon v. Reyes*, No. 2:12-CV-01222-JCM, 2013 WL 5522263, at *1 (D. Nev. Oct. 3, 2013) ("It needs no citation of authority to recognize that discovery is expensive.").)

The prejudice to OpenSea of having to conduct discovery on claims that may be dismissed is clear, and greatly outweighs Plaintiff's purported prejudice of having such discovery delayed for at most a few months. Plaintiff claims "the risk of losing important evidence" (Opp., ECF No. 86, at 12), but this disregards OpenSea's stated compliance with its obligations regarding preservation of ESI (*see* Joint Case Management Report, ECF No. 87 at 10). There is no such risk, particularly given that Plaintiff has not identified what discovery he seeks or a timeline for serving it and OpenSea seeks a stay of just a few months.

1

## V.    CONCLUSION

2

The Court should stay discovery or otherwise extend the deadlines triggered by Fed. R.

3

Civ. P. 26(f) and LR 26-1 until such time as the pending motions to dismiss have been decided.

4

5

DATED this 2nd day of September, 2022.

6

7

DICKINSON WRIGHT PLLC

8

_____/s/ Justin J. Bustos_____
JOHN P. DESMOND

9

Nevada Bar No. 5618
JUSTIN J. BUSTOS

10

Nevada Bar No. 10320
100 W. Liberty Street, Suite 940

11

Reno, NV 89501
Tel: (775) 343-7500

12

Fax: 844-670-6009
Email: jdesmond@dickinsonwright.com

13

Email: jbustos@dickinsonwright.com

14

MUNGER, TOLLES & OLSON, LLP

15

JONATHAN H. BLAVIN (Pro Hac Vice)
560 Mission Street, 27th Floor

16

San Francisco, CA  94105
Tel: (415) 512-4011

17

Email:  Jonathan.Blavin@mto.com

18

19

ERIN J. COX (Pro Hac Vice)
BRANDON R. TEACHOUT (Pro Hac Vice)

20

APRIL D. YOUPEE-ROLL (Pro Hac Vice)
350 South Grand Avenue, Suite 5000

21

Los Angeles, CA  90071
Tel:  (213) 683-9100

22

Email: Brandon.Teachout@mto.com
Email: Erin.Cox@mto.com

23

Email: April.Youpee-Roll@mto.com

24

*Attorneys for Defendant Ozone Networks, Inc. d/b/a*

25

*OpenSea, a New York Corporation*

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an employee of Dickinson Wright PLLC, hereby certifies that on the 2nd day of September 2022, caused a copy of the foregoing **DEFENDANT OZONE NETWORKS, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STAY DISCOVERY OR EXTEND DEADLINES** to be transmitted by electronic service in accordance the Court's CM/ECF e-filing system, addressed to:

Emily Brinn Nuvan (Pro Hac Vice)
Jose A. Abarca (Pro Hac Vice)
Romaine C. Marshall (Pro Hac Vice)
Armstrong Teasdale LLP
201 South Main Street, Suite 750
Salt Lake City, UT  84111
enuvan@atllp.com
jabarca@atllp.com
rmarshall@atllp.com

*Attorneys for Plaintiff Robert Armijo*

John D. Tennert
Fennemore Craig, P.C.
7800 Rancharrah Parkway
Reno, NV  89511
jtennert@fclaw.com

*Attorneys for Defendant Yuga Labs, LLC*

Alison Clare Jordan
Fenwick & West LLP
801 California Street
Mountain View, CA  89041
Ajordan@fenwick.com

*Attorneys for Defendant Yuga Labs, LLC*

Michelle D. Alarie
Armstrong Teasdale LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, NV  89169
malarie@atllp.com

*Attorneys for Plaintiff Robert Armijo*

Samuel Sahagian (Pro Hac Vice)
Jennifer C. Bretan (Pro Hac Vice)
Katherine A. Marshall (Pro Hac Vice)
Michael S. Dicke (Pro Hac Vice)
Fenwick & West LLP
555 California Street, 12th Floor
San Francisco, CA  94104
ssahagian@fenwick.com
jbretan@fenwick.com
kmarshall@fenwick.com
mdicke@fenwick.com

*Attorneys for Defendant Yuga Labs, LLC*

*/s/ Angela M. Shoults*
An Employee of Dickinson Wright PLLC