1  MICHAEL S. DICKE (admitted *pro hac vice*)
   mdicke@fenwick.com
2  JENNIFER C. BRETAN (admitted *pro hac vice*)
   jbretan@fenwick.com
3  KATHERINE A. MARSHALL (admitted *pro hac vice*)
   kmarshall@fenwick.com
4  SAMUEL SAHAGIAN (admitted *pro hac vice*)
   ssahagian@fenwick.com
5  FENWICK & WEST LLP
   555 California Street, 12th Floor
6  San Francisco, CA 94104
   Tel: 415.875.2300
7
   JOHN D. TENNERT III (Nevada Bar No. 11728)
8  jtennert@fennemorelaw.com
   FENNEMORE CRAIG, P.C.
9  7800 Rancharrah Parkway
   Reno, NV 89511
10 Tel: 775.788.2212

11 *Attorneys for Defendant Yuga Labs, Inc.*

12

13                UNITED STATES DISTRICT COURT

14                    DISTRICT OF NEVADA

15 ROBERT ARMIJO,                          Case No.: 3:22-cv-00112-MMD-CLB

16                Plaintiff,               **DEFENDANT YUGA LABS' REPLY IN
                                           SUPPORT OF MOTION TO DISMISS
17 v.                                      PLAINTIFF'S FIRST AMENDED
                                           COMPLAINT**
18 OZONE NETWORKS, INC. d/b/a OPENSEA,
   a New York Corporation, YUGA LABS LLC   **ORAL ARGUMENT REQUESTED**
19 d/b/a BORED APE YACHT CLUB, a Delaware
   limited liability company; LOOKSRARE; and
20 DOES 1 to 50,

21                Defendants.

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ......................................................................................... 1

II.     PERSONAL JURISDICTION OVER YUGA LABS IS ABSENT ................................ 1

    A.      There Is No General Personal Jurisdiction Over Yuga Labs In Nevada .............. 1

    B.      The Opposition Also Provides No Support For Specific Personal Jurisdiction ..... 2

        1.      Interactions With BAYC Members Fail To Establish Jurisdiction ........... 2

        2.      Yuga Labs' Internet Presence Does Not Establish Jurisdiction ................ 4

        3.      Advertisements And Solicitation Do Not Establish Jurisdiction .............. 5

        4.      Plaintiff's Manufactured Contract Claims Do Not Establish Jurisdiction .. 6

III.    PLAINTIFF CANNOT STATE A VIABLE CLAIM FOR RELIEF ............................. 6

    A.      Plaintiff's Opposition Confirms That His Negligence Claim Fails ...................... 6

        1.      There Is No Special Relationship And, Absent That, There Is No Duty .... 7

        2.      Plaintiff Cannot Allege That Yuga Labs Caused His Injury .................... 9

        3.      Plaintiff Cannot Plead Around The Economic Loss Doctrine ................ 10

    B.      Plaintiff's Opposition Confirms His Contract Claims Fail As A Matter Of Law 10

IV.     CONCLUSION ........................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ARCO Prods. Co. v. May*,
  948 P.2d 263 (Nev. 1997) ...........................................................................................10

*Asahi Metal Industry Co. v. Superior Court*,
  480 U.S. 102 (1987) .....................................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .....................................................................................................9

*Ballard v. Savage*,
  65 F.3d 1495 (9th Cir. 1995) .......................................................................................3

*Beckman v. Match.com, LLC*,
  2017 WL 1304288 (D. Nev. Mar. 10, 2017) .............................................................7, 8

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) .....................................................................................6

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .....................................................................................................6

*Calder v. Jones*,
  465 U.S. 783 (1984) .....................................................................................................2

*Certified Fire Prot., Inc. v. Precision Constr., Inc.*,
  283 P.3d 250 (Nev. 2012) ...........................................................................................11

*Daimler v. Bauman*,
  571 U.S. 117 (2014) ..................................................................................................1, 2

*Estate of Smith v. Mahoney's Silver Nugget, Inc.*,
  265 P.3d 688 (Nev. 2011) .............................................................................................9

*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*,
  141 S. Ct. 1017 (2021) ..............................................................................................3, 4

*Foster v. Costco Wholesale Corp.*,
  291 P.3d 150 (Nev. 2012) .............................................................................................7

*Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*,
  808 P.2d 919 (Nev. 1991) ...........................................................................................12

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
  485 F.3d 450 (9th Cir. 2007) .......................................................................................2

*Joynt v. California Hotel & Casino*,
  835 P.2d 799 (Nev. 1992) ...........................................................................................10

**TABLE OF AUTHORITIES (CONT'D)**

Page(s)

CASES

*Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern,*
651 P.2d 637 (Nev. 1982) ...................................................................................10

*Martinez v. Aero Caribbean,*
764 F.3d 1062 (9th Cir. 2014) ..............................................................................1

*Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC,*
692 F.3d 983 (9th Cir. 2012)...............................................................................12

*Nevada Power Co. v. Trench French SAS,*
2016 WL 3093307 (D. Nev. June 1, 2016).........................................................10

*O'Handley v. Padilla,*
2022 WL 93625 (N.D. Cal. Jan. 10, 2022) ...........................................................3

*Origin Consulting, LLC v. CriticalRiver, Inc.,*
2020 WL 4586870 (D. Nev. Aug. 10, 2020) .........................................................6

*Perkins v. Benguet Consol. Mining Co.,*
342 U.S. 437 (1952)...............................................................................................2

*Sanchez v. Wal-Mart Stores, Inc.,*
221 P.3d 1276 (Nev. 2009)....................................................................................8

*Schneider v. Cal. Dep't of Corr.,*
151 F.3d 1194 (9th Cir. 1998) ..............................................................................7

*Schwarzenegger v. Fred Martin Motor Co.,*
374 F.3d 797 (9th Cir. 2004).....................................................................2, 3, 5, 6

*Scialabba v. Brandise Constr. Co.,*
921 P.2d 928 (Nev. 1996)......................................................................................8

*Sinatra v. Nat'l Enquirer, Inc.,*
854 F.2d 1191 (9th Cir. 1988) ..............................................................................5

*Software Dev. & Inv. of Nevada v. Wall,*
2006 WL 8442597 (D. Nev. Feb. 13, 2006) .........................................................4

*Sparks v. Alpha Tau Omega Fraternity, Inc.,*
255 P.3d 238 (Nev. 2011)......................................................................................8

*Tulip Trading Ltd. v. Bitcoin Ass'n for BSV & Others*
[2022] EWHC 667 (Ch) BL-2021-000313)..........................................................9

*Walden v. Fiore,*
571 U.S. 277 (2014)...............................................................................................3

## I.   INTRODUCTION

There may be ways to address and deter the theft of NFTs in the blockchain space, but suing Yuga Labs for negligence (or breach of a nonexistent contract), just because the Bored Ape NFTs it created became so popular that criminals try to steal them, is certainly not among them. The misdirected and unreasonable nature of that approach could not be more obvious than here, where plaintiff *admits* that he alone engaged with a stranger, on a site unaffiliated with Yuga Labs, clicked on an unverified link, and thus allowed that bad actor to drain his digital wallet. Propped up on a fundamentally flawed premise that Yuga Labs could have done anything (much less had a duty) to prevent this series of events, this case should never have left the starting gate.

In its motion to dismiss, Yuga Labs challenged plaintiff to meet his burden of showing general or specific personal jurisdiction over Yuga Labs in Nevada. Yuga Labs also pressed plaintiff to come forward with legal support for his claim that it was negligent in failing to prevent the alleged third-party theft of plaintiff's Bored Ape NFTs – despite case law unequivocally establishing that, absent a special relationship, Yuga Labs had no duty to do so. Also lacking was any support for the vague contract-based claims plaintiff manufactured and tacked on to the latest iteration of his complaint. Faced with numerous factual and legal deficiencies dooming all of those claims, however, it is no surprise that plaintiff has no answer. Instead, the Opposition ignores binding case law, invents facts, and relies on unsupported legal theories that appear nowhere in the First Amended Complaint ("FAC"). The defects are persisting, fatal, and cannot be cured. The case against Yuga Labs should be dismissed with prejudice.

## II.   PERSONAL JURISDICTION OVER YUGA LABS IS ABSENT

### A.   There Is No General Personal Jurisdiction Over Yuga Labs In Nevada

As explained in Yuga Labs' motion, following the Supreme Court's ruling in *Daimler AG v. Bauman*, a corporation is typically subject to general personal jurisdiction *only* (1) where it is incorporated; or (2) where it has its principal place of business. *See* Mot. at 6; *Daimler*, 571 U.S. 117, 127 (2014). "Only in an 'exceptional case' will general jurisdiction be available anywhere else." *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) (quoting *Daimler*, 571 U.S. at 139 n.19). Yuga Labs is a Delaware corporation with no offices in Nevada, and plaintiff

1  points to no facts supporting a departure from the general rule.  *See id.* (general personal

2  jurisdiction absent where defendant had "no offices, staff, or other physical presence" in forum

3  state).  In the absence of exceptional facts suggesting Yuga Labs is at home in Nevada for all

4  practical purposes – and there are none – general personal jurisdiction is unavailable.[1]  *Cf.*

5  *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952) (foreign corporation subject to

6  general personal jurisdiction where it temporarily relocated during wartime).

7        **B.**     **The Opposition Also Provides No Support For Specific Personal Jurisdiction**

8        The Opposition offers no viable basis for asserting specific personal jurisdiction over Yuga

9  Labs either.  It was plaintiff's burden, under the prevailing Ninth Circuit test, to establish that (1)

10  Yuga Labs directed its activities at Nevada (*i.e.*, it "purposefully availed itself" of the privilege of

11  conducting activities here) so as to "invoke[e] the benefits and protections of its laws;"[2] and that

12  (2) the claim "arises out of or relates to the defendant's forum-related activities."  *Schwarzenegger*

13  *v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004); Opp. at 9.  The exercise of

14  jurisdiction must also be shown to be "reasonable."  *Id.*  Plaintiff fails on all counts.

15        Plaintiff claims that the exercise of specific personal jurisdiction over Yuga Labs is

16  appropriate here based on: (1) purported interactions with ***other*** holders of Bored Ape NFTs who

17  may reside in Nevada; (2) websites and social media accounts operated by Yuga Labs or third

18  parties; (3) advertising and purported benefits made available to BAYC members by third parties;

19  and (4) plaintiff's purported contract with Yuga Labs.  *See* Opp. at 9-17.  As discussed below, not

20  one is a sufficient basis for asserting specific jurisdiction over Yuga Labs in this case.

21        **1.**     **Interactions With BAYC Members Fail To Establish Jurisdiction**

22        As Yuga Labs' motion made clear, jurisdiction over a nationwide club is not appropriate

---

[1] Plaintiff fails to mention, let alone address, *Daimler*.  Instead, citing nothing, he asserts that Yuga Labs "should be considered at home everywhere that BAYC club members reside." Opp. at 8. But *Daimler* rejected that precise argument.  *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

[2] The Opposition errs in arguing that the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984), satisfies *Schwarzenegger*'s first prong.  *See* Opp. at 9-15.  Despite substantial real estate devoted to that misguided claim, "it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 460 (9th Cir. 2007).  Here, the FAC asserts no intentional tort claim, so "the *Calder* line of cases is inapposite and does not support a finding of jurisdiction."  *Id.*

simply because it may have members in a forum state.  *See* Mot. at 7-8; *see, e.g.*, *O'Handley v. Padilla*, 2022 WL 93625, at *25 (N.D. Cal. Jan. 10, 2022) ("[n]ational organizations are not subject to jurisdiction in every state where their members live").  Without attempting to distinguish this case law, plaintiff pivots instead to Yuga Labs' purported "engagement and interaction" with members of the virtual BAYC in general.  *See* Opp. at 11.  The problem plaintiff faces is that any alleged interaction Yuga Labs may have had with other BAYC members is ***not connected in any way to his claims***, and thus a necessary element of specific personal jurisdiction is lacking.  *See Schwarzenegger*, 374 F.3d at 802 (plaintiff's claim must "arise[] out of or relate[] to the defendant's forum-related activities").  There is not a single alleged interaction between Yuga Labs and ***any*** BAYC member in Nevada that bears a relationship to plaintiff's claims here.

Plaintiff's reliance on *Ballard* and *Ford* (Opp. at 10-11) does not change that result.  Those cases are inapposite.  In *Ballard*, the Ninth Circuit found that personal jurisdiction existed where a bank had customers in the forum, and plaintiff's claims arose ***out of*** those customer relationships. *See Ballard v. Savage*, 65 F.3d 1495, 1498-1500 (9th Cir. 1995) (finding jurisdiction established where claim was based on customer account opened in the forum).  By contrast, even if Yuga Labs engaged with BAYC members in Nevada (and the FAC makes no actual showing in this regard), that interaction is irrelevant to the jurisdictional question presented here, where ***plaintiff's*** claims have nothing to do with, and did not arise from, such interactions.  As for *Ford*, that case simply ***does not apply*** in the context of this case.  Indeed, the decision expressly disavows consideration of questions raised by "internet transactions" and "whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State," which the Supreme Court recognized raise entirely distinct "doctrinal questions."  *See Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1028 n.4 (2021) (*citing Walden v. Fiore*, 571 U.S. 277, 290 n.9 (2014)).  Accordingly, plaintiff's attempt to graft *Ford*'s reasoning onto a case about a virtual club and stolen NFTs is a misguided exercise on both the facts ***and*** the law.

But even if *Ford* was on point, jurisdiction there was not grounded on an "ongoing relationship between Ford and its customers," as plaintiff contends.  *See* Opp. at 10.  Rather, the critical nexus in that case was that Ford was engaged in continuous and systematic interactions

1  (advertisements, service) in the forum, making jurisdiction over it reasonable when defective cars

2  sold by Ford ultimately caused injury in the state.  *See Ford*, 141 S. Ct. at 1019, 1023, 1026-30.

3  There are no such similar allegations here.  No "defect" in Bored Ape NFTs caused plaintiff's

4  harm in Nevada, and nothing alleged as to Yuga Labs even approaches the level of engagement

5  with forum residents implicated by *Ford*.  Nor is it enough for plaintiff to assert that his claims just

6  need to "relate to" Yuga Labs' interactions with BAYC members ***in general***.  *See* Opp. at 16.  As

7  noted, the fact that a club may have members nationwide does not suffice to establish personal

8  jurisdiction over Yuga Labs everywhere they may reside.  *See* Mot. at 7-8.  And, as for alleged

9  sales, distributions, or other communications by Yuga Labs involving *other* Nevada Bored Ape

10  NFT holders, unlike in *Ford*, none of those activities bear any relationship to ***plaintiff's*** claims, so

11  they cannot be a basis for jurisdiction in this case.[3]  Either way, whether *Ford* is considered or not,

12  plaintiff's arguments fail.

13  **2.  Yuga Labs' Internet Presence Does Not Establish Jurisdiction**

14  Plaintiff's only alleged interaction with Yuga Labs or its websites or social media accounts

15  was an isolated, self-initiated conversation on the BAYC Discord.  *See* FAC ¶¶ 89-91.  But as

16  Yuga Labs' motion established, such social media sites are not sufficiently commercial in nature to

17  confer personal jurisdiction wherever they may be accessed, and this is true even where incidental

18  sales of goods may occur on a site.  *See* Mot. at 9-12, s*ee, e.g.*, *Software Dev. & Inv. of Nevada v.*

19  *Wall*, 2006 WL 8442597, at *3 (D. Nev. Feb. 13, 2006) (no personal jurisdiction based on

20  defendant's blog interactions with visitors from forum state, notwithstanding that visitors had the

21  ability to make "minimal purchases" on the site).

22  Instead of addressing the case law as it applies to his claims in this case, plaintiff focuses

23  yet again on Yuga Labs' purported engagement with other BAYC club members on Discord,

24  _____

[3] The Opposition attempts to recast the negligence claim as a claim that Yuga Labs wrongfully

25  denied plaintiff admission to the BAYC ***after*** his Bored Ape NFTs were stolen.  Not only is this
theory nowhere to be found in the FAC, no facts support that claim.  As plaintiff admits, BAYC

26  membership is based on one fact: whether one holds a Bored Ape NFT according to the publicly
available, immutable blockchain record.  *See* FAC ¶ 7 ("[T]he key to membership into the

27  exclusive BAYC club . . . is ownership of a BAYC NFT (or affiliate NFT).").  Because Yuga Labs
does not (and cannot) control who holds a Bored Ape NFT as recorded on the blockchain, it

28  necessarily follows that it also cannot dictate who is in the BAYC, which is just a virtual
community of all Bored Ape NFT holders at a given point in time.  *See* Bretan Decl., Exs. C, D.

1   Twitter, and other sites, asserting "on information and belief" that these interactions occurred with

2   Nevada residents. *See* Opp. at 12-13. While plaintiff admits that Yuga Labs sells nothing through

3   Discord, the only site *he* accessed (*see* Opp. at 7 ("Yuga Labs does not sell anything directly

4   through its official . . . Discord accounts")), he offers a list of supposedly "interactive websites"

5   (some, by third parties), and claims they provide the requisite jurisdictional footing. *See* Opp. at

6   12; FAC ¶ 78. It is these sites, and alleged interactions with *other* Nevada residents, and not his

7   own Discord outreach, that plaintiff argues drives the jurisdictional analysis here. *Id.* at ¶ 79.

8        A fundamental problem dooms this argument. Plaintiff never connects any of those

9   interactions to the negligence and contract claims pursued *in this case.* *See Schwarzenegger*, 374

10   F.3d at 802 (claims must "arise[] out of or relate[] to"– *i.e.*, bear some connection to – "the

11   defendant's forum-related activities"). Even if the listed websites were sufficiently commercial to

12   constitute purposeful availment *by Yuga Labs* in the forum (and, as noted, not all of the sites are

13   Yuga Labs'), the alleged interactions described (none of which involve Nevada as a matter of fact)

14   are with other Bored Ape NFT holders, not plaintiff, and none form the basis for his claims here.

15        **3.    Advertisements And Solicitation Do Not Establish Jurisdiction**

16        A defendant's advertisements in a forum state, without more, do not create jurisdiction

17   unless plaintiff's claims are based on those advertisements. Mot. at 8-9; *Cf. Sinatra v. Nat'l*

18   *Enquirer, Inc.*, 854 F.2d 1191, 1195-98 (9th Cir. 1988) (finding purposeful availment where

19   misappropriation claim involved the content of the ads at issue).[4] Thus, even if Yuga Labs had

20   been involved in a purported BAYC advertising campaign in Nevada in 2021 (Opp. at 14) – and

21   the uncontroverted evidence is that it was not (*see* ECF No. 75, Muniz Decl. ¶ 3) – that fact still

22   would have no bearing on jurisdiction in this case, where plaintiff pursues claims entirely unrelated

23   to any such ads. Likewise, reliance on the actions of third parties to establish jurisdiction (*see*

24   Opp. at 14 – alleging Coinbase and the ApeCoin DAO solicited Bored Ape NFT holders in

25   ───────────

26   [4] The only case plaintiff cites in support of his argument that advertisements are sufficient to
     establish jurisdiction (Opp. at 14), actually holds the opposite: "[t]he placement of a product into
     the stream of commerce, without more, is not an act of the defendant purposefully directed toward
27   the forum State." *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 112 (1987). While, in
     *dicta*, the Supreme Court in *Asahi* noted that advertising *could be* relevant in some circumstances,
28   *see id.*, those circumstances are not present here, where plaintiff's claims do not flow from the
     advertising in question.

Nevada) is misplaced.  The activity described involves parties other than Yuga Labs and yet again fails to relate to *plaintiff's* claims.

### 4.   Plaintiff's Manufactured Contract Claims Do Not Establish Jurisdiction

Finally, as Yuga Labs' motion established, plaintiff fails to plead the factual elements to establish that a contract existed, so the purported contract cannot be a basis for jurisdiction.  *See* Mot. at 20-24.  Even if a contract with plaintiff had been formed, it still would not establish jurisdiction over Yuga Labs *in Nevada*, where the only tie to the forum is the fact that plaintiff is purportedly[5] found there.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-80 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."); *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (no personal jurisdiction based on defendant's "lone transaction" with forum resident).

As for the assertion that any supposed contract created "an ongoing relationship with Yuga Labs" (Opp. at 15), plaintiff does not cite a single fact in the FAC establishing that Yuga Labs had *any* relationship with plaintiff, who purchased his Bored Ape NFTs from third-parties (not Yuga Labs).  FAC ¶¶ 34, 36-37; *see Origin Consulting, LLC v. CriticalRiver, Inc.*, 2020 WL 4586870, at *5 (D. Nev. Aug. 10, 2020) (jurisdiction lacking where contract "did not create an ongoing concern in Nevada . . . or otherwise establish an ongoing presence for [defendant] in Nevada").[6]

## III.   PLAINTIFF CANNOT STATE A VIABLE CLAIM FOR RELIEF

### A.   Plaintiff's Opposition Confirms That His Negligence Claim Fails

Yuga Labs' motion established that plaintiff cannot demonstrate any of the four elements needed for a negligence claim under Nevada law:  that "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, (3) the breach was the legal cause of the plaintiff's

---

[5] It remains unclear when plaintiff was a legal resident of Nevada and whether he was so during the relevant periods alleged in the FAC.  *See* Mot. at 12 n.2; ECF No. 91 at 4 n.4.

[6] Even if plaintiff could satisfy the first two prongs of the *Schwarzenegger* test (that Yuga Labs directed activities at Nevada and that plaintiff's claims arose from those activities), the exercise of jurisdiction over Yuga Labs is not reasonable. *See* Mot. at 12 (analyzing factors).  In particular, any relevant evidence relating to Yuga Labs exists outside Nevada and none of the events giving rise to Yuga Labs' supposed liability in this suit occurred in Nevada.

1   injuries, and (4) the plaintiff suffered damages." *Foster v. Costco Wholesale Corp.*, 291 P.3d 150,

2   153 (Nev. 2012) (quotation omitted).  The Opposition fails to refute Yuga Labs' arguments.

### 1.   There Is No Special Relationship And, Absent That, There Is No Duty

Plaintiff concedes that there is no duty to control the criminal acts of a third party under

Nevada law absent a special relationship between the parties. Opp. at 17.  Because *no facts* in the

FAC support such a special relationship, the Opposition tries to manufacture one (and therefore a

duty) where none exists.[7]  That effort is unavailing.  Yuga Labs *did not exercise control over*

*plaintiff* with respect to any of the actions leading to the loss of his NFTs, and so no special

relationship exists. *See Beckman v. Match.com, LLC*, 2017 WL 1304288, at *3 (D. Nev. Mar. 10,

2017) (a special relationship exists only if "the ability of one of the parties to provide for his own

protection has been limited in some way by his submission to the control of another").  Plaintiff

alone decided to visit a Discord server (*unrelated* to Yuga Labs or the BAYC), engage in NFT

trades with a stranger, and click on an unverified link providing that bad actor with access to his

digital wallet. *See* FAC ¶¶ 80-85.  Yuga Labs is nowhere to be found in this chain of events.

These are the facts and they are dispositive as to any special relationship-based negligence claim.

Ostensibly recognizing as much, plaintiff engages in misdirection, arguing that Yuga Labs

is the gatekeeper of access to the BAYC and its benefits, and that that is the sufficient "control" for

special relationship purposes. *See* Opp. at 17-18.  Far from it.  Not only does it strain credulity to

argue that purported control over access to a virtual club of Bored Ape NFT holders somehow

imposes on Yuga Labs a duty to prevent the highly attenuated theft at issue here, plaintiff is just

wrong on the facts.  Access to the BAYC is purely a function of who is the recognized holder of a

particular Bored Ape NFT on the blockchain and, as plaintiff admits, that is *not* in Yuga Labs'

control. *See* Mot. at 15; FAC ¶ 4 (acknowledging that "once [a transaction] has been completed on

the blockchain—it becomes permanent and irreversible.").

Even if Yuga Labs could control access to the BAYC – which it cannot – plaintiff never

explains how that control somehow "limited" his ability to provide for his own "protection" when

---

[7]Allegations that are not found in the FAC should be disregarded. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("court may not look beyond the complaint to a plaintiff's . . . memorandum in opposition to a defendant's motion to dismiss.")

1   he sought to trade NFTs with a stranger on a third-party website.[8]  *Sparks* and *Scialabba* – the

2   "control" cases that plaintiff relies on most heavily – are of no help to him on the facts here.  The

3   *Sparks* court rejected the idea that a national organization had any duty to protect a local chapter

4   event attendee from injuries caused by a third-party, finding **no special relationship** between the

5   national organization and the attendee.  *See Sparks v. Alpha Tau Omega Fraternity, Inc.*, 255 P.3d

6   238, 245-46 (Nev. 2011).  Of particular note, the court recognized that the national organization

7   "lacked the ability to monitor the everyday activities of its local chapters" and had no control over

8   the third-party's actions.  *Id*. at 246-47.  The court in *Scialabba* found, on the other hand, that a

9   construction company that jointly controlled access to an apartment complex had a duty to keep

10  the premises in a reasonably safe condition.  *See Scialabba v. Brandise Constr. Co.*, 921 P.2d 928,

11  969-70 (Nev. 1996).  In that case, precisely because the company "retained keys to the vacant

12  apartments and was responsible for locking the doors," the court found it had a duty to protect the

13  plaintiff from foreseeable criminal activity if vacant apartment doors were left unlocked.  *Id*.

14  Though reaching different conclusions, if anything, *Sparks* and *Scialabba* serve to highlight

15  why no special relationship with Yuga Labs is stated here.  Just as in *Sparks*, Yuga Labs has no

16  ability to monitor the everyday activities of Bored Ape NFT holders – and that is especially true

17  of activities involving hundreds of thousands of secondary sales (or trades), on unaffiliated

18  websites, with third-party actors.  Moreover, unlike in *Scialabba*, it was plaintiff (not Yuga Labs)

19  who held the keys to his digital wallet and who was responsible for keeping the proverbial doors

20  locked.  In the absence of any duty by Yuga Labs (and absent a duty, no breach can be stated),

21  plaintiff has only himself and the third-party criminal actor to blame for the loss of his NFTs and

22  any benefits attached to them.[9]  This makes sense.  Any holding otherwise would put Yuga Labs

23

24  [8] Absent a special relationship, whether it was foreseeable that owners of Bored Ape NFTs may be targets of scammers and thieves (FAC ¶ 116; Opp. at 18-20) is irrelevant.  *Beckman*, 2017 WL

25  1304288, at *4 ("Only after a special relationship is established does the defendant have a duty to warn foreseeable victims of foreseeable harms."); *Sanchez v. Wal-Mart Stores, Inc.*, 221 P.3d 1276, 1280-81 (Nev. 2009) (same).

26  [9] Plaintiff avers that, "[l]ike the plaintiff in *Scialabba*," he "was not engaged in an inherently risky

27  activity," therefore Yuga Labs is somehow responsible for failing to safeguard the NFTs that plaintiff exclusively *controlled*.  *See* Opp. at 19.  Setting aside the fact that the test is focused on

28  "control" and not whether plaintiff is engaged in "inherently risky activity," that contention runs directly contrary to the FAC, which recounts at length the many, well-known risks to participants

1   (and other creators) in an entirely untenable position, forcing them to adjudicate disputes between

2   claimed "rightful" owners (including potential bona-fide purchasers). But Yuga Labs is not a law

3   enforcement agency or court of law, it is the creative company behind a popular series of NFTs. It

4   is not in a position to assess who the "rightful" owner of a given NFT may be; that is a legal

5   determination out of the company's hands and is often far from clear. *See* Mot. at 22 n.14. Simply

6   put, Yuga Labs cannot be responsible for ensuring against every downstream loss involving a

7   Bored Ape NFT.[10]  *See* Mot. at 18 n.8.[11]

8                    **2.        Plaintiff Cannot Allege That Yuga Labs Caused His Injury**

9            Plaintiff's causation argument (Opp. at 21), which does nothing more than restate the

10   unsupported notion that Yuga Labs had a duty (but failed) to monitor for and restrict "stolen"

11   NFTs, and thereby deter theft, fails for the same reason. This theory of causation is not only

12   nonsensical, it yet again seeks to obscure the plain fact that Yuga Labs ***was not involved*** in any of

13   the actual events leading to plaintiff's injury. Nor is plaintiff's conclusory assertion that "[Yuga

14   Labs'] negligence was a direct and proximate cause of Mr. Armijo's resulting damages" enough.

15   *See* FAC ¶ 213. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (court need not accept as true mere

16   "labels and conclusions"). This is especially true where the FAC makes clear that plaintiff's

17   purported injury resulted from (1) an alleged third-party criminal act; and (2) plaintiff's own

18   missteps. *See* FAC ¶¶ 80-85. But for ***those*** acts, and not any action (or purported inaction) by

19   _____

in the cryptocurrency and NFT ecosystems. *See, e.g.*, FAC ¶¶ 129, 210.

20   [10] On very similar facts, this is the precise conclusion reached by a court in the United Kingdom.
*See* Mot. at 14 (citing *Tulip Trading Ltd. v. Bitcoin Ass'n for BSV & Others* [2022] EWHC 667

21   (Ch) BL-2021-000313). Although not binding here (and now on appeal), *Tulip Trading* is
instructive because it highlights the numerous relevant practical and policy concerns inherent in

22   expanding the law in the manner plaintiff suggests. The Opposition does not grapple with these
issues in any meaningful way. Instead, plaintiff offers the simplistic proposal that Yuga Labs

23   could simply "restrict the club access and revoke the privileges of ***stolen*** BAYC NFTs" which,
plaintiff claims, would limit their utility and render them less attractive "to thieves" (Opp. at 17-

24   18) (emphasis added). Not only is this notion entirely speculative, it misses the critical point: how
is ***Yuga Labs*** to determine if an NFT was "stolen" in the first place?

25   [11] The claim that Yuga Labs breached these purported "duties" (Opp. at 21) is similarly unavailing.
Without a duty, there can be no breach. *See* Mot. at 14; *Estate of Smith v. Mahoney's Silver*

26   *Nugget, Inc.*, 265 P.3d 688, 691 (Nev. 2011) (if defendant owes "no duty," court "has no occasion"
to consider breach). Even if such duties did exist (they do not), the claimed "security measures"

27   plaintiff proposes are not technologically feasible and, other than as an exercise in rank speculation,
would have done nothing to prevent the loss or deter the theft at issue here. Indeed, when pressed,

28   plaintiff's counsel could not identify any such measures. *See* Hrg. Tr., ECF No. 101, at 31:3-9.

1    Yuga Labs, plaintiff's Bored Ape NFTs would not have been stolen, and he would not have lost

2    any benefits tied to holding those NFTs.  As a result, Yuga Labs cannot be the legal cause of his

3    injury and this Court should dismiss the negligence claim for this further reason.  *See Joynt v.*

4    *California Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992) (causation is a question of law if the

5    evidence cannot support any other inference).

### 3.    Plaintiff Cannot Plead Around The Economic Loss Doctrine

7            Plaintiff's allegation that a third-party criminal stole his Bored Ape NFTs cannot be

8    reconciled with his claim (Opp. at 22) that Yuga Labs "invaded" his legally protected interests in

9    those NFTs and the benefits tied to them (all of which are economic in nature).  While the FAC

10   and Opposition attempt to reframe the claims as "all benefits and opportunities" flowing to Bored

11   Ape NFT holders and "property" damage (in that he lost his NFTs and the BAYC membership and

12   commercialization rights attached to them) (*see, e.g.*, FAC ¶ 209, Opp. at 22) these remain "purely

13   economic loss[es]."  *See Nevada Power Co. v. Trench French SAS*, 2016 WL 3093307, at *2 (D.

14   Nev. June 1, 2016) (no recovery in tort under Nevada law for "loss of the benefit of the user's

15   bargain") (internal citation omitted).  Nevada courts regularly find such "benefit of the bargain"

16   losses barred by the economic loss doctrine.  *See Local Joint Exec. Bd. of Las Vegas, Culinary*

17   *Workers Union, Local No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982) (lost wages and employee

18   benefits are purely economic losses); *ARCO Prods. Co. v. May*, 948 P.2d 263, 266 (Nev. 1997)

19   (lost profits are purely economic losses).  There is no reason for this Court to find differently.

### B.    Plaintiff's Opposition Confirms His Contract Claims Fail As A Matter Of Law

21           Even assuming the parties formed a contract for membership in the BAYC,[12] plaintiff has

22   not alleged – and indeed, cannot allege – a contract for (a) perpetual membership based on the

---

[12]  Plaintiff's effort to avoid Yuga Labs' argument (Mot. at 20-21) that its online statements were
not contractual offers leaving nothing for negotiation is unavailing.  *See* Opp. at 22 (rejecting cases
and claiming Nevada law applies to contract formation here).  The cited cases merely stand for
general principles of contract formation, and Nevada law is no different.  *See* Nevada Pattern Jury
Instructions Civil 13.5 ("An offer is a promise to do or not to do something on specified terms that
is communicated to another party under circumstances justifying the other party in concluding that
acceptance of the offer will result in an enforceable contract.").  Here, where the purported "offer"
contained no "specified terms" and certainly no promise that "purchase" of a Bored Ape NFT
results in "perpetual" membership in the BAYC, much less based on "rightful" ownership, the
claim fails no matter which state's law applies.

1   "purchase" of a qualifying NFT, or (b) membership based on "rightful" ownership.  Although the

2   FAC claims an express contract was formed, the Opposition backtracks, instead asserting a new

3   (but similarly defective) theory of implied-in-fact contract.  Opp. at 22.[13]  In support of this new

4   theory, plaintiff states that the parties' "conduct . . . establishes that they intended to form a

5   contract . . . and promises were exchanged."  Opp. at 23.  Plaintiff does not identify *any* promises

6   he made, however.  *Id*.  And plaintiff does not point to any affirmative conduct by Yuga Labs

7   manifesting this purported implied-in-fact contract, much less one providing for perpetual BAYC

8   membership or based on "rightful" ownership, irrespective of holding a Bored Ape NFT.[14]  *Id*.

9   Under either theory, plaintiff still fails to allege a contract was formed, much less breached.

10          Also fatally undercutting any contract claim is the FAC's allegation that the NFT itself is

11  "the key to membership into the exclusive BAYC Club."  *See* Mot. at 21 (quoting FAC ¶¶ 7, 40,

12  41, 154, alleging that membership requires holding a Bored Ape NFT, which acts as a "key,"

13  "token," and "digital identity and club ID card . . . confirming proof of ownership through the

14  blockchain ledger").  Stated differently, plaintiff admits that the virtual BAYC is merely the group

15  of current holders of Bored Ape NFTs according to the blockchain, not claimed "rightful" owners

16  or anyone else.  This is unsurprising, as the Terms & Conditions applicable to holders of Bored

17  Ape NFTs say as much.  *See* Mot. at 21.  While plaintiff attempts to disclaim those Terms &

18  Conditions (Opp. at 23-24) (apparently reading what Yuga Labs has to say only when it suits his

19  claim), that position does not square with his reliance on the BAYC website (where the terms are

20  found) to define the claimed "offer" to buy NFTs (FAC ¶ 173), and which terms also are the basis

21  for the "commercialization rights" plaintiff allegedly hopes to recover for here.  *See* FAC ¶¶ 39,

22  52, 57, 155, 160, 203, 213, 224, and 233.  Plaintiff cannot selectively rely on Bored Ape NFT

23  terms supporting his alleged claims, while at the same time asserting no "actual or constructive

24  knowledge of the terms" and disputing that he is "bound by them."  Opp. at 23.  The doctrine of

---

25  [13]  Plaintiff's reliance on *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 256

26  (Nev. 2012) for this new argument is misplaced.  That case involved *quantum meruit* recovery and
    an implied-in-fact contract price for design services performed and has no application here.

27  [14]  The FAC does not allege that plaintiff exercised or received any membership benefits or that
    Yuga Labs even knew that plaintiff had purchased a BAYC NFT until "[h]e went to the BAYC

28  Discord server and created a help ticket" *after* his NFTs were stolen.  FAC ¶¶ 89, 85.

---

1   judicial estoppel bars plaintiff from disclaiming terms that expressly preclude his contract claim, in

2   favor of terms like membership based on "rightful" ownership to which Yuga Labs never agreed.

3   *See Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012)

4   (party cannot hope to "prevail[] in one phase of a case on an argument and then rely[] on a

5   contradictory argument to prevail in another phase") (internal citations omitted).

6           Plaintiff's implied covenant claim also fails as a matter of law.  As discussed, no implied-

7   in-fact contract was formed, so there is no implied covenant claim based on it.  And even if a

8   contract had been formed, to state an implied covenant claim, plaintiff must allege that Yuga Labs

9   "literally complied" with the actual terms of the contract, but "deliberately [contravened] the

10  intention and spirit of the contract."  *See* Mot. at 23 (quoting *Hilton Hotels Corp. v. Butch Lewis*

11  *Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991) and collecting cases dismissing implied covenant

12  claims for the same pleading failures found here).  Putting aside the baseless assertion that ***Yuga***

13  ***Labs*** (as opposed to a thief) "wrongfully stripped [plaintiff] of his BAYC club membership" (Opp.

14  at 24), if anything, Yuga Labs did exactly what the terms applicable to the Bored Ape NFTs

15  provide: rely on the blockchain to determine ownership and rely on NFT holders to safeguard

16  themselves.  *See* Mot. at 23, citing Bretan Decl., Exs. D, E ("[o]wnership of the NFT is mediated

17  entirely by the Smart Contract and the Ethereum Network" and "[u]sers are entirely responsible for

18  the safety and management of their own private Ethereum wallets").

19  **IV.    CONCLUSION**

20          Far from addressing the numerous legal and factual deficiencies identified in Yuga Labs'

21  motion to dismiss, the Opposition confirms that those defects are intractable.  There is no basis for

22  jurisdiction over Yuga Labs just because it created a popular NFT series with a website and social

23  media presence, nor does plaintiff state a claim for relief under any theory.  Yuga Labs respectfully

24  requests that the Court grant its motion.  Moreover, this is now the ***sixth time*** (including in detailed

25  letters, each of Yuga Labs' motions to dismiss, and its motion to stay discovery) that Yuga Labs

26  has provided plaintiff notice of these defects.  The continuing failure to adequately address the

27  issues at this late stage suggests plaintiff simply cannot do so.  Yuga Labs did not belong in this

28  case from the start.  Dismissal with prejudice and without leave to amend is warranted at this time.

Dated:   November 8, 2022

FENWICK & WEST LLP

By:   */s/ Jennifer C. Bretan*
        Jennifer C. Bretan

Michael S. Dicke (admitted *pro hac vice*)
Katherine A. Marshall (admitted *pro hac vice*)
Samuel Sahagian (admitted *pro hac vice*)
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile:  415.281.1350
Email: mdicke@fenwick.com
Email: jbretan@fenwick.com
Email: kmarshall@fenwick.com
Email: ssahagian@fenwick.com

John D. Tennert III (Nevada Bar No. 11728)
FENNEMORE CRAIG, P.C.
7800 Rancharrah Parkway
Reno, NV 89511
Telephone: 775.788.2200
Facsimile: 775.786.1177
Email: jtennert@fclaw.com

*Attorneys for Defendant Yuga Labs, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to F.R.C.P. 5(b) and Electronic Filing Procedure IV(B), I certify that on November 8, 2022, a true and correct copy of **YUGA LABS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was transmitted electronically through the Court's CM/ECF e-filing electronic notice system to all attorneys associated with the above-captioned case.

*/s/ Jennifer C. Bretan*
Jennifer C. Bretan
Fenwick & West LLP